IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RAINDANCE TECHNOLOGIES, INC. and THE UNIVERSITY OF CHICAGO, | ) | |
| Plaintiffs, | ) | |
| v. | ) | C.A. No. 15-152-RGA |
| 10X GENOMICS, INC., | ) | |
| Defendant. | ) | |

**10X GENOMICS, INC.'S OPENING BRIEF IN SUPPORT OF ITS**
**MOTION TO STAY LITIGATION PENDING *INTER PARTES* REVIEW**

*Of Counsel:*

David I. Gindler
Andrei Iancu
Lindsay Androski Kelly
Lauren Nicole Drake
Elizabeth Chenyi Tuan
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
(310) 277-1010

Dated: February 10, 2016

Steven J. Balick (#2114)
Tiffany Geyer Lydon (#3950)
Andrew C. Mayo (#5207)
ASHBY & GEDDES
500 Delaware Avenue
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
tlydon@ashby-geddes.com
amayo@ashby-geddes.com

*Attorneys for Defendant*

## TABLE OF CONTENTS

**Page**

I. NATURE AND STAGE OF THE PROCEEDINGS ....................................... 1

II. SUMMARY OF ARGUMENT ....................................... 3

III. STATEMENT OF FACTS ....................................... 4

IV. ARGUMENT ....................................... 4

- A. Discovery Has Not Begun, And No Trial Date Has Been Set ....................... 5
- B. The IPR Proceedings Will Substantially Simplify This Case ....................... 6
- C. Staying This Litigation Would Not Result in Undue Prejudice Or Present A Clear Tactical Disadvantage To Plaintiffs ....................... 8
  - 1. 10X Promptly Filed The IPR Petitions And Motion To Stay ........... 8
  - 2. Three IPRs Were Instituted, And One Patent Has Already Been Cancelled ....................... 9
  - 3. The Parties Are Not Competitors ....................... 9

V. CONCLUSION ....................................... 12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bonutti Skeletal Innovations, L.L.C. v. Zimmer Holdings, Inc.*,
Nos. 12-cv-1107 (GMS), 2014 WL 1369721 (D. Del. Apr. 7, 2014)...................... 5, 8

*Boston Scientific Corp. v. Cordis Corp.*,
777 F. Supp. 2d 783 (D. Del. 2011)............................................................................ 8

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
721 F.3d 1330 (Fed. Cir. 2013)................................................................................... 7

*Miics & Partners Am. Inc. v. Toshiba Corp.*,
Nos. 14-803, 804-RGA, 2015 WL 9854845 (D. Del. Aug. 11, 2015)......................... 7

*Neste Oil OYJ v. Dynamic Fuels, LLC*,
No. 12-1744-GMS, 2013 WL 3353984 (D. Del. July 2, 2013) .......................... passim

*Nexans Inc. v. Belden Inc.*, No. 12-1491-SLR-SRF,
2014 WL 651913 (D. Del. Feb. 19, 2014), *adopted by* 2014 WL 1232218 (D. Del. Mar. 12, 2014)....................................................................................................... 6

*Princeton Digital Image Corp. v. Konami Digital Entm't Inc.*,
No. 12-1461, 13-335-LPS-CJB, 2014 WL 3819458 (D. Del. Jan. 15, 2014).......... 5, 7

*Softview LLC v. Apple Inc.*,
Nos. 12-989, 10-389-LPS, 2013 WL 4757831 (D. Del. Sept. 4, 2013)....................... 6

*TruePosition, Inc. v. Polaris Wireless, Inc.*,
No. 12-646-RGA/MPT, 2013 WL 5701529 (D. Del. Oct. 21, 2013), *adopted by* 2013 WL 6020798 (D. Del. Nov. 12, 2013) ................................................ 5, 9, 12

*VirtualAgility Inc. v. Salesforce.com, Inc.*,
759 F.3d 1307 (Fed. Cir. 2014)........................................................................... 6, 9, 10

**Statutes**

35 U.S.C. § 102.......................................................................................................... 7

35 U.S.C. § 103.......................................................................................................... 7

35 U.S.C. § 314(a) ..................................................................................................... 1

