IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

RAINDANCE TECHNOLOGIES, INC. and )
THE UNIVERSITY OF CHICAGO, )
)
          Plaintiffs, )
)  C.A. No. 15-152 (RGA)
      v. )
)
10X GENOMICS, INC., )  REDACTED - PUBLIC VERSION
)
        Defendant. )

**PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO 10X GENOMICS, INC.'S
MOTION TO STAY LITIGATION PENDING *INTER PARTES REVIEW***

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Karen Jacobs (#2881)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
kjacobs@mnat.com

OF COUNSEL:

Edward R. Reines
Derek C. Walter
Blake Davis
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA  94065
(650) 802-3000

*Attorneys for Plaintiffs*

February 29, 2016

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................................... ii

I.      NATURE AND STAGE OF THE PROCEEDINGS ........................................................1

II.     SUMMARY OF ARGUMENT ...................................................................................2

III.    STATEMENT OF FACTS ..........................................................................................3

IV.     ARGUMENT .............................................................................................................3

        A.      A Stay Will Not Simplify This Case ....................................................................4

        B.      The Parties Are Competitors And A Stay Would Prejudice Plaintiffs ...................6

        C.      Moving Forward With This Case Stay Will Not Result In A Clear Case Of
                Hardship For 10X .............................................................................................12

        D.      The Record Shows That 10X Filed This Motion For Purposes Of Delay ...........13

        E.      The Stage Of The Case Weighs Strongly Against A Stay ...................................14

V.      PLAINTIFFS REQUEST A SCHEDULING CONFERENCE AND THE
        INITIATION OF DISCOVERY ...........................................................................15

VI.     CONCLUSION ........................................................................................................16

TABLE OF AUTHORITIES

Page(s)

## Cases

*Adaptix, Inc. v. HTC Corp.*,
   No. 5:14-cv-02359-PSG, 2015 U.S. Dist. LEXIS 103503 (N.D. Cal. Aug. 5, 2015)................5

*Apple, Inc. v. Samsung Elecs. Co. Ltd.*,
   735 F.3d 1352 (Fed. Cir. 2013) ..........................................................................................13

*Avago Techs. Fiber IP (Singapore) Pte. Ltd. v. IPtronics Inc.*,
   No. 10-CV-02863-EJD, 2011 WL 3267768  (N.D. Cal. July 28, 2011)..................................12

*Boston Scientific Corp.v. Cordis Corp.*,
   777 F. Supp. 2d 783 (D. Del. 2011).......................................................................................6

*Clouding IP, LLC v. SAP AG*,
   No. 13-01456-LPS, D.I. 35 (D. Del. Jan. 21, 2014) .............................................................13

*Courtesy Prods., L.L.C. v. Hamilton Beach Brands, Inc.*,
   2015 U.S. Dist. LEXIS 116032 (D. Del. Sept. 1, 2015) .........................................................4

*Dane Technologies, Inc. v. Gatekeeper Sys., Inc.*,
   No. 12–2730 ADM/AJB, 2013 WL 4483355 (D. Minn. Aug.20, 2013) ..................................4

*Dentsply Intl. et al. v. U.S. Endodontics, LLC*,
   No. 2:14-cv-196 (E.D. Tenn. Dec. 1, 2015).........................................................................15

*FMC Corp. v. Summit Agro USA, LLC*,
   C.A. No. 14-51-LPS, 2014 WL 3703629 (D. Del. July 21, 2014). .........................................12

*Gold v. Johns–Manville Sales Corp.*,
   723 F.2d 1068 (3d Cir. 1983) ................................................................................................4

*Intellectual Ventures I LLC v. Toshiba Corp.*,
   C.A. No. 13-453-SLR/SRF, 2015 WL 3773779 (D. Del. May 15, 2015). ..............................5

*Nexans Inc. v. Belden Inc.*,
   C.A. No. 12-1491-SLR-SRF, 2014 WL 651913 (D. Del. Feb. 19, 2014) ................................5

*Pentair Water Pool and Spa, Inc. v. Hayward Indus., Inc.*,
   2012 WL 6608619 (E.D.N.C. Dec. 18, 2012) ........................................................................5

*RR Donnelley & Sons Co. v. Xerox Corp.*,
   No. 12–CV–6198, 2013 WL 6645472 (N.D. Ill. Dec.16, 2013) .............................................4

