IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BIO-RAD LABORATORIES, INC. | : | |
| and | : | |
| THE UNIVERSITY OF CHICAGO | : | |
| Plaintiffs, | : | C.A. No. 15-152-RGA |
| v. | : | |
| 10X GENOMICS, INC. | : | |
| Defendant | : | |

## VOIR DIRE

Good morning, ladies and gentlemen. I am Judge Andrews. We are here to select a jury in a civil case called Bio-Rad Laboratories, Inc. and The University of Chicago verse 10X Genomics, Inc.

I'm going to ask you a series of questions that will help the Court and the attorneys in the jury selection process. Before I ask any questions, I'm going to ask the Deputy Clerk to swear the jury panel to answer any questions truthfully. (*Deputy, Please swear the panel.*)

If you would answer "yes" to a question, please raise your hand, and when I call on you, state your jury number. At the end of the questions, the Deputy Clerk will ask some of you to take seats in the jury box, and, after that, the lawyers and I may ask those of you who answered any of the questions with a "yes" to come over to sidebar and to discuss your answers with the lawyers and me.

We expect to take five days to try this case, but jury deliberations could extend your service beyond that into next week. We will begin each day promptly at 9:30 a.m. and finish each day no

later than 5:00 p.m. Each day, we will have a morning break of fifteen minutes, a lunch break of one hour, and an afternoon break of fifteen minutes.

1. Does the length of this trial or the schedule I just outlined present a special hardship for you?

2. This is a patent lawsuit. The plaintiffs are Bio-Rad Laboratories, Inc. and The University of Chicago. I will refer to them as Bio-Rad and Chicago. The defendant is 10X Genomics, Inc. I will refer to it as 10X.

This lawsuit involves a type of technology that relates to the field of microfluidics and methods of forming small volumes of fluids called plugs or droplets, and conducting certain reactions in those plugs or droplets.

Bio-Rad and Chicago have rights in connection with patents on this technology and contend that 10X infringes their patents. Bio-Rad and Chicago seek money damages from 10X based on their assertion that 10X is infringing those patents. 10X asserts that it does not infringe any of the patents, that the patents are not valid, and that it does not owe Bio-Rad and Chicago any money. During this trial, the jury will be asked to make decisions to resolve the dispute between Bio-Rad and Chicago and 10X.

For those of you who end up being on the jury, the exact issues in dispute will be fleshed out during the trial. And I will give you detailed instructions on the law later or really at the end of the case.

Have any of you heard or read anything about this case?

3. The lawyers and law firms for Bio-Rad and Chicago are Brian Farnan and Michael Farnan of Farnan LLP, and Edward Reines and Derek Walter of Weil, Gotshal & Manges LLP. The lawyers and law firms for 10X Genomics are Fred Cottrell and Jason Rawnsley of Richards,

Layton & Finger and David Gindler, Alan Heinrich, Michael Strub, and Lauren Drake of Irell & Manella LLP. Do any of you or your immediate family, such as spouse, child, parent, or sibling, know any of the attorneys or law firms I have just named?

4. Have any of you or your immediate family had any business dealings with, or been employed by, any of these attorneys or law firms?

5. Have any of you or your immediate family ever been employed by or had a business relationship with Bio-Rad, Chicago, 10X, or two other companies that will be mentioned during trial, namely, RainDance Technologies, Inc. and QuantaLife, Inc.

6. Have you, or has anyone in your immediate family, owned stock in any of the companies I have mentioned?

7. Have any of you or your immediate families ever had any experience, good or bad, with any of these companies that might keep you from being a fair and impartial juror in this case?

8. Do you possess any opinions about any of these companies that might keep you from being a fair and impartial juror in this case?

9. Did you attend the University of Chicago?

10. Do you have any experience, education, or training in the development or manufacture of life science research and clinical diagnostic products?

11. I am going to read you the names of the potential witnesses in this case. When I am done, I am going to ask you whether you think you know any of them?

    Cory Gerdts
    Eric Ginsburg
    Rustem Ismagilov
    James Malackowski
    Samuel Sia
    Annette Tumolo
    Jeremey Agresti
    Rajiv Bhardadwaj

H-C. Chang
Mark DiPanfilo
Ben Hindson
Christopher Hindson
Wilhelm Huck
Darren Link
Adam Lowe
Kevin Ness
Jeffrey Olson
Jamie Osborn
Viresh Patel
Andrew Price
John Quackenbush
Spencer Roach
Serge Saxonov
Neal Shea
Joshua Shinoff
Helen Baca
John Stuelpnagel
Joshua Tice
Paul Wyatt
Keith Brown
Robert Cunningham

Do you know, or have you heard of, any of the potential witnesses?

12. Have you, or has anyone in your immediate family, been employed by the United States Patent and Trademark Office?

13. Have you, or has anyone in your immediate family, ever applied for a patent or obtained a patent in the United States or abroad?

14. Have you, or has anyone in your immediate family, been involved in a dispute about an invention or patent rights?

15. Do you have any opinions about patents, patent rights, the enforcement of patents, or the United States Patent and Trademark Office that might make it difficult for you to be a fair and impartial juror in this case?

16. Do you have any strong opinions about the life science research and clinical diagnostics industry, or companies?

17. Have any of you ever had any experience with the legal system that might make it difficult for you to be a fair and impartial juror?

18. Have you ever served on a jury?

19. If you are selected to be a member of the jury in this case, is there any reason you would be unable to render a verdict based solely on the evidence presented at the trial?

20. If you are selected to be a member of the jury in this case, is there any reason you would not be able to follow and apply the law as I explain it to you?

21. Is there anything, such as poor vision, difficulty hearing, or difficulty understanding spoken or written English, that would make serving as a member of the jury difficult?

22. This is the last question. Is there anything else, including something you have remembered in connection with one of the earlier questions, that you think you would like to tell me that relates to serving as a member of the jury in this case?