IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BIO-RAD LABORATORIES, INC. and
THE UNIVERSITY OF CHICAGO,

Plaintiffs,

v.

10X GENOMICS, INC.,

Defendant.

C.A. No. 15-152-RGA

MEMORANDUM ORDER

Presently before the Court is Defendant's motion to exclude the Supplemental Expert Report and Opinion of Plaintiffs' damages expert, James E. Malackowski, and preclude Plaintiffs from presenting lost profits at trial. (D.I. 394).

Defendant's motion relates to my prior *Daubert* order, which excluded Mr. Malackowski's lost profits opinion regarding a two-supplier market, and his reasonable royalty opinion to the extent that he failed to account for apportionment. (D.I. 361). I subsequently granted Plaintiffs' request to supplement Mr. Malackowski's report. (D.I. 366; D.I. 389 at 18:21–20:17). Plaintiffs have since submitted that they do not intend to present a claim for lost profits at trial. (D.I. 417). Therefore, the only issue before the Court is whether Mr. Malackowski's supplemental report fills the gap in his initial reasonable royalty opinion with respect to apportionment.

I have considered the parties' briefing. (D.I. 395, 407, 411). I heard oral argument on November 1, 2018.

## I. BACKGROUND

On February 12, 2015, RainDance Technologies, Inc. ("RainDance") and the University of Chicago filed suit against 10X alleging infringement of U.S. Patent Nos. 8,273,573 ("the '573 patent"), 7,129,091 ("the '091 patent"), 8,304,193 ("the '193 patent"), 8,329,407 ("the '407 patent"), 8,822,148 ("the '148 patent"), and 8,889,083 ("the '083 patent") (collectively, "the Ismagilov patents"). (D.I. 1). On October 18, 2016, RainDance and the University of Chicago filed a third amended complaint in which they asserted the original Ismagilov patents except for the '573 patent, and an additional patent on behalf of RainDance only. (D.I. 85). The RainDance patent was later dismissed. (D.I. 138). On May 30, 2017, Bio-Rad substituted for RainDance. (D.I. 180).

## II. LEGAL STANDARD

Federal Rule of Evidence 702 sets out the requirements for expert witness testimony and states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Third Circuit has explained:

> Rule 702 embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit. Qualification refers to the requirement that the witness possess specialized expertise. We have interpreted this requirement liberally, holding that "a broad range of knowledge, skills, and training qualify an expert." Secondly, the testimony must be reliable; it "must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his o[r] her belief. In sum, *Daubert* holds that an inquiry into the

2

> reliability of scientific evidence under Rule 702 requires a determination as to its scientific validity." Finally, Rule 702 requires that the expert testimony must fit the issues in the case. In other words, the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact. The Supreme Court explained in *Daubert* that "Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility."
>
> By means of a so-called "*Daubert* hearing," the district court acts as a gatekeeper, preventing opinion testimony that does not meet the requirements of qualification, reliability and fit from reaching the jury. *See Daubert* ("Faced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset, pursuant to Rule 104(a) [of the Federal Rules of Evidence] whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue.").

*Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404–05 (3d Cir. 2003) (footnote and internal citations omitted).[1] At base, "the question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court." *Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015). Indeed, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 596 (1993).

## III. ANALYSIS

### A. Benchmark Licenses

Mr. Malackowski relies on three benchmark licenses to determine the reasonable royalty arising from the hypothetical negotiation—the Applera/Bio-Rad license, the Caliper/RainDance

---

[1] The Third Circuit wrote under an earlier version of Rule 702, but the later amendments were not intended to make any substantive change.

3

license, and the Applied BioSystems/QuantaLife license. (D.I. 250-1 at 30–36; D.I. 363, Ex. A at 9–19).

Defendant's main argument is that Mr. Malackowski's apportionment methodology is inappropriate because he relies on qualitative, instead of quantitative, analyses. (D.I. 395 at 9–11). I think Defendant's theory conflicts with the general understanding that "any reasonable royalty analysis necessarily involves an element of approximation and uncertainty." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009). An expert witness must provide "some explanation of both why and generally to what extent the particular factor impacts the royalty calculation," but need not demonstrate "mathematical precision." *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 31 (Fed. Cir. 2012) (discussing *Georgia-Pacific* factors). In fact, it may be impossible to quantitatively determine the exact percentage of a royalty rate that corresponds to each component of a licensed product.[1]

I excluded Mr. Malackowski's initial reasonable royalty opinion because he relied on the benchmark licenses as having built in apportionment, without conducting a separate apportionment analysis, and without a logical basis for doing so. Specifically, Mr. Malackowski failed to explain how the royalty rates in the benchmark licenses were "apportioned in a comparable fashion to the contribution of the patented technology to the accused products." (D.I. 361 at 17 n.3). I think Mr. Malackowski's supplemental report fills the gaps in his initial report, at least to the extent necessary to make his reasonable royalty opinion admissible. Mr.

---

[1] I believe that the following commentary is accurate: "The challenge is that apportionment is inherently imprecise. There's never going to be a perfect basis to apportion. The proof will never be perfect. It cannot be perfect. So you can't require perfect. . . . Licensors and licensees are not doing [rigorous scientific analyses] to decide the royalty rate. They negotiate it based on their perception of the value being contributed—based on a lot of qualitative information typically. . . . To require that sort of level of scientific discipline, (a) increases the cost of every case, and (b) divorces us from real life." (D.I. 408, Ex. 3 at 1–2).