35 U.S.C. § 315(e)(1)................................................................................................. 4

35 U.S.C. § 316(a)(11)........................................................................................... 3, 4

**Page(s)**

**Rules**

Fed. R. Civ. P. 12 .......... 1

Fed. R. Civ. P. 26 .......... 5

## I. NATURE AND STAGE OF THE PROCEEDINGS

RainDance Technologies, Inc. ("RainDance") and The University of Chicago commenced this lawsuit against 10X Genomics, Inc. ("10X") on February 12, 2015, asserting infringement of "one or more claims" of six related patents (the "Ismagilov patents") under every possible theory: literal, induced, contributory, and willful infringement, as well as infringement under the doctrine of equivalents. D.I. 1 ("Complaint"). 10X filed a timely Motion to Dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). D.I. 8. While that motion was pending, Plaintiffs filed a First Amended Complaint (D.I. 12) ("FAC") dropping the willful infringement allegations but adding a seventh patent from a different family: U.S. Patent No. 8,658,430 (the "'430 patent") (the Ismagilov patents and the '430 patent collectively are referred to herein as the "asserted patents"). On May 11, 2015, 10X filed a Motion to Dismiss the FAC. D.I. 15. That motion is pending.

On May 4, 2015, 10X filed petitions with the Patent Trial and Appeal Board ("PTAB") for *inter partes* review ("IPR") of five of the six Ismagilov patents. Exs. 1-5 (Petitions for *Inter Partes* Review of U.S. Patent Nos. 8,889,083; 8,822,148; 8,329,407; 8,273,573; and 8,305,193). Two months later, in July 2015, 10X filed IPR petitions for the sixth Ismagilov patent and the '430 patent. Exs. 6, 7 (Petitions for *Inter Partes* Review of U.S. Patent Nos. 7,129,091 and 8,658,430).

The PTAB has instituted IPR for two of the six Ismagilov patents. Specifically, on November 16, 2015, the PTAB found that 10X had established a "reasonable likelihood" that two of the six Ismagilov patents are invalid, and instituted IPRs on all claims of U.S. Patent Nos. 8,273,573 (the "'573 patent") and 8,889,083 (the "'083 patent"). Exs. 8, 9 (Decisions on Institution of *Inter Partes* Review); *see* 35 U.S.C. § 314(a). The PTAB declined to institute IPR

on the other Ismagilov patents. On January 19, 2016, the PTAB instituted IPR for all claims of the ’430 patent. Ex. 10 (Decision on Institution of *Inter Partes* Review).

The ’573 and ’083 patents share nearly identical specifications with the remaining Ismagilov patents, and the relationship between the Ismagilov patents is shown below.

On January 26, 2016, The University of Chicago requested cancellation of all claims of the ’573 patent and entry of adverse judgment in that IPR. Ex. 11 (Patent Owner’s Request for Adverse Judgment Under 37 C.F.R. § 42.73). On February 3, 2016, the PTAB entered adverse judgment and cancelled all claims of the ’573 patent. Ex. 12 (Judgment and Final Written Decision).

As such, IPRs remain pending for two of the asserted patents—the ’083 patent, which is part of the Ismagilov family, and the ’430 patent, which is in a different family. The PTAB is

statutorily required to issue its final written decision on the ’083 patent by November 16, 2016, and on the ’430 patent by January 19, 2017. *See* 35 U.S.C. § 316(a)(11).

## II. SUMMARY OF ARGUMENT

10X respectfully requests that the Court stay litigation proceedings pending IPR. *First*, this case is in its infancy: 10X’s Motion to Dismiss the FAC is still pending, and no scheduling conference has yet taken place. *Second*, the IPRs will greatly simplify these proceedings. Indeed, one asserted patent has already been cancelled because of the IPR proceedings. If the PTAB invalidates the ’083 and/or ’430 patents, then this litigation will also terminate as to those patents. If one or both patents survive IPR, 10X will be estopped from asserting invalidity on grounds that it raised or reasonably could have raised during IPR. Statements made by either party during the IPRs, and the PTAB’s interpretations of patent language and prior art, will inform the Court’s analysis of *all* asserted patents—including those that share a specification with the now-cancelled ’573 patent. Regardless of the outcome of the IPRs, a stay will save the Court and 10X, a fledgling company creating cutting-edge genetic technology, from expending significant resources on issues that will be narrowed, and potentially foreclosed, by PTAB review. *Third*, the stay will not unduly prejudice Plaintiffs and is not being sought for dilatory purposes. 10X promptly filed IPR petitions after learning about Plaintiffs’ infringement allegations, and filed this Motion two weeks after the PTAB issued its last institution decision. Moreover, RainDance and 10X are not competitors, which further lessens any risk of prejudice. Under these circumstances, courts regularly stay proceedings, and we respectfully submit that interests of efficiency would best be served by this Court doing so here.