*SenoRx, Inc. v. Hologic, Inc.*,
   No. 12-173-LPS-CJB, 2013 WL 144255 (D. Del. Jan. 11, 2013)......................................7, 12

*TQ Beta LLC v. Dish Network Corp.*,
No. 14-CV-848-LPS-CJB, 2016 WL 356024 (D. Del. Jan. 28, 2016) ......................................6

*TruePosition, Inc. v. Polaris Wireless, Inc.*,
No. 12-646-RGA/MPT, 2013 WL 5701529 (D. Del. Oct. 21, 2013) ......................................7

**Statutes**

35 U.S.C. § 315(b) .................................................................................................................2

37 C.F.R. § 42.100(b).............................................................................................................6

## I.      NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs filed this action more than a year ago on February 12, 2015. *See* D.I. 1. Plaintiffs' patents cover groundbreaking inventions in microfluidics that allow for chemical reactions, such as DNA replication, to controllably take place in a single drop of fluid. 10X has adopted this emerging technology to compete with RainDance.

In response to the Complaint, 10X requested an extension of time, and then filed a motion to dismiss instead of answering. D.I. 8. To attempt to keep this case moving, Plaintiffs promptly filed a 35-page First Amended Complaint ("FAC") with seventeen exhibits to address 10X's concerns about the level of detail in the complaint regardless of whether they had merit. In response, 10X filed another motion to dismiss in May 2015, again alleging pleading insufficiencies. Four days later, on an expedited basis, Plaintiffs responded to 10X's second motion to dismiss. D.I. 17. Plaintiffs believe that 10X's second motion lacks merit. That motion remains pending and the Court has not set a scheduling conference.

In the interim, 10X petitioned for *inter partes* reviews ("IPR") of the six patents-in-suit.[1] The patents-in-suit are strong, and 10X's IPR strategy thus has been largely unsuccessful. The Patent Trial and Appeal Board ("PTAB") has determined that 10X failed to establish a reasonable likelihood that it would prevail in showing the unpatentability of any claim in four of the six remaining patents-in-suit, and therefore declined to institute the IPRs. The table below summarizes the status of the IPR proceedings:

---

[1]      Although RainDance originally asserted seven patents, RainDance has decided to cancel the claims of one of those patents.

| Patent-in-Suit | IPR Case No. | IPR Filing Date | Institution Date | Status |
|---|---|---|---|---|
| 8,822,148 | IPR2015-01156 | May 6, 2015 | Denied Nov. 16, 2015 | Board Declined to Institute |
| 8,329,407 | IPR2015-01158 | May 6, 2015 | Denied Nov. 16, 2015 | Board Declined to Institute |
| 8,304,193 | IPR2015-01163 | May 6, 2015 | Denied Nov. 16, 2015 | Board Declined to Institute |
| 7,129,091 | IPR2015-01560 | July 8, 2015 | Denied Jan. 25, 2016 | Board Declined to Institute |
| 8,889,083 | IPR2015-01157 | May 6, 2015 | Instituted Nov. 16, 2015 | Final Written Decision Nov. 16, 2016 |
| 8,658,430 | IPR2015-01558 | July 31, 2015 | Instituted Jan. 19, 2016 | Final Written Decision Jan 19, 2017 |

The time frame for 10X to file additional IPR proceedings has expired. *See* 35 U.S.C. § 315(b). More than a year after this case was filed and after the PTAB declined to institute four out of 10X's six IPR petitions, 10X filed the instant motion to stay.

## II.     SUMMARY OF ARGUMENT

10X seeks to stay this action to delay this competitor litigation, notwithstanding the PTAB's determination that 10X's IPR petitions for four of the patents-in-suit did not meet the standard for institution. 10X would have the tail wag the dog by asking this Court to stay this case entirely—thus blocking Plaintiffs' infringement action for those four patents—because it managed to meet the standard for IPR institution on one patent related to those four patents and another patent in a separate patent family. Such an approach would complicate this matter—not simplify it. It would also impose prejudice on RainDance by further stalling its ability to seek relief for its competitor's infringement of its foundational technology. Indeed, when appeals are taken into consideration, 10X's proposed stay could last for years.