4

Malackowski compared the unpatented features of the accused product with what he considered to be the unlicensed features of the products in the benchmark licenses.[2] Mr. Malackowski opined that an analogous unlicensed feature exists for each unpatented feature. (D.I. 363, Ex. A at 9–19). For example, regarding the Caliper/RainDance license, Mr. Malackowski analogized droplet technology to gel beads, additional reagents to droplet and surfactant chemistry, software to software, and integration to integration.[3] (D.I. 363, Ex. A at 11–12). Applying a similar analysis to each benchmark license, Mr. Malackowski found the relative value of the licensed technology to the licensed products comparable to the relative value of the asserted patent to the accused product. (*Id.* at 11–19). Therefore, he opined that the royalty rates in the benchmark licenses were apportioned in a comparable fashion to the royalty rate in the hypothetical license. (*Id.* at 19). I think this analysis adequately addresses my concerns with the methodology in Mr. Malackowski's initial reasonable royalty opinion. I do not think the supplemental report should be excluded simply because it applies qualitative, rather than quantitative, analyses.

In the alternative, Defendant argues that regardless of whether Mr. Malackowski's methodology was appropriate, he failed to reliably apply that methodology to the facts of this case. Defendant spends considerable effort disputing whether the benchmark licenses are sufficiently comparable to the license resulting from the hypothetical negotiation. (D.I. 395 at 11–15). I rejected Defendant's arguments in my prior *Daubert* order, which found that Mr. Malackowski met a showing of baseline comparability between the licenses, and that the degree of comparability is a factual issue best addressed through cross examination. (D.I. 361 at 14). I

---

[2] Mr. Malackowski relies on the unpatented features identified by Defendant's damages expert, Dr. Sullivan. (D.I. 363, Ex. A at 5–8).

[3] Defendant raised the point at oral argument that even a software to software comparison could be inaccurate because it fails to account for the quality of each software. I think this argument demands an unreasonable level of factual detail and precision. Rather, such concerns should be considered to be an issue of weight and credibility that can be explored during cross-examination.

5

think reconsideration of my prior findings would be unwarranted, and the request to do so is untimely.

Defendant stated at oral argument that Dr. Shinoff, whom Mr. Malackowski relied on in part to create his supplemental report, lacked foundation for his input. Defendant argues that Mr. Malackowski's methodology was thus unreliably applied to the facts of this case. I think this is largely a dispute about the cogency of Dr. Malackowski's opinion. The parties represented that Dr. Shinoff has a PhD in virology and holds a business development/licensing role at Bio-Rad. Defendant deposed Dr. Shinoff solely on the issues relating to Mr. Malackowski's supplemental report. I believe Defendant will have ample opportunity at trial to test the weight of Dr. Shinoff's input through cross-examination of Mr. Malackowski, or of Dr. Shinoff himself, should he testify.

### B. The Chicago/RainDance License

Mr. Malackowski separately relies on a fourth license—the Chicago/RainDance license—to set a floor for his reasonable royalty. (D.I. 250-1 at 36-37; D.I. 363, Ex. A at 19). Defendant argues that Mr. Malackowski's testimony based on this license should be excluded for failure to apportion. Mr. Malackowski opined that "no adjustment would be necessary in order to account for technical comparability, as both the UChicago/RainDance License and the hypothetical negotiation relate to substantially the same portfolio of patents." (D.I. 363, Ex. A at 19).

The parties provide very little argument on this issue. Defendant simply states that Mr. Malackowski has made no effort to apportion the reasonable royalty derived from the Chicago/RainDance license. In response, Plaintiffs argue that Defendant's damages expert, Dr. Sullivan, also found no apportionment necessary. Plaintiffs characterize Dr. Sullivan's

6

adjustments to the UChicago/RainDance royalty rate as accounting for "alleged economic considerations," while Defendant argues that they account for apportionment. (D.I. 407 at 15; D.I. 411 at 7). I do not think Dr. Sullivan's analysis is pertinent to whether Mr. Malackowski's testimony should be excluded. The Chicago/RainDance license included the asserted patents. I think that Mr. Malackowski's opinion that apportionment was unnecessary raises a factual dispute, not a methodological issue. The soundness of the logic behind his conclusion is an issue for the jury.

### C. Dr. Sullivan's Testimony on the Value of Defendant's Products

Lastly, Defendant argues that Mr. Malackowski's testimony rebutting Dr. Sullivan's opinions on the value of unpatented features in the accused products should be struck, because (1) it is beyond the proper scope of the supplemental report, and (2) Mr. Malackowski is not a technical expert.

The Third Circuit *Pennypack* factors provide a useful framework for courts in determining whether to exclude "critical evidence," such as expert testimony. The factors include: (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, and (4) bad faith or willfulness in failing to comply with the court's order. *Meyers v. Pennypack Woods Home Ownership Assn.*, 559 F.2d 894, 904–05 (3d Cir. 1977).

I think Defendant's argument is mooted by the fact that Dr. Sullivan was able to rebut Mr. Malackowski's opinions in his own responsive supplemental report. (D.I. 398-7, Ex. Z at 26–33). Like Mr. Malackowski, Dr. Sullivan is not a technical expert, but opined on the value of various features in the accused products. Therefore, Defendant suffers no prejudice from Mr.

7

Malackowski's testimony regarding the weight of Dr. Sullivan's opinions on the value of features in the accused products. (D.I. 363, Ex. A at 5–8).

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to exclude the Supplemental Expert Report and Opinion of Mr. Malackowski (D.I. 394) is **DENIED**.

IT IS SO ORDERED this ___ day of November 2018.

United States District Judge