## III. STATEMENT OF FACTS

Following The University of Chicago’s request to cancel all claims of the ’573 patent, five Ismagilov patents remain in the litigation. As shown in the chart *supra*, all of the Ismagilov

patents originate from a common application and claim priority to U.S. Patent App. No. 10/434,970, which issued into the ’091 patent. D.I. 12-2, Ex. G. The ’083 patent, which is undergoing IPR, shares the same specification and figures as the ’091 patent. *Compare* D.I. 12-2, Ex. F and D.I. 12-2, Ex. G. The now-cancelled ’573 patent and the remaining three Ismagilov patents all stem from U.S. Application No. 10/765,718. These patents share nearly the same specification, differing *only* in the Summary of Invention and Examples sections. The sole patent from a different family, the ’430 patent, is also undergoing IPR.

The PTAB must issue a final written decision within one year of instituting IPR. *See* 35 U.S.C. § 316(a)(11). As such, the PTAB must issue its final written decision on the ’083 patent by November 16, 2016, and on the ’430 patent by January 19, 2017. At that point, 10X will be estopped from asserting “invalid[ity] on any ground that the petitioner raised or reasonably could have raised” during IPR. 35 U.S.C. § 315(e)(2). If either patent is invalidated, it will be eliminated from the litigation. Regardless of the outcome of the IPRs, the parties’ statements during IPR, and the PTAB’s interpretation of the claim language and prior art, will inform the Court’s analysis of *all* patents asserted in this litigation.

## IV. ARGUMENT

“The court’s inherent power to conserve judicial resources by controlling its own docket includes the discretion to stay a litigation, which has been found to extend to patent cases where a review by the PTO has been requested.” *TruePosition, Inc. v. Polaris Wireless, Inc.*, No. 12-646-RGA/MPT, 2013 WL 5701529, at *1 (D. Del. Oct. 21, 2013), *adopted by* 2013 WL 6020798 (D. Del. Nov. 12, 2013) (citation omitted). In determining whether to grant a stay, courts consider whether: discovery is complete and a trial date has been set; a stay will simplify the issues for trial; and a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party. *Id.*, 2013 WL 5701529, at *2.

### A. Discovery Has Not Begun, And No Trial Date Has Been Set

This litigation is in its infancy. 10X's Motion to Dismiss the FAC is pending, and no scheduling conference has occurred.[1] 10X is a new company, working in an emerging field of technology, and would be significantly hampered by unnecessary litigation expenses. "Staying a case in its early stages can be said to advance judicial efficiency and maximize the likelihood that neither the Court nor the parties expend their assets addressing invalid claims." *Neste Oil OYJ v. Dynamic Fuels, LLC*, No. 12-1744-GMS, 2013 WL 3353984, at *5 (D. Del. July 2, 2013) (citation omitted). Accordingly, courts in this district regularly grant stays under these circumstances. *See, e.g.*, *Bonutti Skeletal Innovations, L.L.C. v. Zimmer Holdings, Inc.*, Nos. 12-cv-1107, 1109, 1110 (GMS), 2014 WL 1369721, at *6 (D. Del. Apr. 7, 2014) (granting stay and explaining that "this litigation is still in its early stages. There is not yet a case scheduling order in place nor has discovery begun nor has a trial date been set."); *Princeton Digital Image Corp. v. Konami Digital Entm't Inc.*, No. 12-1461, 13-335-LPS-CJB, 2014 WL 3819458, at *4 (D. Del. Jan. 15, 2014) (granting stay where "discovery [wa]s in its nascent stages").

Indeed, the Federal Circuit reversed a district court's denial of a stay where, as here, "[a]t the time Defendants filed their motion . . . [d]iscovery had not yet begun and no trial date had been set." *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1317 (Fed. Cir. 2014). The Federal Circuit explained that "[a]s of the date the PTAB granted [] review, there remained eight months of fact discovery, the joint claim construction statements had yet to be filed, and jury selection was a year away. The litigation at either time was still at its infancy, which favors

[1] On January 27, 2016—two days after the PTAB issued its final institution decision—Plaintiffs served Requests for Production ("RFP") on 10X, *see* D.I. 23. Per the 2015 amendments to Federal Rule 26, however, the RFPs will not even be deemed served until the Rule 26(f) conference. Fed. R. Civ. P. 26(d)(2)(B).

granting the stay." *Id*. Here, where the litigation is at an even earlier stage procedurally, this factor heavily favors a stay.