RainDance and 10X are competitors in an emerging industry for preparing biological samples for nucleic acid sequencing employing ground–breaking microfluidic technology. Plaintiffs' patents are foundational patents in the field of microfluidic devices that have enabled

the use of tiny microfluidic droplets as chemical microreactors, thus allowing researchers to conduct millions of miniaturized chemical reactions in parallel, including biological reactions of the type carried out in both RainDance's and 10X's products.  Based on his work on microfluidic droplets, the primary named inventor on five of the six patents-in-suit, Rustem Ismagilov,[2] was named by Thomson Reuters as one of the world's 100 most influential chemists during the period from 2000-2011.   Exh. 1 [Science Watch 2015].   Within months after 10X's announcement of its first, and then-only, product, Plaintiffs filed this lawsuit.  Since then, 10X's strategy has been to expand its infringement while attempting to stall this case.  The competitive harm in this emerging market is documented in the declaration of Raindance's Chief Technology Officer, Dr. Darren Link.

The stage of the case does not favor a stay.  This case is at an early stage only because 10X has challenged the level of detail in the FAC, which spans 35 pages and includes 17 exhibits.   10X's does not contend in its motion to stay that this case is somehow subject to resolution on the pleadings or that it does not understand what this case is about.  10X's attempt at further delay should not be rewarded, its motion to stay should be denied.   Raindance respectfully requests a scheduling conference.

## III.   STATEMENT OF FACTS

The relevant facts are stated in the Argument section below as appropriate.

## IV.   ARGUMENT

The relevant factors in considering a stay are: "(i) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (ii) whether a stay will simplify the issues in question and trial of the case; and (iii) whether discovery is complete and whether a

---

[2]   Dr. Ismagilov's inventive work was carried out when he was a Professor at the University of Chicago.  He is now a professor at the California Institute of Technology.

trial date has been set." *Courtesy Prods., L.L.C. v. Hamilton Beach Brands, Inc.*, 2015 U.S. Dist. LEXIS 116032, at *2-*3 (D. Del. Sept. 1, 2015).  "It is well settled that before a stay may be issued, the petitioner must demonstrate 'a clear case of hardship or inequity,' if there is 'even a fair possibility' that the stay would work damage on another party."  *Gold v. Johns–Manville Sales Corp.*, 723 F.2d 1068, 1075–76 (3d Cir. 1983).  All these considerations weigh against a stay.

### A.   A Stay Will Not Simplify This Case

For a stay pending IPR to have any chance of simplifying the case, it is a prerequisite that the IPR have some chance of success.  Here, however, 10X's IPR strategy has been largely unsuccessful.  For four of the six patents-in-suit, 10X failed to make even a threshold showing that it had a reasonable likelihood of success, and the PTAB declined to institute the IPRs.  In circumstances such as these, courts have declined to stay proceedings because a stay will have no effect except to unnecessarily prolong resolution of the parties' dispute.  *See, e.g., Courtesy Prods.*, 2015 U.S. Dist. LEXIS 116032, at *4 (denying stay where "the IPRs instituted by the PTAB do not address all of the claims at issue, meaning that the parties' dispute will not be fully resolved by the IPRs, regardless of the outcome of such.); *Dane Technologies, Inc. v. Gatekeeper Sys., Inc.*, No. 12–2730 ADM/AJB, 2013 WL 4483355, at *2 (D. Minn. Aug.20, 2013) ("Gatekeeper has only petitioned for review of two of the three patents in this case. Even if the PTO decided to review the '836 Patent and the '979 Patent, Dane would still be left with its infringement claim for the '379 Patent languishing and unresolved."); *RR Donnelley & Sons Co. v. Xerox Corp.*, No. 12–CV–6198, 2013 WL 6645472, at *3 (N.D. Ill. Dec.16, 2013) (denying stay where "[g]ranting a stay as to the entire litigation would cause the four unchallenged…patents to languish unresolved for an unspecified amount of time"); *Pentair Water Pool and Spa, Inc. v. Hayward Indus., Inc.*, 2012 WL 6608619, at *3 (E.D.N.C. Dec. 18,

2012) (denying motion to stay pending *inter partes* reexamination where only three of the seven patents-in-suit were involved in reexamination); *Adaptix, Inc. v. HTC Corp.*, No. 5:14-cv-02359-PSG, 2015 U.S. Dist. LEXIS 103503, at *13 (N.D. Cal. Aug. 5, 2015) ("Part of the quid pro quo of any stay pending inter partes review before the Patent Office is the promise of simplification….Where the IPR will address some, but not all, claims asserted in the district court, relative to the quo the value of the quid shrinks considerably.")