### B. The IPR Proceedings Will Substantially Simplify This Case

Courts in this district have repeatedly recognized that "a complete overlap of the issues in the litigation and the IPR is not required to establish simplification of the case." *Nexans Inc. v. Belden Inc.*, No. 12-1491-SLR-SRF, 2014 WL 651913, at *4 (D. Del. Feb. 19, 2014), *adopted by* 2014 WL 1232218 (D. Del. Mar. 12, 2014). *See Neste Oil*, 2013 WL 3353984, at *5 ("[W]hile the court recognizes that this case likely presents certain questions that simply cannot be addressed through *inter partes* review, it notes that the 'issue simplification' factor does not require complete overlap.").

Here, all claims of one asserted patent were already cancelled by the patent owner following institution of IPR, and all claims of two other asserted patents are undergoing IPR. As another judge in this district has recognized, "should even some of the asserted claims be found invalid, that finding would reduce the number of issues left to be litigated." *Softview LLC v. Apple Inc.*, Nos. 12-989, 10-389-LPS, 2013 WL 4757831, at *1 (D. Del. Sept. 4, 2013). This principle surely applies here, where the six remaining asserted patents contain 141 claims, 48 of which are undergoing IPR. Indeed, in granting a pre-institution stay, this Court previously recognized that "with so many claims from so many patents in play, the law of probabilities makes it almost certain that the PTAB will grant at least some of the petitions, and that some of the claims will eventually be rejected or modified, and others of them, even if neither rejected or modified, will garner additional prosecution history that may be relevant to claim construction. Simplification is very likely." *Miics & Partners Am. Inc. v. Toshiba Corp.*, Nos. 14-803, 14-804-RGA, 2015 WL 9854845, at *1 (D. Del. Aug. 11, 2015).

The IPRs will significantly simplify this litigation *regardless* of the outcome. If the claims are cancelled in the IPR, that result is binding on district court litigation. *See Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1340 (Fed. Cir. 2013). If the claims survive IPR, then 10X will be estopped from making anticipation or obviousness arguments under 35 U.S.C. §§ 102 or 103 on the basis of printed publications. Moreover, this Court and the parties will greatly benefit from the PTO's technical expertise in the IPR proceedings. *See, e.g.*, *Princeton Digital*, 2014 WL 3819548, at *2 (stating that a stay would simplify the litigation "due to insight that the Court could gain from the PTO's review process."); *Neste Oil*, 2013 WL 3353984, at *4 (agreeing with defendants that "a stay pending *inter partes* review will allow the court to benefit from the PTO's expertise regardless of whether or not the review results in any claim cancellation."); *id.* ("[A]ll prior art presented to the court at the trial will have been first considered by the PTO with its particular expertise.") (citation omitted). Because the Ismagilov patent undergoing IPR is closely related to the other asserted Ismagilov patents, the prior art is pertinent to *all* of the Ismagilov patents. Likewise, the parties' characterization of the prior art, characterization of the patents-in-suit, and PTAB statements about either, all will inform this Court's analysis.

So too for the PTAB's interpretation of patent language. The Ismagilov patents share not only specification language, but also many claim terms. Some of these terms—including at least "microfluidic device," "plugs," and "reaction"—will require claim construction; indeed, the PTAB already construed certain claim language in deciding whether to institute IPR, including in the now-cancelled '537 patent. The PTAB's interpretation will be particularly helpful in this litigation, given the inter-relatedness of the patents-in-suit and the common prior art.

### C. Staying This Litigation Would Not Result in Undue Prejudice Or Present A Clear Tactical Disadvantage To Plaintiffs

Finally, courts consider whether granting a stay "would cause the nonmoving party undue prejudice or place it at a clear tactical disadvantage." *Neste Oil*, 2013 WL 3353984, at *2. "The mere potential for delay . . . is insufficient to establish *undue* prejudice." *Id*. (emphasis in original). Courts consider various sub-factors in this analysis, including the timing of the requests for IPR and for stay; the status of the IPR proceedings; and the relationship of the parties. *Id*. (citing *Boston Scientific Corp. v. Cordis Corp.*, 777 F. Supp. 2d 783, 789 (D. Del. 2011)). Each sub-factor also favors a stay.