Even taking into consideration the two patents for which the PTAB has instituted IPR, there are still no meaningful prospects for case simplification.  Regardless of what happens with these two patents, for the four remaining patents, this Court will have to determine infringement of 10X's accused GemCode platform.  As such, the parties will need to engage in full discovery on this product platform.  As another judge on this Court has recognized, in these circumstances, the burden of litigation will not be reduced and a stay will not simplify the case:

> The facts of record further demonstrate that a stay will not simplify the issues in question and trial of the case, primarily because the NAND flash memory technology is at issue in both the IPR patents and other patents-in-suit not subject to the IPR. In other words, discovery on those products will proceed regardless of whether the stay is granted or not; the burden of litigation will not be reduced even if a stay were put in place.

*Intellectual Ventures I LLC v. Toshiba Corp.*, C.A. No. 13-453-SLR/SRF, 2015 WL 3773779, at *3 (D. Del. May 15, 2015).  Where, as here, "[d]enying a stay until the PTO makes a final determination…would not significantly alter the course of discovery," a stay is inappropriate. *Nexans Inc. v. Belden Inc.*, C.A. No. 12-1491-SLR-SRF, 2014 WL 651913, at *4 (D. Del. Feb. 19, 2014).

10X's contention that simplification would result from a stay is based solely on the notion that statements made by the PTAB in the IPR for U.S. Patent No. 8,889,083 ("the '083 patent") would somehow be relevant to the four related patents for which 10X could not even meet the institution standard. *See* D.I. 25 at 7.  For instance, 10X speculates that the PTAB's

construction of the claim terms "microfluidic device," "plugs," and "reaction" may be "particularly helpful" to this Court's ability to construe the claims of all the patents uninvolved in the limited PTAB proceedings. *Id.*

This is without merit. As an initial matter, 10X has already asked the PTAB to construe claim terms in the '083 patent and the four related patents for which the Board did not institute IPR. Across these five patents, 10X never sought construction of either "microfluidic device" or "reaction." 10X's assertion that the PTAB's construction of these terms will be "particularly helpful" to this Court is thus dubious on its face. As to the claim term "plug," the PTAB has already construed this term. Thus, to the extent that the PTAB's guidance is useful, it is already available and a stay is unjustified by such a speculative and minor consideration. In any event, the Board's construction of any term will be of diminished relevance because this Court applies the *Phillips* claim construction standard while the PTAB uses a "broadest reasonable interpretation" standard. 37 C.F.R. § 42.100(b). Due to these differing standards, the claim constructions from IPR proceedings "are not binding, on either the parties or the Court." *TQ Beta LLC v. Dish Network Corp.*, C.A. No. 14-848-LPS-CJB, 2016 WL 356024, at *4 (D. Del. Jan. 28, 2016). 10X's suggestion that the Court should stay this matter to wait for the PTAB's guidance on validity is similarly without merit. The parties and Court already have ample PTAB guidance regarding validity in the form of four detailed decisions concluding that, despite 10X's best efforts, 10X was unable to make even a threshold showing that four of the six patents-in-suit are invalid. *See* Exh. 2 ['091 Denial]; Exh. 3 ['148 Denial]; Exh. 4 ['193 Denial]; Exh. 5 ['407 Denial].