#### 1. 10X Promptly Filed The IPR Petitions And Motion To Stay

"The more diligent a defendant is in seeking *inter partes* review, the less likely it is that the non-movant will be prejudiced by a stay or that the court will find the defendant's filing of the IPR petition to be a dilatory tactic." *Bonutti*, 2014 WL 1369721, at *2. Here, neither RainDance nor The University of Chicago provided 10X with pre-suit notice of alleged infringement of any of the seven asserted patents. 10X filed its IPR petitions promptly after learning of Plaintiffs' allegations in the Complaint and the FAC, while this litigation was still in the pleadings stage. Similarly, 10X filed this Motion two weeks after the PTAB issued its seventh institution decision. Under these circumstances, this sub-factor strongly favors a stay. *See id.* at *3 (finding IPR petitions filed between eight months and a year after service of complaints timely because "all of the petitions were filed before the court had set a schedule and before discovery had commenced"); *Neste Oil*, 2013 WL 3353984, at *2 (granting motion to stay where defendant filed IPR petition three months after receiving notice of the lawsuit, and stating that "[g]iven the prompt filing of both the petition for *inter partes* review and the motion to stay, the court cannot discern an improper dilatory motive"); *VirtualAgility*, 759 F.3d at 1319 (finding

"no evidence that Defendants possessed a 'dilatory motive'" when post-grant petitions were filed less than four months after plaintiffs initiated infringement action).

**2. Three IPRs Were Instituted, And One Patent Has Already Been Cancelled**

The PTAB instituted IPR for all claims of three of the seven asserted patents, including two of the Ismagilov patents and the sole unrelated patent, the '430 patent.[2] Exs. 8-10. On January 26, 2016, The University of Chicago asked the PTAB to cancel all claims of the '573 patent and enter adverse judgment in the IPR. Ex. 11. On February 3, 2016, the PTAB entered adverse judgment and cancelled all claims of the '573 patent. Ex. 12. Oral arguments have been scheduled for the remaining two IPRs: June 30, 2016, for the '083 patent, and September 27, 2016 for the '430 patent. Exs. 13, 14 (Scheduling Orders). By January 2017, the PTAB will have issued final written decisions for both of the instituted IPRs. As such, this sub-factor also weighs heavily in favor of a stay.

**3. The Parties Are Not Competitors**

"This court has been reluctant to stay proceedings in situations where parties are direct competitors," *TruePosition*, 2013 WL 5701529, at *5, but that concern is inapplicable here: 10X does not compete with either RainDance or The University of Chicago.

RainDance describes its product, the RainDrop digital droplet system,[3] as a tool that "enhances the way researchers and scientists study cell-based and cell-free biomarkers in cancer, infectious disease, and inherited disorders." D.I. 12, at ¶ 11. Researchers use the RainDrop system for digital Polymerase Chain Reaction ("PCR"), "a technology approach to directly amplify and quantify nucleic acids." Ex. 15 (RainDance Technologies, Inc., Amendment No. 1

---

[2] As noted in 10X's Motion to Dismiss the FAC, Plaintiffs have only alleged infringement of "one or more" claims of each asserted patent, without specificity. D.I. 12.

[3] RainDance describes only its RainDrop digital droplet system in the FAC. D.I. 12.

to Form S-1, Registration Statement, filed March 30, 2015) at 73. Digital PCR is an improvement upon conventional PCR, which is a technique that allows a researcher to use a small quantity of DNA to generate millions of copies of a particular DNA sequence—also known as DNA "amplification." *See* Ex. 16 ("Polymerase Chain Reaction (PCR)," National Human Genome Research Institute, https://www.genome.gov/10000207). Digital PCR instruments are capable of simultaneously amplifying many different DNA samples, so researchers can quickly compare the samples for a variety of purposes, such as detecting mutations among the DNA samples. *See* Ex. 17 ("Digital PCR Solutions," RainDance webpage, http://raindancetech.com/digital-pcr-tech/). RainDance stated in an SEC filing intended for potential investors in an initial public offering that its major competitors include Agilent Technologies Inc., Illumina, Inc., Qiagen N.V., and Bio-Rad Laboratories, Inc. Ex. 15 at 15-16. 10X was not mentioned.