### B.    The Parties Are Competitors And A Stay Would Prejudice Plaintiffs

"Courts are generally reluctant to stay proceedings where the parties are direct competitors." *Boston Scientific Corp.v. Cordis Corp.*, 777 F. Supp. 2d 783. 789 (D. Del. 2011);

*TruePosition, Inc. v. Polaris Wireless, Inc.*, No. 12-646-RGA/MPT, 2013 WL 5701529, at *5 (D. Del. Oct. 21, 2013) ("This court has been reluctant to stay proceedings in situations where parties are direct competitors."). Indeed, where the parties are competitors, "there is a reasonable chance that delay in adjudicating the alleged infringement will have outsized consequences to the party asserting infringement has occurred, including the potential for loss of market share and an erosion of goodwill." *SenoRx, Inc. v. Hologic, Inc.*, No. 12-173-LPS-CJB, 2013 WL 144255, at *7 (D. Del. Jan. 11, 2013). 10X's argument that it does not compete with RainDance is fundamentally flawed on multiple levels. 10X contends that it does not compete with RainDance because RainDance's RainDrop product provides a different service than 10X's product (digital PCR as compared to DNA sequencing). *See* D.I. 25 at 9-10. A fundamental problem with 10X's argument, however, is that it focuses on just one of RainDance's products to the exclusion of all others, including RainDance's ThunderBolt™ and ThunderStorm® products. 10X apparently believed it was appropriate to assess whether the parties are competitors based on only RainDance's RainDrop® product because this was the product that RainDance mentioned in its FAC. *See id.* at 9 n.3. The argument on this motion to stay, however, is not limited to what Raindance included in its complaint almost a year ago.

When one considers RainDance's full product line, the competitive nature of the parties' relationship is apparent. This is confirmed in the accompanying declaration of RainDance's Chief Technology Officer and co-founder, Dr. Darren Link, who explains that RainDance offers products that serve the same general purpose as 10X's products and that allow for researchers to study overlapping phenomena. *See* Exh. 6 [Link Decl.] ¶¶ 3-5, 7. As Dr. Link states, "[i]ncreasingly, 10x and RainDance compete for the same customers in the same markets for the same applications." *Id.* ¶ 7.

As Dr. Link explains, RainDance's ThunderStorm® and ThunderBolts™ systems are used by researchers for content enrichment for next generation DNA sequencing, allowing DNA to be targeted and enriched to enable efficient sequencing. *Id.* ¶ 3; *see also* D.I. 25-15 at 1 (same). RainDance devotes an entire portion of its website to these products, which explains that the "fully-automated ThunderStorm® System enables researchers to generate best-in-class enriched target ***DNA libraries*** with your target of choice, while delivering the simplest workflow and affordability for high-volume analysis." Exh. 7 [NGS Enrichment]. In other words, the RainDance products prepare and package DNA for subsequent DNA sequencing experiments.

This is exactly what 10X's product does. As 10X describes its product on its own website, the "GemCode reagent delivery system partitions cells or arbitrarily long DNA molecules (including >100 kb) and prepares ***sequencing libraries*** in parallel such that all fragments produced within a partition share a common barcode." Exh. 8 [10X Technology] (emphasis added). Depicted below are the parties' representations of their respective product workflows. On the top is 10X's GemCode platform and on the bottom is RainDance's ThunderBolts™/ThunderStorm® system:

## 10x Genomics



## RainDance



D.I. 12, Exh. N; Exh. 7 [NGS Enrichment].   As the figures show, both parties' library preparation systems use primer libraries.  10X, like RainDance, partitions the primers and DNA into tiny droplets for amplification, as confirmed in 10X's recent publication in the journal *Nature Biotechnology*.  *See* Exh. 9 [Nature Biotechnology] at 3432 ("DNA molecules were partitioned into droplets to ***amplify the DNA*** and introduce 14-bp partition barcodes.").  Both parties carry out these processes using a microfluidic device, as depicted in the figures above.

9

There can be no dispute that the parties are providing overlapping library preparation products.[3] *See* Exh. 6 [Link Decl.] ¶¶ 3-5, 7.

10X nonetheless seeks to distinguish its product line as providing "***long range*** genomic information using an off-the-shelf short-read DNA sequencer." D.I. 25 at 11 (emphasis in original). It is true that 10X's initial product focused on preparation of bar-coded libraries in a manner that supposedly allowed for linking of sequencing information to acquire "long range" sequence information. But 10X cannot avoid competitor status simply because its initial product offering was narrowly focused on this application. Indeed, over the last year, 10X's infringing product offerings have rapidly expanded. 10X now proclaims that it offers "a wide array of applications" and a "diverse set of sequencing applications," many of which overlap with the applications offered by RainDance, as set forth in Dr. Link's declaration. Exh. 6 [Link Decl.] ¶¶ 3-5; Exh. 10 [10X Applications]. As 10X acknowledges, and as confirmed by Dr. Link, RainDance has been in collaboration with Pacific Biosciences ("PacBio") to provide a library preparation product that will use barcodes to provide even longer range sequence information than is available with 10X's product, and that will directly compete with 10X's product. *See id.* ¶ 6; D.I. 25 at 11. This product will be used with a simplified version of RainDance's existing ThunderStorm® systems. Exh. 6 [Link Decl.] ¶ 6. Although 10X seeks to avoid competitor status by mischaracterizing the parties' products and focusing on its early product offerings, the