Although RainDance claims in the FAC to be a "close" competitor of 10X,[4] the companies target different types of genetic research. In fact, 10X's accused "GemCode Platform"[5] does not perform PCR at all. Instead of amplifying DNA, the 10X product provides a platform for more accurate *sequencing* of DNA. *See* Ex. 18 ("Top 10 Innovations 2015," The Scientist (Dec. 1, 2015), http://www.the-scientist.com/?articles.view/articleNo/ 44629/title/Top-10-Innovations-2015/). Current DNA sequencers work by splitting up a DNA molecule into

---

[4] *See* FAC, D.I. 12, at ¶ 12 ("10X and RainDance are close competitors in the emerging field of using microfluidic devices to deliver biological reagents so that complex genetic analysis may be simplified and scaled."). RainDance's claim to be a 10X competitor is further undercut by its failure to move for a preliminary injunction. *See Neste Oil*, 2013 WL 3353984, at *4 ("[W]here the question of direct competition remains unanswered, courts have sometimes considered whether the plaintiff sought a preliminary injunction.") (citation omitted); *VirtualAgility*, 759 F.3d at 1319 ("Although this is not dispositive, we note that [plaintiff] did not move for a preliminary injunction against Defendants.").

[5] D.I. 12 at ¶ 15.

millions of smaller pieces, determining the order of nucleotides in each piece, and then fitting the pieces back together to generate a sequence for the whole piece of DNA. *See* Ex. 19 (Aaron Krol, "10X Announces a High-Throughput Platform for Synthetlc Long Reads," Bio-IT World (Jan. 14, 2015), http://www.bio-itworld.com/2015/1/14/10x-genomics-announces-high-throughput-platform-synthetic-long-reads.html). Although this technique is widely used, important information can be lost from the process of splitting up and reassembling the DNA molecule. *See* Ex. 20 ("10X Genomics: what's the fuss over phasing," CoreGenomics (Mar. 6, 2015), http://core-genomics.blogspot.com/2015/03/10x-genomics-whats-fuss-over-phasing.html). The 10X GemCode Platform solves this problem by, among other things, attaching "barcodes" to the DNA fragments in order to more accurately reassemble the DNA genome. *See* Ex. 18. Thus, the 10X GemCode Platform generates *long-range* genomic information using an off-the-shelf short-read DNA sequencer. *Id*. The 10X GemCode Platform directly competes with other long-range genomic sequencers like the Pacific Biosciences ("PacBio") RSII or the Illumina Moleculo technology. *See* Ex. 20. Raindance's Raindrop system is not a long-range genomic sequencer and does not compete with the 10X GemCode Platform.

In late May 2015, three weeks after 10X filed its first five IPR petitions, RainDance and PacBio announced their intent to develop jointly a product to compete with the 10X GemCode Platform. *See* Ex. 21 (Aaron Krol, "PacBio Aims for Haplotyped Whole Genome Assemblies in Partnership with RainDance," Bio-IT World (May 29, 2015), http://www.bio-itworld.com/2015/5/29/pacbio-aims-haplotyped-whole-genome-assemblies-partnership-raindance.html). To date, no product has launched. A mere stated intent to compete with 10X in the future cannot change the fact that RainDance does not compete with 10X presently. As such,

this sub-factor also favors a stay.[6]

## V. CONCLUSION

In this case, all factors and sub-factors favor the requested stay. The IPRs will greatly simplify the proceedings and inform the Court's analysis of the claim language and prior art. 10X promptly filed its IPR petitions and this Motion. The stay will not unduly prejudice Plaintiffs because this case remains at a very early stage, and RainDance and 10X are not competitors. As such, the Court should stay these proceedings pending IPR.

ASHBY & GEDDES

*/s/ Andrew C. Mayo*

Steven J. Balick (#2114)
Tiffany Geyer Lydon (#3950)
Andrew C. Mayo (#5207)
500 Delaware Avenue
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
tlydon@ashby-geddes.com
amayo@ashby-geddes.com

*Attorneys for Defendant*

*Of Counsel:*

David I. Gindler
Andrei Iancu
Lindsay Androski Kelly
Lauren Nicole Drake
Elizabeth Chenyi Tuan
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
(310) 277-1010

Dated: February 10, 2016

[6] Even if 10X and RainDance were competitors, "the presence of other parties actively involved in the market may decrease the risk of prejudice to a plaintiff." *True Position*, 2013 WL 5701529, at *5 (citing *Neste Oil*, 2013 WL 3353984, at *4). As noted above, PacBio's RSII and Illumina's Moleculo technology already compete directly with the 10X GemCode Platform in this market. Ex. 22.