---

[3]     To be sure, 10X provides an unclear description of its product, and the reader comes away with the impression that 10X's product is a DNA sequencing instrument. For instance, 10X states that "Raindance's Raindrop system is not a long-range genomic sequencer and does not compete with the 10X GemCode Platform." D.I. 25 at 11. The impression that 10X is providing a sequencing instrument must be corrected. Just like RainDance, 10X provides a DNA library preparation system. This is clear from 10X's portrayal of its product, which shows that 10X's GemCode product does not sequence DNA, but instead does "Barcoding & Library Construction" ***prior*** to DNA sequencing on an instrument that it ***not*** part of the 10X Genomics platform. Exh. 8 [10X Website].

parties provide instruments and products that provide substantially similar functionalities that are adaptable to specific applications as scientific research evolves.

10X contends that RainDance has acknowledged that it does not compete with RainDance by failing to list 10X as a "major competitor" in a recent SEC filing. D.I. 25 at 10. RainDance's SEC filing, however, confirms that it competes with 10X. As 10X notes, RainDance stated in its SEC filing "that its major competitors include Agilent Technologies Inc., Illumina, Inc., Qiagen N.V., and Bio-Rad Laboratories, Inc." *Id.* Notably, mere days ago, 10X announced co-marketing partnerships with each of Agilent, Illumina, and Qiagen. *See* Exh. 11 [Qiagen PR] ("The companies will each be co-marketing to their respective customers the 10x Chromium products along with QIAGEN's sample handling and preparation technologies, including the MagAttract HMW DNA kits, and informatics solutions."); Exh. 12 [Illumina PR] ("The Companies will each be co-marketing the 10x GemCode technology and Illumina sequencing solutions to their respective customers."); Exh. 13 [Agilent PR] ("The two companies will each create products that provide a streamlined workflow for 10x Genomics' Chromium platform using Agilent's market-leading SureSelect target enrichment technology.").

If, as 10X acknowledges, RainDance's principal competitors include Agilent, Illumina, and Qiagen, and if 10X is now co-marketing products with those companies, it is difficult to see how 10X is not also RainDance's direct competitor. Indeed, given 10X's recent strategic partnerships, an alliance of most of RainDance's principal competitors has seemingly lined up to compete against RainDance in RainDance's market sphere. 10X has forged its strategic relationships over the course of the last year, while it has been allowed to infringe in an unencumbered manner. 10X now asks that this matter be stayed (perhaps for years once appeals are taken into account) pending the completion of 10X's largely unsuccessful IPR campaign. As

10X has acknowledged in meet and confer, the parties are involved in a "newly-emerging field." Exh. 14 [1/19/16 Email from Kelly]. The rapidly-moving nature of the field and the potentially lengthy term of the stay requested by 10X would combine to seriously exacerbate the harm from the highly prejudicial developments that have taken place over the last year. *See* Exh. 6 [Link Decl.] ¶¶ 8-9.[4]

### C.   Moving Forward With This Case Stay Will Not Result In A Clear Case Of Hardship For 10X

In evaluating a stay request, Courts have considered "whether the moving party would face undue hardship or inequity in the absence of a stay. It has explained that such an inquiry should be a part of the Court's analysis of the 'prejudice' factor of the three-factor motion to stay-related balancing test, if there is even a fair possibility that the stay would work damage on another party." *FMC Corp. v. Summit Agro USA, LLC*, C.A. No. 14-51-LPS, 2014 WL 3703629, at *6 n.10 (D. Del. July 21, 2014).

In contrast to the prejudice to RainDance of a stay, moving forward with this case will impose no hardship on 10X—except that it will be properly called to account for starting to build a business based on infringement. 10X has attempted to portray itself as a "fledgling company in a newly-emerging field for which the expense of litigation is a considerable burden." Exh. 14 [1/19/16 Email from Kelly]. 10X also argues that it is a "new company" that "would be

---

[4]      In a footnote, 10X contends that because Plaintiffs have not moved for a preliminary injunction, there is no prejudice to RainDance. However, in some cases, the failure to seek a preliminary injunction could well be related to other factors (such as the high burden one must face to obtain a preliminary injunction and the difficulty in doing so without first having access to substantial discovery) and thus might not shed much light on the amount of prejudice the non-moving party will face from a stay." *SenoRx, Inc. v. Hologic, Inc.*, 2013 WL 144255, *8-*9 (D. Del. 2013); *see also Avago Techs. Fiber IP (Singapore) Pte. Ltd. v. IPtronics Inc.*, No. 10-CV-02863-EJD, 2011 WL 3267768, at *6 (N.D. Cal. July 28, 2011) ("As IPtronics points out, Avago might have other reasons for deciding not to pursue injunctive relief at this stage—for example, the difficulty of showing a likelihood of success on the merits while its patents are in reexamination. On IPtronics' motion to stay, the Court will not hold against Avago its decision to spare the parties more litigation.").

significantly hampered by unnecessary litigation expenses." But no evidentiary support is provided for these vague assertions.[5] None.

Any contention that litigation is a "considerable burden" for 10X is belied by the fact that 10X had adequate resources to retain a second law firm to pursue an entirely discretionary—and largely failed—IPR campaign against seven patents. D.I. 25 at 5. 10X should not be permitted to manufacture hardship now through its own unilateral decision to pursue this campaign. *Clouding IP, LLC v. SAP AG*, No. 13-01456-LPS, D.I. 35 (D. Del. Jan. 21, 2014) (denying motion to stay where "the purported prejudice to SAP of having to litigate in the PTAB and this Court is entirely the result of SAP's decision to file the petition for IPR.").

### D.     The Record Shows That 10X Filed This Motion For Purposes Of Delay

This motion is 10X's latest attempt to delay resolution of Plaintiffs' patent infringement claims as it establishes itself in the market and creates strategic partnerships using Plaintiffs' patented technology.

10X filed a first motion to dismiss in April 2015. *See* D.I. 8. In an effort to short circuit any delay associated with 10X's challenges to the form of Plaintiffs' pleading, Plaintiffs diligently filed an amended complaint, which addressed each of the concerns raised by 10X. *See* D.I. 12; *see also* D.I. 13 (Plaintiffs' Opposition Brief to Motion to Dismiss). 10X responded by filing yet ***another*** motion to dismiss, raising the same meritless arguments that had been raised in 10X's first motion. *See* D.I. 15. As detailed in Plaintiffs' opposition to that motion—which Plaintiffs filed on an expedited basis four days after 10X's motion to dismiss—the "only reasonable explanation for 10X's motion is that 10X seeks to delay progression of this case for

---

[5]     Even if it is true that 10X is "fledgling," this weighs against a stay because it suggests that 10X may well be unable to satisfy a judgment, particularly one that is inflated by years worth of additional damages during the term of a stay. As the Federal Circuit explained, "an infringer's inability to pay a judgment…may demonstrate the inadequacy of damages." *Apple, Inc. v. Samsung Elecs. Co. Ltd.*, 735 F.3d 1352, 1369 (Fed. Cir. 2013).

tactical reasons in support of its IPR strategy." D.I. 17 at 20.  This is confirmed by 10X's motion to stay.  Indeed, while 10X originally complained that Plaintiffs' pleadings "shed[] no light whatsoever" on how 10X infringes, D.I. 16 at 18, there is no suggestion in 10X's motion to stay that RainDance's pleadings are insufficient or that this case can be disposed of on the pleadings. 10X apparently had sufficient certainty as to what this case was about to pursue an IPR on every single patent-in-suit.

Since then, it has only become clearer that 10X's strategy is to delay resolution of this case.  10X has rebuffed every effort by RainDance to move this case forward.  First, at ***10X's suggestion***, the parties agreed to engage in a meet and confer to discuss scheduling pursuant to Rule 26(f), more than seven months ago, on May 22, 2015.  Just two hours before the scheduled time for the meet and confer, however, counsel for 10X inexplicably reneged, expressing a newfound unwillingness to engage in discussions about the schedule for this case.  Exh. 14 [Lindsay Kelley email to Derek Walter 5/21/2015 1:22pm].  10X subsequently rejected Plaintiffs' requests to initiate discovery and jointly request a scheduling conference with the Court so that this case could move forward.  Exh. 14 [Lindsay Kelley email to Derek Walter 1/19/16 5:08pm].  Now, more than a year after this case was filed—and after 10X's IPR campaign has been largely unsuccessful—10X brings this motion to stay based on its failed IPR strategy.  This sequence of events confirms that the instant motion is a continuation of 10X's effort to delay this case and prolong a finding of infringement for as long as possible while 10X expands its product line and gains a foothold in the market.

### E.    The Stage Of The Case Weighs Strongly Against A Stay

10X incorrectly assumes that the stage of the case favors a stay.  That is only true, however, if the IPR is also at an early stage—and the IPRs here are not.  Indeed, there are four

patents for which there are no IPR proceedings.  The stage of the case—over a year of inactivity from complaint filing—demands that those patents be allowed to move forward promptly. Further delay is unfair, particularly when one takes into consideration the potentially lengthy term of the stay.  *See, e.g.*, *Dentsply Intl. et al. v. U.S. Endodontics, LLC*, No. 2:14-cv-196, slip op. at 5 (E.D. Tenn. Dec. 1, 2015) ("While it is true that no scheduling order has been entered by the Court and no trial date set, it is likely that the case would ultimately remain stayed not just until August, 2016, but also far beyond that date when the Court considers the fact that either party might seek reconsideration before the PTAB and that an appeal to the Federal Circuit might take many additional months.").

As detailed above, the only reason this case has not moved forward is 10X's failure to participate.  Plaintiffs have already incurred significant costs as a result of 10X's continuing infringement during the delay due to 10X's motion practice.  The Court should not reward 10X's conduct with the further delay that it requests now.

## V.    PLAINTIFFS REQUEST A SCHEDULING CONFERENCE AND THE INITIATION OF DISCOVERY

10X has taken the position that it is not obligated to engage on this case until this Court sets a scheduling conference.  Faced with 10X's refusal to engage, Plaintiffs have taken steps to ensure that this case proceeds efficiently once a scheduling conference is set, including delivering early document requests pursuant to newly revised Rule 34.  *See* D.I. 23.  Since late January, 10X has been in possession of Plaintiffs' first set of documents requests, and Plaintiffs anticipate and expect that 10X will be able to use this advance information to promptly provide discovery.  10X's failure to have IPRs instituted for four of the six patents-in-suit demonstrates the strength of Plaintiffs' case, and it should now move forward.  Plaintiffs' thus request that the Court set a scheduling conference and order 10X to promptly participate in a Rule 26(f) conference with Plaintiffs so that discovery may be initiated.

## VI.    CONCLUSION

For the foregoing reasons, 10X's motion to stay should be denied.  Plaintiffs also request

that the Court set a scheduling conference so that discovery can be initiated.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*
_____
Jack B. Blumenfeld (#1014)
Karen Jacobs (#2881)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
kjacobs@mnat.com

*Attorneys for Plaintiffs*

OF COUNSEL:

Edward R. Reines
Derek C. Walter
Blake Davis
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA  94065
(650) 802-3000

February 29, 2016

## CERTIFICATE OF SERVICE

I hereby certify that on February 29, 2016, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on February 29, 2016, upon the following in the manner indicated:

Steven J. Balick, Esquire                                                      *VIA ELECTRONIC MAIL*
Tiffany Geyer Lydon, Esquire
Andrew C. Mayo, Esquire
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
Wilmington, DE  19801
*Attorneys for Defendant*

David Isaac Gindler, Esquire                                              *VIA ELECTRONIC MAIL*
Andrei Iancu, Esquire
Lindsay Androski Kelly, Esquire
Lauren Nicole Drake, Esquire
Elizabeth Chenyi Tuan, Esquire
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA  90067
*Attorneys for Defendant*


                                                        */s/ Jack B. Blumenfeld*
                                                        _____
                                                        Jack B. Blumenfeld (#1014)