# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BIO-RAD LABORATORIES, INC. and THE UNIVERSITY OF CHICAGO, | ) ) | |
| | ) | Civil No. 15-cv-152-RGA |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| 10X GENOMICS, INC.,` | ) | |
| | ) | |
| Defendant. | ) | |

## JOINT [PROPOSED] FINAL JURY INSTRUCTIONS

# **TABLE OF CONTENTS**

**Page**

1.      GENERAL INSTRUCTIONS ......................................................................... 1

     1.1.      JOINT: INTRODUCTION .......................................................... 1

     1.2.      JOINT: JURORS' DUTIES .......................................................... 2

     1.3.      JOINT: EVIDENCE DEFINED .................................................... 3

     1.4.      JOINT: CONSIDERATION OF EVIDENCE .............................. 5

     1.5.      JOINT: DIRECT AND CIRCUMSTANTIAL EVIDENCE ........ 6

     1.6.      JOINT: CREDIBILITY OF WITNESSES .................................. 7

     1.7.      JOINT: EXPERT WITNESSES .................................................. 8

     1.8.      JOINT: EXHBITS AND DEMONSTRATIVE EXHIBITS ........ 9

     1.9.      JOINT: USE OF NOTES ........................................................... 10

2.      JOINT: BURDENS OF PROOF ............................................................... 11

3.      PATENT CLAIMS ..................................................................................... 13

     3.1.      JOINT: THE ROLE OF CLAIMS IN THE PATENT ............... 13

     3.2.      JOINT: INDEPENDENT AND DEPENDENT CLAIMS .......... 14

     3.3.      JOINT: CONSTRUCTION OF CLAIMS .................................. 16

     3.4.      JOINT: OPEN ENDED OR "COMPRISING" CLAIMS ........... 17

     3.5.      JOINT: INFRINGEMENT GENERALLY .................................. 18

     3.6.      JOINT: DIRECT INFRINGEMENT ........................................... 19

     3.7.      CONTESTED: DEFENDANT'S INSTRUCTION ON
             LIMITATIONS ON INFRINGEMENT – THE REVERSE
             DOCTRINE OF EQUIVALENTS ............................................. 20

3.8.   CONTESTED: PLAINTIFFS' INSTRUCTION:
       CONTRIBUTORY INFRINGEMENT .......................................................22

3.9.   CONTESTED: DEFENDANT'S INSTRUCTION: INDIRECT
       INFRINGEMENT—CONTRIBUTORY INFRINGEMENT ....................23

3.10.  CONTESTED: PLAINTIFFS' INSTRUCTION: INDUCING
       PATENT INFRINGEMENT ........................................................................25

3.11.  CONTESTED: DEFENDANT'S INSTRUCTION: INDIRECT
       INFRINGEMENT: ACTIVE INDUCEMENT ..........................................26

3.12.  PLAINTIFFS' INSTRUCTION: INFRINGEMENT BY SUPPLY
       OF COMPONENTS ESPECIALLY MADE OR ADAPTED FOR
       USE IN THE PATENTED INVENTION INTO ANOTHER
       COUNTRY (271(f)(1))..................................................................................29

3.13.  PLAINTIFFS' INSTRUCTION: INFRINGEMENT BY SUPPLY
       OF COMPONENTS ESPECIALLY MADE OR ADAPTED FOR
       USE IN THE PATENTED INVENTION TO ANOTHER
       COUNTRY (271(f)(2))..................................................................................31

3.14.  JOINT: INFRINGEMENT UNDER THE DOCTRINE OF
       EQUIVALENTS............................................................................................32

4.     CONTESTED: INVALIDITY.................................................................................34

4.1.   JOINT: PERSON OF ORDINARY SKILL IN THE ART ........................35

4.2.   CONTESTED: PRIOR ART ........................................................................36

4.3.   JOINT INSTRUCTION: ANTICIPATION .................................................38

4.4.   JOINT: OBVIOUSNESS..............................................................................40

4.5.    AGREED: ENABLEMENT ..................................................................... 45

4.6.    CONTESTED: DEFENDANT'S INSTRUCTION:

INDEFINITENESS ................................................................................ 47

5.    CONTESTED: PLAINTIFFS' INSTRUCTION: WILLFUL

INFRINGEMENT ............................................................................................ 49

6.    CONTESTED: DEFENDANT'S INSTRUCTION: WILLFULNESS ................... 50

7.    DAMAGES ..................................................................................................... 51

7.1.    JOINT: DAMAGES—GENERALLY ....................................................... 51

7.2.    JOINT: REASONABLE ROYALTY AS A MEASURE OF

DAMAGES ........................................................................................... 53

7.3.    JOINT: FACTORS FOR DETERMINING A REASONABLE

ROYALTY ........................................................................................... 54

7.4.    JOINT: USE OF COMPARABLE LICENSE AGREEMENTS ................ 57

7.5.    CONTESTED: DEFENDANT'S INSTRUCTION: DAMAGES—

APPORTIONMENT ............................................................................ 58

8.    DELIBERATION AND VERDICT ..................................................................... 60

8.1.    JOINT: DELIBERATIONS AND VERDICT—INTRODUCTION .......... 60

9.    JOINT: UNANIMOUS VERDICT ..................................................................... 61

10.    JOINT: DUTY TO DELIBERATE ..................................................................... 63

11.    JOINT: SOCIAL MEDIA ................................................................................... 64

12.    JOINT: COURT HAS NO OPINION ................................................................. 65

Plaintiffs Bio-Rad Laboratories, Inc. and The University of Chicago (collectively, "Plaintiffs") and defendant 10X Genomics, Inc. ("10X Genomics" or "Defendant") (hereafter, Plaintiffs and 10X Genomics may referred to together as the "Parties") hereby submit the following Joint [Proposed] Final Jury Instructions for the trial in this matter. The titles for each instruction identify whether that particular instruction is submitted as a "Joint" or "Contested" instruction. If an instruction is "Contested," then there is an additional designation specifying whether its "Plaintiffs' Instruction" or "Defendant's Instruction." Where the Parties agree on the inclusion of an instruction and are generally in agreement on its wording but there remains some dispute over the exact language, differential color highlighting is used. Specifically, text highlighted in yellow is text that Plaintiffs propose adding to the instructions to which 10X Genomics does not agree. Text highlighted in blue is text that 10X Genomics proposes adding to the instructions to which Plaintiffs do not agree. The Parties also are not currently in agreement on the order in which the instructions are to be read to the jury.  If they are unable to reach agreement, they will raise this issue with the Court.

The Parties reserve all rights to supplement, amend, or otherwise modify these proposed instructions as appropriate, including but not limited to the right to revise their positions on the proposed instructions in response to future rulings by the Court or the evidence as it is admitted at trial. The parties submit these proposed jury instructions without waiver of their position that the opposing party has not presented sufficient evidence to submit some or all of its affirmative claims, damages theories, or affirmative defenses to the jury, and without waiver of arguments presented in motions *in limine* or during claim construction.  The parties also submit these instructions subject to the preservation of positions taken during

claim construction, *Daubert* proceedings, summary judgment, and other pretrial proceedings.

1

_____

1

## 1.      GENERAL INSTRUCTIONS

## 1.1.    JOINT: INTRODUCTION

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

I will start by explaining your duties and the general rules that apply in every civil case. Then I will explain some rules that you must use in evaluating particular testimony and evidence. Then I will explain the positions of the parties and the law you will apply in this case. Finally, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say. In following my instructions you must follow all of them and not single out some and ignore others. They are all important.

You will have a written copy of these instructions with you in the jury room for your reference during your deliberations. You will also have a verdict form, which will list the questions that you must answer to decide this case.

**Authorities:**

*Amgen, Inc. v. Hospira, Inc.*, Civ. A. No. 15-cv-0839-RGA, D.I. 323 (Sept. 22, 2017), at 1; *AVM Techs., LLC v. Intel Corp.*, Civ. A. No. 15-cv-0033-RGA, D.I. 719 (May 8, 2017), at 1.

## 1.2.    JOINT: JURORS' DUTIES

You have two main duties as jurors.  The first one is to decide what the facts are from the evidence that you saw and heard here in court.  Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide, under the appropriate burden of proof, which party should prevail on each of the issues presented.  It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly.  Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

**Authorities:**

*Amgen, Inc. v. Hospira, Inc.*, Civ. A. No. 15-cv-0839-RGA, D.I. 323 (Sept. 22, 2017), at 2; *AVM Techs., LLC v. Intel Corp.*, Civ. A. No. 15-cv-0033-RGA, D.I. 719 (May 8, 2017), at 2.

**1.3.     JOINT: EVIDENCE DEFINED**

The evidence from which you are to find the facts consists of the following:

1.     The testimony of the witnesses;

2.     Documents and other things received as exhibits;

3.     Any facts that are stipulated--that is, formally agreed to by the parties; and

4.     Any facts that are judicially noticed--that is, facts I say you must accept as true even without other evidence.

The following things are not evidence:

1.     Statements, arguments, and questions of the lawyers for the parties in this case;

2.     Objections by lawyers.

3.     Any testimony I tell you to disregard; and

4.     Anything you may see or hear about this case outside the courtroom.

You must make your decision based only on the evidence that you saw and heard in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

You should use your common sense in weighing the evidence.  Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

There are rules that control what can be received into evidence.  When a lawyer asked a question or offered an exhibit into evidence, and a lawyer on the other side thought that it was not permitted by the rules of evidence, that lawyer may have objected.  This simply means that the

lawyer requested that I make a decision on a particular rule of evidence.  You should not be influenced by the fact that an objection was made.  Objections to questions are not evidence.  Lawyers have an obligation to their clients to make objections when they believe that evidence being offered is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.  If the objection was sustained, ignore the question.  If it was overruled, treat the answer like any other.  If you were instructed that some item of evidence was received for a limited purpose only, you must follow that instruction.

Also, certain testimony or other evidence may have been ordered struck from the record and you were instructed to disregard this evidence.  Do not consider any testimony or other evidence that was struck or excluded.  Do not speculate about what a witness might have said or what an exhibit might have shown.

**Authority:**

Third Circuit Model Jury Instructions No. 1.5 (2017) (modified to past tense).

**1.4.**     **JOINT: CONSIDERATION OF EVIDENCE**

You should use your common sense in weighing the evidence.  Consider the evidence in light of your everyday experience with people and events, and give it whatever weight you believe it deserves.  If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

**Authorities:**

*Amgen, Inc. v. Hospira, Inc.*, Civ. A. No. 15-cv-0839-RGA, D.I. 323 (Sept. 22, 2017), at 4; *AVM Techs., LLC v. Intel Corp.*, Civ. A. No. 15-cv-0033-RGA, D.I. 719 (May 8, 2017), at 7.

## 1.5.    JOINT: DIRECT AND CIRCUMSTANTIAL EVIDENCE

There are two types of evidence that you may use in reaching your verdict.  One type of evidence is called "direct evidence."  An example of "direct evidence" is when a witness testifies about something that the witness knows through his own senses — something the witness has seen, felt, touched or heard or did.  If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining.  Another form of direct evidence is an exhibit where the fact to be proved is its existence or current condition.

The other type of evidence is circumstantial evidence.  "Circumstantial evidence" is proof of one or more facts from which you could find another fact.  If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

You should consider both kinds of evidence that were presented to you.  The law makes no distinction in the weight to be given to either direct or circumstantial evidence. You are to decide how much weight to give any evidence.

**Authority:**

Third Circuit Model Jury Instructions No. 1.6 (2017) (modified to past tense).

**1.6.    JOINT: CREDIBILITY OF WITNESSES**

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe.  You are the sole judges of the credibility of the witnesses.  "Credibility" means whether a witness is worthy of belief.  You may believe everything a witness said or only part of it or none of it.  In deciding what to believe, you may consider a number of factors, including the following:

(1)    the opportunity and ability of the witness to see or hear or know the things the witness testifies to;

(2)    the quality of the witness's understanding and memory;

(3)    the witness's manner while testifying;

(4)    whether the witness has an interest in the outcome of the case or any motive, bias or prejudice;

(5)    whether the witness is contradicted by anything the witness said or wrote before trial or by other evidence;

(6)    how reasonable the witness's testimony is when considered in the light of other evidence that you believe; and

(7)    any other factors that bear on believability.

**Authority:**

Third Circuit Model Jury Instructions No. 1.7 (2017).

**1.7.    JOINT: EXPERT WITNESSES**

During the trial, you heard testimony from expert witnesses.  When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field—called an expert witness—is permitted to state his or her opinion on those technical matters.  However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness. Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case.  You are free to accept or reject the testimony of experts, just as with any other witness.

**Authority:**

*Amgen, Inc. v. Hospira, Inc.*, Civ. A. No. 15-cv-0839-RGA, D.I. 323 (Sept. 22, 2017), at 7.

**1.8.    JOINT: EXHBITS AND DEMONSTRATIVE EXHIBITS**

During the course of the trial, you have seen many exhibits.  Many of these exhibits were admitted as evidence.  Some of these admitted exhibits or portions of them have been displayed for you on a screen and you will have these admitted exhibits, whether displayed on a screen or not, in the jury room during your deliberations.

There are other exhibits (including charts and animations presented by attorneys and witnesses) that were offered to help illustrate the testimony of the various witnesses.  These illustrations, called "demonstrative exhibits," have not been admitted as evidence, are not evidence, and should not be considered as evidence.  Rather, it is the underlying testimony of the witness that you heard when you saw the demonstrative exhibits that is the evidence in this case.

**Authority:**

*Amgen, Inc. v. Hospira, Inc.*, Civ. A. No. 15-cv-0839-RGA, D.I. 323 (Sept. 22, 2017), at 8.

## 1.9.    JOINT: USE OF NOTES

You may use notes taken during trial to assist your memory.  However, you should use caution in consulting your notes.  There is always a tendency to attach undue importance to matters that you have written down.  Some testimony that you may consider to be unimportant at the time presented, and thus not written down, may take on greater importance later on in the trial in light of all the evidence presented.  Therefore, you are instructed that your notes are only a tool to aid your own individual memory, and you should not compare notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence.  Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial.  Above all, your memory should be the greatest asset when it comes time to deliberate and render a decision in this case.

**Authorities:**

*Amgen, Inc. v. Hospira, Inc.*, Civ. A. No. 15-cv-0839-RGA, D.I. 323 (Sept. 22, 2017), at 9; *AVM Techs., LLC v. Intel Corp.*, Civ. A. No. 15-cv-0033-RGA, D.I. 719 (May 8, 2017), at 5.

## 2.    JOINT: BURDENS OF PROOF

For each issue in this case, either Plaintiffs or 10X Genomics bears the burden of proof, which means that it bears the burden of persuading you to find in its favor.  In a patent case such as this, there are two different burdens of proof.  The first is called "preponderance of the evidence." The second is called "clear and convincing evidence."

For any issue on which a party bears the burden of proof by a preponderance of the evidence, that party has carried its burden if you find that what the party claims is more likely true than not, when considered in light of all of the evidence.  To put it differently, if you were to put each party's evidence on the opposite sides of a scale, the evidence supporting the party with the burden of proof would have to make the scales tip somewhat on the side of that party.

Here, Plaintiffs have the burden of proving by a preponderance of the evidence that 10X Genomics infringes and/or has infringed the '091 Patent, '193 Patent, '407 Patent, or the '083 Patent, and the amount of damages Plaintiffs should receive to compensate them for any infringement.

For any issue on which a party bears the burden of proof by clear and convincing evidence, that party has carried its burden if you find that what the party claims is highly probable, when considered in light of all of the evidence.  Proof by clear and convincing evidence is a higher burden than proof by a preponderance of the evidence.

Here, 10X Genomics has the burden of proving by clear and convincing evidence that the claims of the '091 Patent, '193 Patent, '407 Patent, or 083 Patent are invalid.

**Authority:**

*Amgen Inc. v. Hospira, Inc.*, Civ. A. No. 15-cv-00839-RGA, D.I. 323 (Sept. 22, 2017), at 12 (modified to address the facts and issues in this case).

AIPLA Model Patent Jury Instructions (July 2018) at 5; Federal Circuit Bar Association Model

Patent Jury Instructions (July 2016) at 39 (Instruction 4.1); Northern District of California Model

Patent Jury Instructions (January 2018) at 26 (Instruction 4.1a); and The National Jury

Instruction Project Model Patent Jury Instructions (June 2009) at 9 (Instruction 1.5).

**3.      PATENT CLAIMS**

**3.1.    JOINT: THE ROLE OF CLAIMS IN THE PATENT**


Before you can decide the issues in this case, you will need to understand the role of patent "claims."  The patent claims are the numbered sentences at the end of each patent.  The claims are important because the words of a claim define the scope of the patent right.  The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but the claims define the extent of the patent's coverage.  Each claim may cover more or less than another claim.  Therefore, what a patent covers depends, in turn, on what each of its claims covers.


**Authority:**

*Amgen, Inc. v. Hospira, Inc.*, Civ. A. No. 15-cv-0839-RGA, D.I. 323 (Sept. 22, 2017), at 13.

## 3.2.    JOINT: INDEPENDENT AND DEPENDENT CLAIMS

Claims can be stated in two different ways in a patent.  The first way a patent claim can be stated is in the form of an "independent" claim.  An "independent" claim sets forth all of the requirements that must be met in order for an accused product or method to be covered by that claim, and thus infringe that claim. An independent claim is read alone to determine its scope.

In this case, claim 1 of the '091 Patent; claim 1 of the '193 Patent; claim 1 of the '407 Patent; and claim 1 of the '083 Patent are each independent claims.

The second way a claim can be stated is in the form of a "dependent" claim.  A dependent claim does not itself recite all of the requirements of the claim but instead incorporates the requirements of another claim or claims and adds its own additional requirements.  In this way, the claim "depends" on another claim or claims.  To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claims from which it depends.  For example, claim 3 of the '091 Patent is a dependent claim of claim 1 and, as a result, claim 3 includes all the requirements of claim 1 and all the additional requirements of claim 3.

An accused product or method is only covered by, and therefore infringes, a dependent claim if the accused product or method meets all of the requirements of both the dependent claim and the claims from which the dependent claim depends.  Because a dependent claim incorporates all of the features of the independent claims from which it depends, if you find that an independent claim is not infringed, then the claims that depend from that independent claim cannot be infringed.

**Authorities:**

*Amgen, Inc. v. Hospira, Inc.*, Civ. A. No. 15-cv-0839-RGA, D.I. 323 (Sept. 22, 2017), at 14 (modified to address the facts and issues in this case); *AVM Techs., LLC v. Intel Corp.*, Civ. A.

No. 15-cv-0033-RGA, D.I. 719 (May 8, 2017), at 14 (modified to address the facts and issues in this case).

## 3.3.    **JOINT: CONSTRUCTION OF CLAIMS**

The law says that it is the Court's duty to define the terms of patent claims.  I have already defined the meaning of some of the words of the patent claims that you are considering in this case.  These definitions have been provided to you, and they are attached to these jury instructions.

You must accept my definition of these words in the patent claims as correct.  You must use the definitions I give you for each claim to make your decisions as to whether the claim is infringed or invalid.  You must ignore any different definitions used by the witnesses or the attorneys.  You should not take my definition of the language of the patent claims as an indication that I have a view regarding how you should decide the infringement or invalidity issues that you are being asked to decide.  These issues are yours to decide.

When I have not defined a term, you should give it its ordinary meaning.

**Authority:**

*Amgen, Inc. v. Hospira, Inc.*, Civ. A. No. 15-cv-0839-RGA, D.I. 323 (Sept. 22, 2017), at 15.

**3.4.    JOINT: OPEN ENDED OR "COMPRISING" CLAIMS**


Some of the Asserted Claims use the word "comprising."

"Comprising" is interpreted the same way as "including" or "containing."  In patent claims, "comprising" means that the claims are open-ended.  As such, the accused methods must contain or use everything that is in the claim, but may additionally contain or use other things. Based on this explanation, if you find that 10X Genomics' methods include all of the requirements in a claim, the fact that 10X Genomics' methods may also include an additional component does not mean that the methods do not infringe the claim.


**Authority:**

*Amgen, Inc. v. Hospira, Inc.*, Civ. A. No. 15-cv-0839-RGA, D.I. 323 (Sept. 22, 2017), at 16 (modified to address the facts and issues in this case).

**3.5.    CONTESTED: INFRINGEMENT GENERALLY**

Patent law provides that any person or business entity that makes, uses, sells, or offers to sell, without the patent owner's permission, any product, apparatus, or method covered by at least one claim of a United States patent before the patent expires, infringes the patent.

I will now instruct you how to decide whether 10X Genomics has infringed and/or infringes any of the asserted claims in Plaintiffs' patents.  Infringement is assessed on a claim-by-claim basis.  Therefore, there may be infringement as to one claim but no infringement as to another.

In this case, Plaintiffs assert that 10X Genomics infringes one or more asserted claims of the '091, '407, and '083 Patents through its manufacture, use, [supply], sale, and/or offer to sell its GemCode™ and Chromium™ products and that 10X Genomics infringes one or more asserted claims of the '193 Patent through its manufacture, use, sale, and/or offer to sell its GemCode™ Long Read and Chromium™ Genome/Exome sequencing products.

In order to prove infringement, Plaintiffs must prove that the requirements of infringement are met by a preponderance of the evidence.

**Authority:**

*Amgen, Inc. v. Hospira, Inc.*, Civ. A. No. 15-cv-0839-RGA, D.I. 323 (Sept. 22, 2017), at 17 (modified to address the facts and issues in this case).

### 3.6.    JOINT: DIRECT INFRINGEMENT

To prove direct infringement, Bio-Rad and Chicago must prove that the requirements of infringement are met by a preponderance of the evidence.  Direct nfringement requires the unauthorized making, using, sale, or offer for sale of a patented invention during the time when the patent was in force.  Thus, 10X Genomics' knowledge of Plaintiffs' patents and 10X Genomics' intent are irrelevant to your determination of direct infringement.

To determine infringement, you must compare the accused product or method with each claim that Bio-Rad and Chicago assert is infringed, using my instructions as to the meaning of the patent claims.  A patent claim is infringed only if 10X Genomics's GemCode$^{TM}$ and/or Chromium$^{TM}$ products or methods include each and every requirement or step in that patent claim. If 10X Genomics' products do not contain one or more requirements or steps recited in a claim, 10X Genomics does not infringe that claim. Even if a 10X Genomics product is capable of performing all of the steps in a method claim, 10X Genomics itself does not directly infringe that claim unless 10X Genomics practices every step of the method.

**Authority:**

*Amgen, Inc. v. Hospira, Inc.*, Civ. A. No. 15-cv-0839-RGA, D.I. 323 (Sept. 22, 2017), at 18 (modified to address the facts and issues in this case); *see Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1219 (Fed. Cir. 2014).

**3.7.   CONTESTED: DEFENDANT'S INSTRUCTION ON LIMITATIONS ON INFRINGEMENT – THE REVERSE DOCTRINE OF EQUIVALENTS**

If a company makes, uses, sells, offers to sell within, or imports into the United States a product that meets all of the requirements of a claim and thus infringes that claim, the company is not liable for literal[2] infringement if the requirements of the so-called "reverse doctrine of equivalents" are satisfied.

Under the reverse doctrine of equivalents, even if Plaintiff establishes that a claim limitation is met by an element in the Accused Products, 10X Genomics is not liable for literal infringement if the Accused Products are so far changed in principle from the patented invention that they perform the same or similar function in a substantially different way. Direct infringement does not require proof that 10X Genomics intended to infringe.

In determining whether the reverse doctrine of equivalents applies to find 10X Genomics not liable for literal infringement, you should consider the following four criteria: (1) the principle of the claimed invention; (2) the principle of the accused product or process; (3) the degree of change in the principle of the accused product or process from that of the claimed invention; and (4) whether the accused product or process performs in a substantially different way. The reverse doctrine of equivalents applies to individual limitations of a patent claim such that if you find that any element of the Accused Products is so far changed in principle from a patented limitation that it performs the same or similar function in a substantially different way, you should find that 10X Genomics is not liable for literal infringement.

---

[2] If the Court agrees with 10X that there is no basis to instruct the jury on infringement under the doctrine of equivalents, then "literal" should be removed throughout this instruction.

**<u>Authority:</u>**

*AVM Techs., LLC v. Intel Corp.*, No. 15-13-RGA-MPT, Dkt. No. 719 at Instruction 4.2, page 16 (D.

Del. May 8, 2017).

**3.8.   CONTESTED:   PLAINTIFFS'   INSTRUCTION:   CONTRIBUTORY INFRINGEMENT**

Plaintiffs also argue that 10X Genomics has contributed to infringement by another. Contributory infringement may arise when someone supplies something that is used to infringe one or more of the patent claims.  As with direct infringement, you must determine contributory infringement on a claim-by-claim basis.

In order for there to contributory infringement by 10X Genomics, someone other than 10X Genomics must directly infringe a claim of the patents; if there is no direct infringement by anyone, there can be no contributory infringement.

If you find someone has directly infringed the patents, then contributory infringement exists if:

10X Genomics supplied an important component of the infringing part of the method;

The component is not a common component suitable for non-infringing use; and

10X Genomics supplied the component with the knowledge of the patents and knowledge that the component was especially made or adapted for use in an infringing manner.

A "common component suitable for non-infringing use" is a component that has uses other than in the patented method, and those other uses are not occasional, farfetched, impractical, experimental, or hypothetical.


**Authority:**

N.D. Cal. Model Patent Jury Instructions No. 3.6 (Contributory Infringement) (rev. Aug. 2017, updated Jan. 2018).

### 3.9.    CONTESTED: DEFENDANT'S INSTRUCTION: INDIRECT INFRINGEMENT— CONTRIBUTORY INFRINGEMENT

Bio-Rad and Chicago contend that 10X Genomics is liable for contributory infringement by contributing to the direct infringement of the asserted patents by another party. As with direct infringement, you must determine contributory infringement on a claim-by-claim basis.

10X Genomics is liable for contributory infringement of a claim only if Bio-Rad and Chicago prove by a preponderance of the evidence that:

(1)     10X Genomics sells, offers to sell, or imports in the United States a component of an infringing product, or component for use in an infringing process;

(2)     the component has no substantial, noninfringing use;

(3)     the component constitutes a material part of the invention;

(4)     10X Genomics was aware of any of the asserted patents;

(5)     that the product or process directly infringes the claim; and

(6)     that 10X Genomics knew that use of the product or process would infringe the asserted patents.

In order to prove contributory infringement, Bio-Rad and Chicago must prove that each of the above requirements is met. A component has no "substantial, noninfringing use" if the component has no meaningful use other than to infringe the claims of a patent. When applying this standard to a separate and distinct component that is part of a larger product, the analysis must remain focused only on whether the specific component—and not the entire product—is capable of substantial, noninfringing uses.

**Authorities:**

Federal Circuit Bar Association Model Patent Jury Instructions (July 2016) at 29 (Instruction 3.3) (modified to account for method and product claims; substantial noninfringing use added); 35 U.S.C. § 271(c); *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1362 (Fed. Cir. 2012); *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1337-38 (Fed. Cir. 2012); *Ricoh Co. v. Quanta Comput. Inc.*, 550 F.3d 1325, 1339 (Fed. Cir. 2008); *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 763 (2011); *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 479, 488 (1964); *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1330 (Fed. Circ. 2010).

### 3.10.   CONTESTED:   PLAINTIFFS'   INSTRUCTION:   INDUCING   PATENT INFRINGEMENT

Plaintiffs argue that 10X Genomics has actively induced another to infringe the patents.  In order for 10X Genomics to have induced infringement, 10X Genomics must have induced another to directly infringe a claim of the patents; if there is no direct infringement by anyone, there can be no induced infringement.  As with direct infringement, you must determine induced infringement on a claim-by-claim basis.

In order to be liable for inducing infringement, 10X Genomics must:

(1)     have intentionally taken action that actually induced indirect infringement;

(2)     have been aware of the patents; and

(3)     have known that the acts it was causing would infringe the patent.

10X Genomics may be considered to have known that the acts it was causing would infringe the patents if it subjectively believed there was a high probability that the direct infringer's product or method was patented and nevertheless deliberately took steps to avoid learning that fact, in other words, willfully blinded itself to the infringing nature of the direct infringer's acts.

**Authority:**

N.D. Cal. Model Patent Jury Instructions No. 3.7 (Inducing Patent Infringement) (rev. Aug. 2017, updated Jan. 2018).

### 3.11.   CONTESTED: DEFENDANT'S INSTRUCTION: INDIRECT INFRINGEMENT: ACTIVE INDUCEMENT

Bio-Rad and Chicago contend that 10X Genomics is liable for indirect infringement by actively inducing another party to directly infringe the asserted patents. As with direct infringement, you must determine whether there has been inducement on a claim-by-claim basis.

10X Genomics is liable for inducement of a claim if Bio-Rad and Chicago prove by a preponderance of the evidence that:

(1) that the acts are actually carried out by another party and directly infringe that claim;

(2) that 10X Genomics took action during the time the asserted patents were force specifically intending to cause the infringing acts by another party; and

(3) that 10X Genomics was aware of the asserted patent and knew that the acts, if taken, would constitute infringement of that patent.

If you find that 10X Genomics was aware of the patent, but believed that the acts it encouraged did not infringe that patent, 10X Genomics cannot be liable for inducement. In order to establish active inducement of infringement, it is not sufficient that another party itself directly infringes the claim. Nor is it sufficient that 10X Genomics was aware of the act(s) of another party that allegedly constitute the direct infringement. Rather, in order to find active inducement of infringement, you must find either that 10X Genomics specifically intended another party to infringe the asserted patents.

**Authorities:**

Federal Circuit Bar Association Model Patent Jury Instructions (July 2016) at 27-28 (Instruction 3.2) (modified with party names and removing willful blindness); *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011) ("we now hold that induced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement"); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1322 (Fed. Circ. 2009); *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1364 (Fed. Circ. 2003) ("mere knowledge of possible infringement by others does not amount to inducement; specific intent and action to induce infringement must be proven"); *MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 234 (D. Del. 2012); *ACCO Brands, Inc. v. ABA Locks Mfrs. Co.*, 501 F.3d 1307, 1312-14 (Fed. Cir. 2007); *E-Pass Techs., Inc. v. 3Com Corp*, 473 F.3d 1213, 1222-23 (Fed. Cir. 2007).

### 3.12.   PLAINTIFFS' INSTRUCTION: INFRINGEMENT BY SUPPLY OF COMPONENTS ESPECIALLY MADE OR ADAPTED FOR USE IN THE PATENTED INVENTION INTO ANOTHER COUNTRY (271(f)(1))

Defendant is liable for § 271(f)(1) infringement of a claim (active inducement of foreign combination of components supplied from the United States) if Plaintiffs prove by a preponderance of the evidence that:

(1) Defendant supplies or causes to be supplied components from the United States to a place outside the United States, which make up all or a substantial portion of the invention of any one of the claims of the '083 patent;

(2) Defendant takes action intentionally to cause another to act outside of the United States to assemble the components;

(3) Defendant knows of the '083 patent, and knows that the encouraged acts constitute infringement of that patent; and

(4) the encouraged acts would constitute direct infringement of the claim if they had been carried out in the United States.

If you find that Defendant was aware of the patent, but believed that the acts it encouraged would not constitute infringement of the patent if carried out in the United States, Defendant cannot be liable for inducement.

In order to establish active inducement of infringement, it is not sufficient that Defendant itself allegedly directly infringes the claim. Nor is it sufficient that Defendant was aware of the act(s) that allegedly constitute the direct infringement. Rather, you must find that Defendant specifically intended for Defendant's customers to infringe the '083 patent, in order to find inducement of infringement. If you do not find that Defendant specifically intended to infringe,

then you must find that Defendant has not actively induced the alleged infringement under §

271(f)(1).

**Authority**

Federal Circuit Bar Association Model Patent Jury Instructions (July 2016)

**3.13.   <mark>PLAINTIFFS'</mark> INSTRUCTION: INFRINGEMENT BY SUPPLY OF COMPONENTS ESPECIALLY MADE OR ADAPTED FOR USE IN THE PATENTED INVENTION TO ANOTHER COUNTRY (271(f)(2))**

Defendant is also liable for § 271(f)(2) infringement of a claim if Plaintiffs prove by a preponderance of the evidence that:

(1) Defendant supplies a component, or causes a component to be supplied, from the United States to a place outside of the United States;

(2) the only substantial use for the component is in a product that would infringe if the combination had occurred in the United States;

(3) Defendant is aware of the '083 patent and knows that the component has no other substantial use and may be covered by a claim of the patent; and

(4) intends for the component to be used in a product that would directly infringe the claim if it had been used in the United States.

**Authority**

Federal Circuit Bar Association Model Patent Jury Instructions (July 2016)

**3.14.   CONTESTED: INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS**[3]

Bio-Rad contends that 10X infringes claims 1 and 9 of the '083 patent under what is known as the "doctrine of equivalents." If a company makes, uses, sells, offers to sell within the United States a product that does not meet all of the requirements of a claim and thus does not literally infringe that claim, there can still be direct infringement if that product satisfies that claim "under the doctrine of equivalents."

Under the doctrine of equivalents, a product infringes a claim if the accused product contains elements corresponding to each and every requirement of the claim that is equivalent to, even though not literally met by, the accused product.  You may find that an element is equivalent to a requirement of a claim that is not met literally if a person having ordinary skill in the field of technology of the patent would have considered the differences between them to be "insubstantial" or would have found that the structure: (1) performs substantially the same function and (2) works in substantially the same way (3) to achieve substantially the same result as the requirement of the claim.

In deciding whether any difference between a claim requirement and an element is not substantial, you may consider whether, at the time of the alleged infringement, persons of ordinary

---

[3] 10X maintains that infringement of the '083 patent claims under the doctrine of equivalents is barred by prosecution history estoppel and the specific exclusion principle.  *See* D.I. 243, 440.  If, however, the Court decides that the jury should be instructed on the doctrine of equivalents, 10X accepts this instruction.

skill in the field would have known of the interchangeability of the element with the claimed requirement.  In order for the element to be considered interchangeable, the element must have been known at the time of the alleged infringement to a person having ordinary skill in the field of technology of the patent.  Interchangeability at the present time is not sufficient.  In order to prove infringement by "equivalents," Plaintiffs must prove the equivalency of the element to a claimed requirement by a preponderance of the evidence.


**Authority**:

The Federal Circuit Bar Ass'n Model Patent Jury Instructions 3.1c (July 2016 ed.); American Intellectual Property Law Association Model Jury Instructions 3.6 (March 15, 2017).

4.      **CONTESTED: INVALIDITY**

In this case, 10X Genomics contends that all of the asserted claims of the '407 Patent are anticipated and, therefore, invalid.  10X Genomics also contends that all of the asserted claims of the '091 Patent, '193 Patent, [and]'407 Patent[, and '083 Patent][4] are obvious in view of the prior art.

10X Genomics further contends that claim 3 of the '091 Patent is invalid for failure to enable the full scope of the invention, that claims 6 and 8 of the '193 Patent are invalid for to failure enable the full scope of the invention, [and] that claims 1, 10 and 11 of the '407 Patent are invalid for failure to enable the full scope of the invention, [and claims 1 and 9 of the '083 Patent are invalid as indefinite].  I will explain the legal concepts of anticipation, obviousness, prior art, written description, enablement, and indefiniteness in a moment.

In making your determination, you must consider each of these patent claims separately and individually.

**Authority:**

*Amgen, Inc. v. Hospira, Inc.*, Civ. A. No. 15-cv-0839-RGA, D.I. 323 (Sept. 22, 2017), at 20 (modified to address the facts and issues in this case).

---

[4] 10X includes contentions as to the '083 Patent in this proposed instruction to preserve its appellate rights but recognizes that the Court has already granted Plaintiffs' motion for summary judgement regarding obviousness of the '083 Patent. *See* D.I. 351 at 5-6.

**4.1.    JOINT: PERSON OF ORDINARY SKILL IN THE ART**

The question of invalidity of a patent claim is determined from the perspective of a person of ordinary skill in the art in the field of the invention at the time of the named inventors' invention date.

You must determine the level of ordinary skill in the field of the invention.  In deciding what the level of ordinary skill is, you should consider all the evidence introduced at trial, including but not limited to: (1) the levels of education and experience of the inventor and other persons actively working in the field; (2) the types of problems encountered in the field; (3) prior art solutions to those problems; (4) rapidity with which innovations are made; and (5) the sophistication of the technology.

**Authority:**

*Amgen, Inc. v. Hospira, Inc.*, Civ. A. No. 15-cv-0839-RGA, D.I. 323 (Sept. 22, 2017), at 21 (modified to address the facts and issues in this case).

## 4.2.   CONTESTED: PRIOR ART

Under the patent laws, a person is granted a patent only if the invention claimed in the patent is new and not obvious in light of what came before.  That which came before is referred to as the "prior art."

[In this case, the following items are prior art to each of the asserted patents:

- Quake, S., et al., "Microfabricated Crossflow Devices and Methods," International Publication No. WO 02/23163 A1, which was published March 21, 2002; Quake, S., et al., "Microfabricated Crossflow Devices and Methods," U.S. Patent Application Publication 2002/0058332 A1, which I will refer to as "Quake", which was published on May 16, 2002, from Application No. 09/953,103, which was filed on September 14, 2001, and claims priority to provisional application No. 60/246,793, filed on November 8, 2000, and provisional application No. 60/233,037, filed on September 15, 2000;

- Corbett, J., et al., "Device and Method for the Automated Cycling of Solutions Between Two or More Temperatures," U.S. Patent No. 5,270,183, which issued on December 14, 1993;

- Schubert, K.V. and Kaler, E.W., "Microemulsifying fluorinated oils with mixtures of fluorinated and hydrogenated surfactants," Colloids and Surfaces A: Physiochemical and Engineering Aspects, 84: 97-106 (1994), which was published on April 18, 1994;

- Erbacher, C., et al., "Towards Integrated Continuous-Flow Chemical Reactors," Mikrochim. Acta, 131: 19-24 (1999), which was published on January 1, 1999.]

The burden of proof on 10X Genomics to prove that the prior art renders a claim invalid never changes regardless of whether the Examiner in the Patent Office considered the prior art reference during the prosecution of the application which matured into a patent.  [However, if the

- 36 -

Patent Office considered a reference, it may be more difficult for 10X Genomics to meet its burden of proof to prove invalidity based on that reference.

On the other hand, if the Patent Office did not consider a reference or particular combination of references, it may be easier for 10X Genomics to meet its burden of proof to prove invalidity based on that reference or particular combination of references, as such new evidence may be given more weight.]

**Authority:**

*Amgen, Inc. v. Hospira, Inc.*, Civ. A. No. 15-cv-0839-RGA, D.I. 323 (Sept. 22, 2017), at 22 (modified to address the facts and issues in this case)[; *see AVM Techs., LLC v. Intel Corp.*, Civ. A. No. 15-cv-0033-RGA, D.I. 719 (May 8, 2017), at 19; *see also Sciele Pharma Inc. v. Lupin Ltd.*, 684 F.3d 1253, 1260 (Fed. Cir. 2012)].

**4.3.    JOINT INSTRUCTION: ANTICIPATION**

As I have explained, under the patent laws a person is granted a patent only if the invention claimed in the patent is both new and nonobvious in light of what came before. In general, inventions are new when they have not been made, used, or disclosed before. The legal name for this type of challenge to the validity of a patent claim is "anticipation."

In this case, 10X Genomics contends that the inventions of the asserted claims of the '407 Patent are anticipated by U.S. Patent Application Publication 2002/0058332 A1, referred to as "Quake," and U.K. Patent Application Publication GB 2,097,692 A, referred to as "Shaw Stewart." Anticipation must be determined on a claim-by-claim basis. 10X Genomics must prove by clear and convincing evidence that each of the asserted claims of the '407 Patent was not new based on Quake or Shaw Stewart.

Invalidity by anticipation requires that a single prior art reference disclosed each and every requirement, or limitation, of a claimed invention arranged as in the claim. You may not combine two or more items of prior art to find anticipation. In determining whether every one of the elements of the claimed invention is found in a particular prior art reference, you should take into account what a person of ordinary skill in the art would have understood from his or her review of that reference.

In determining whether a single prior art reference anticipates a patent claim, you should take into consideration not only what is expressly disclosed in that prior art reference but also what is inherently present or disclosed in that reference, or inherently results from its practice. A prior art reference inherently anticipates a patent claim if the element or feature missing from the

reference would necessarily result from what that reference teaches to a person of ordinary skill in the art.

A party asserting inherent anticipation must prove that the allegedly inherent element was necessarily present in that reference.  The fact that it was likely present is not sufficient.  It is not required, however, that a person of ordinary skill actually recognized or appreciated the inherent disclosure at the time the prior art reference was first known or used.  Thus, the prior use of the patented invention that was unrecognized and unappreciated can still be an invalidating anticipating reference, provided the allegedly inherent feature was necessarily and inevitably present in the reference.  Evidence outside of the prior art reference itself may be used to show that elements that are not expressly disclosed in the reference are inherent in it.

**Authority:**

*Amgen, Inc. v. Hospira, Inc.*, Civ. A. No. 15-cv-0839-RGA, D.I. 323 (Sept. 22, 2017), at 23-24 (modified to address the facts and issues in this case).

**4.4.    JOINT: OBVIOUSNESS**

As I explained previously, under the patent laws a person is granted a patent only if the invention claimed in the patent is both new and not obvious in light of what came before. Even though an invention has not been identically disclosed or described before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the art of the claimed invention at the time the invention was made. Unlike anticipation, which allows consideration of only one item of prior art, obviousness may be proven by considering more than one item of prior art. In this case, 10X Genomics contends that all of the asserted claims of the '091, '193, and '407[5] Patents are obvious over prior art nd the knowledge of a person of skill in the art.

10X Genomics must prove by clear and convincing evidence that the inventions of the asserted claims of the '091, '193, and '407, and '083 Patents would have been obvious to a person of ordinary skill in the art at the time the invention was made. The issue is not whether the claimed inventions would have been obvious to you as a layperson, to me as the judge, or to a genius in the field of technology, but whether it would have been obvious to one of ordinary skill in the art at the time the invention was made.

In determining whether a claimed invention would have been obvious, you must avoid using hindsight; that is, you should not consider what is known today or what was learned from

---

[5] 10X includes contentions as to the 083 Patent in this proposed instruction to preserve its appellate rights but recognizes that the Court has already granted Plaintiffs' motion for summary judgement regarding obviousness of the '083 Patent. *See* D.I. 351 at 5-6.

the teachings of the asserted patents.  You should not use the patent as a road map for selecting and combining items of prior art.  You must put yourself in the place of a person of ordinary skill in the art at the time the invention was made.

In determining whether a claimed invention would have been obvious, you must consider (1) the scope and content of the prior art, (2) the level of ordinary skill in the pertinent art; and (3) the differences between the claimed invention and the prior art.

To determine the scope and content of the prior art, you must determine what prior art is reasonably pertinent to the particular problems the inventors faced.  The person of ordinary skill in the art is presumed to be aware of all of the pertinent prior art.

I have already instructed you on how you are to determine the level of ordinary skill in the art.  Once you have made that determination, you are to apply it in your determination whether the asserted claims would have been obvious.

The next factor that you must consider is the differences, if any, between the prior art and the claimed inventions.  Importantly, a claim is not proved obvious merely by demonstrating that each of the elements was independently known in the prior art.  Most, if not all, inventions rely on building blocks of prior art, and claimed discoveries almost of necessity will likely be combinations of what is already known.  Therefore, you should consider whether a reason existed at the time of the invention that would have prompted a person of ordinary skill in the art in the relevant field to combine the known elements in the way the claimed invention does.  The motivation to modify the prior art to arrive at the claimed invention need not be the same motivation that the inventor had.

In arriving at your decision on the issue of whether the claimed inventions of the asserted patents would have been obvious to a person of ordinary skill in the art, you may take into account

- 41 -

such factors as: (1) whether the claimed inventions were merely the predictable result of using prior art elements according to their known functions; (2) whether the claimed inventions provide an obvious solution to a known problem in the relevant field; (3) whether the prior art teaches or suggests the desirability of combining elements claimed in the inventions; (4) whether the prior art teaches away from combining elements in the claimed inventions; and (5) whether it would have been obvious to try the combinations of elements, such as when there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions.

In arriving at your decision on the issue of whether the claimed inventions of the asserted patents would have been obvious to a person of ordinary skill in the art, you should take into account any "secondary considerations," also called "objective evidence," that may have existed at the time of the invention and afterwards that suggest that the claimed invention was obvious or not, such as:[6]

1. Whether the invention was commercially successful as a result of the merits of the claimed invention (rather than due to advertising, promotion, salesmanship, or features of the product other than those allegedly found in the claim);

2. Whether the invention satisfied a long-felt need;

3. Whether others had tried and failed to make the invention;

4. Whether others invented the invention at roughly the same time;

5. Whether others copied the invention;

---

[6] 10X proposes that this list should be modified to include only those secondary considerations for which relevant evidence (and nexus) is actually presented at trial.

6.   Whether there were changes or related technologies or market needs contemporaneous with the invention;

7.   Whether the invention achieved unexpected results;

8.   Whether others in the field praised the invention;

9.   Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the invention;

10. Whether others sought or obtained rights to the patent from the patent holder; and

11. Whether the inventor proceeded contrary to accepted wisdom in the field.

Some of these factors weigh in favor of obviousness and others weigh against a finding of obviousness.  For example, evidence that others invented the invention at roughly the same time can be evidence of obviousness.

These factors should be considered along with all the other evidence in the case in determining whether the claimed invention would have been obvious.  However, there must be a connection between the secondary consideration and the claimed inventions if this evidence is to be given weight by you in arriving at your conclusion on the obviousness issue. For example, if commercial success is due to advertising, promotion, salesmanship or the like, or is due to features of the products other than those claimed in the patents in suit, then any commercial success may have no relation to the issue of obviousness.

**Authorities:**

*Amgen, Inc. v. Hospira, Inc.*, Civ. A. No. 15-cv-0839-RGA, D.I. 323 (Sept. 22, 2017), at 25-26 (modified to address the facts and issues in this case); *AVM Techs., LLC v. Intel Corp.*, Civ. A. No. 15-cv-0033-RGA, D.I. 719 (May 8, 2017), at 21-22 (modified to address the facts and issues

in this case); *EMC Corp. v. Pure Storage*, Case No. 13-1985 (RGA), D.I. 448 at 27-29; *W. Union Co. v. MoneyGram Payment Sys., Inc.*, 626 F.3d 1361, 1372 (Fed. Cir. 2010) ("Our case law clearly requires that the patentee must establish a nexus between the evidence of commercial success and the patented invention."); *In re Huang*, 100 F.3d 135, 140 (Fed. Cir. 1996) (commercial "success is relevant in the obviousness context only if there is proof that the sales were a direct result of the unique characteristics of the claimed invention"); *WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1359 (Fed. Cir. 1999); *Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC*, 683 F.3d 1356, 1363 (Fed. Cir. 2012); *see also, e.g.*, *Dippin' Dots, Inc. v. Mosey*, 476 F.3d 1337, 1345 (Fed. Cir. 2007) (finding that where factors that led to commercial success of Dippin' Dots were present in the prior art, they could not overcome obviousness); *PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*, 491 F.3d 1342, 1365 (Fed. Cir. 2007) (recognition of patent inventors as "trail-blazers" — even by accused infringers — must be based upon the inventive contribution made in order to establish a nexus); *Ormco Corp.*, 463 F.3d at 1312 ("So too if the feature that creates the commercial success was known in the prior art, the success is not pertinent."); *J.T. Eaton & Co., Inc. v. Atl. Paste & Glue Co.*, 106 F.3d 1563, 1571 (Fed. Cir. 1997) (citing *Richdel, Inc. v. Sunspool Corp.*, 714 F.2d 1573, 1580 (Fed. Cir. 1983)) ("[T]he asserted commercial success of the product must be due to the merits of the claimed invention beyond what was readily available in the prior art."); *Cephalon Inc. v. Mylan Pharm. Inc.*, 962 F. Supp. 2d 688, 720-22 (D. Del. 2013) (Robinson, J.) (evidence of praise, failure of others, and commercial success must be sufficiently related to novel aspects of patent).

- 44 -

### 4.5.   AGREED: ENABLEMENT

10X Genomics contends that the asserted claims of the patents are invalid because the patents do not disclose sufficient information to enable one skilled in the field of the invention, at the time the application was filed (or its effective filing date), to make and use the full scope of the claimed invention.  This requirement is known as the enablement requirement, and it is designed to prevent both inadequate disclosure of an invention and overbroad claiming that might otherwise attempt to cover more than was actually invented. The purpose of this requirement is to ensure that the public, in exchange for the patent rights given to the inventor, obtains from the inventor a sufficient disclosure of how to carry out the claimed invention.  If a patent claim is not enabled, it is invalid.  Each claim must be analyzed for compliance with the enablement requirement.

In considering whether a patent claim satisfies the enablement requirement, you must keep in mind that patents are written for persons of skill in the field of the invention.  Thus, a patent need not expressly state information that skilled persons would be likely to know or could obtain. 10X Genomics bears the burden of establishing lack of enablement by showing by clear and convincing evidence that a person skilled in the art, upon reading the patent document, would not be able to make the full scope of the claimed invention work without undue experimentation. The fact that some experimentation may be required for a skilled person to make or use the full scope of the claimed invention does not mean that a patent's written description fails to meet the enablement requirement.  Factors you may consider in determining whether making the full scope of the claimed invention would require undue experimentation include:

1.      the quantity of experimentation necessary;

2.      the amount of direction or guidance disclosed in the patent;

3.      the presence or absence of working examples in the patent;

4.      the nature of the invention;

5.      the state of the prior art;

6.      the relative skill of those in the art;

7.      the predictability of the art; and

8.      the breadth of the claims.

If you find that one or more of these claims did not comply with the enablement requirement, you must find each such claim invalid.


**Authority:**

Patent Jury Instruction Handbook § 3:3.

*Promega Corp. v. Life Techs. Corp.*, 773 F.3d 1338 (Fed. Cir. 2014); *Wyeth & Cordis Corp. v. Abbott Labs.*, 720 F.3d 1380 (Fed. Cir. 2013); *MagSil Corp. v. Hitachi Global Storage Techs., Inc.*, 687 F.3d 1377 (Fed. Cir. 2012); *Idenix Pharmaceuticals LLC v. Gilead Sciences, Inc.*, No. 14-846-LPS, Dkt. No. 516 at 31-32 (D. Del. Dec. 15, 2016) ("This is known as the 'enablement' requirement, and it is designed to prevent both inadequate disclosure of an invention and overbroad claiming that might otherwise attempt to cover more than was actually invented. The purpose of this requirement is to ensure that the public, in exchange for the patent rights given to the inventor, obtains from the inventor a sufficient disclosure of how to carry out the claimed invention."); *Edwards Lifesciences LLC v. Medtronic Corevalve LLC*, No. 12-23 (GMS), Dkt. No. 168 at 30 (D. Del. Jan. 14, 2014) ("The purpose of this requirement is to ensure that the public, in exchange for the patent rights given to the inventor, obtains from the inventor a full disclosure of how to make and use the full scope of the invention.").

## 4.6.    CONTESTED: DEFENDANT'S INSTRUCTION: INDEFINITENESS[7]

The patent laws have requirements for the way in which patent claims are written.  Patent claims must be sufficiently clear that a person of ordinary skill in the field of the invention reading them is able to determine what the claims cover and what they do not cover.  If a claim does not meet that requirement, then the claim is said to be indefinite and is invalid.

In this case, 10X Genomics contends that claims 1 and 9 of the '083 patent are invalid because the language of the claims is indefinite.  To prevail on that contention, 10X Genomics must show that it is highly probable that a person of ordinary skill in the art would not understand what is and is not covered by the claims of the patents.

The amount of detail required for a claim to be definite depends on the particular invention, the prior art, and the written description contained in the patent.  Absolute clarity is not necessary.  Rather, a patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention.

**Authorities:**

*Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014); *SimpleAir, Inc. v. Sony Ericsson Mobile Comm'ns AB*, 820 F.3d 419, 432 (Fed. Cir. 2016); *Koninklijke Philips N.V. v. Zoll Med. Corp.*, 656 F. App'x 504, 525–26 (Fed. Cir. 2016); *Ateliers de la Haute-Garonne v.*

---

[7] Bio-Rad/Chicago object to this instruction.  Indefiniteness is not a proper issue for the jury and is unsupported by the facts.

*Broetje Automation-USA Inc.*, 14 F. Supp. 3d 588, 591 (D. Del. 2014) ("the issue of indefiniteness will be presented to the jury at trial").

## 5.    CONTESTED: ==PLAINTIFFS'== INSTRUCTION: WILLFUL INFRINGEMENT

To prove willful infringement, Plaintiffs must persuade you that 10X Genomics infringed a valid claim of the Plaintiffs' patent.  The requirements for proving such infringement were discussed in my prior instructions.

In addition, to prove willful infringement of a claim, Plaintiffs must persuade you that it is more likely true than not that 10X Genomics intentionally ignored or recklessly disregarded that claim.  You must base your decision on 10X Genomics' knowledge and actions at the time of infringement.  Evidence that 10X Genomics has knowledge of the patent at the time of infringement by itself is not sufficient to show willfulness.  Rather, to show willfulness, you must find that 10X Genomics engaged in additional conduct evidencing deliberate or reckless disregard of Plaintiffs' patent rights.

In deciding whether 10X Genomics willfully infringed, you should consider all of the facts surrounding the infringement including: whether 10X Genomics intentionally copied Plaintiffs' patented technology in developing the accused method; whether 10X Genomics knew, or should have known, that its conduct involved an unreasonable risk of infringement; and whether 10X Genomics had a reasonable belief at the time of infringement that its products did not infringe the asserted patent.

**Authorities:**

N.D. Cal. Model Patent Jury Instructions No. 3.8 (Willful Infringement); *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016); *Greatbatch Ltd. v. AVX Corp.*, Case No. 13-cv-723, D.I. 1032; *id*. D.I. 1064, at 1053:13-25.

**6.**      **CONTESTED: DEFENDANT'S INSTRUCTION: WILLFULNESS**[8]

To prove willful infringement, Plaintiffs must persuade you that 10X Genomics infringed a valid claim of the Plaintiffs' patent.  The requirements for proving such infringement were discussed in my prior instructions.

To prove willful infringement, Plaintiffs must prove by a preponderance of the evidence that 10X Genomics had knowledge of the patents, but mere knowledge of the patents is not sufficient.

Instead, to prove willful infringement, Bio-Rad and Chicago must also prove, by a preponderance of the evidence, that 10X Genomics' infringement was reckless, wanton, malicious, committed in bad faith, deliberate, consciously wrongful, or flagrant. To determine whether 10X Genomics' infringement of the patents was willful, you should consider all of the facts.

If you do decide that there was willful infringement, that decision should not affect any damage award you give in this case.

_____

[8] 10X believes the Court should grant judgment as a matter of law of no willfulness and should not instruct the jury on this issue.

7.      **DAMAGES**

7.1.    **JOINT: DAMAGES—GENERALLY**

I will now instruct you about the measure of damages.  By instructing you on damages, I am not suggesting which party should win this case on any issue.

The damages you award must be adequate to compensate Plaintiffs for any infringement you determine to have occurred.  Damages are not meant to punish an infringer.  Your damages award, if you reach this issue, should put Plaintiffs in approximately the same financial position that it would have been in if the parties had reached agreement for Defendant to license the patents before the infringement began.

Plaintiffs have the burden to prove the amount of their damages by a preponderance of the evidence.  While Plaintiffs are not required to prove the amount of their damages with mathematical precision, they must prove them with reasonable certainty.

If you find that Plaintiffs have established infringement of a valid patent claim of the patents-in-suit, Plaintiffs will be entitled to a reasonable royalty to compensate them for that infringement.  A reasonable royalty is defined as the amount of money the parties would have agreed upon as a fee for Defendant using Plaintiffs' invention before the infringement first began.

**<u>Authorities:</u>**

*Amgen, Inc. v. Hospira, Inc.*, Civ. A. No. 15-cv-0839-RGA, D.I. 323 (Sept. 22, 2017), at  28 (modified to address the facts and issues in this case); *AVM Techs., LLC v. Intel Corp.*, Civ. A. No. 15-cv-0033-RGA, D.I. 719 (May 8, 2017), at 24 (modified to address the facts and issues in this case).

**7.2.    CONTESTED: REASONABLE ROYALTY AS A MEASURE OF DAMAGES**

A royalty is a payment made to a patent holder in exchange for the patent holder's permission to make, use, offer to sell, sell, or import the patented invention. A reasonable royalty is the amount of royalty payment that a patent holder and the infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began. In considering this hypothetical negotiation, you should focus on what the expectations of [Plaintiff] [Chicago and RainDance] and [Defendant] [10X Genomics] would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In determining this, you must assume that the parties believed the patent was valid and infringed and [Plaintiff] [Chicago and RainDance] and [Defendant] [10X Genomics] were willing to enter into an agreement.

The relevant date for the hypothetical license negotiation is the beginning of the second quarter of 2015, just before the alleged infringement began. Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation.

The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty the parties would have preferred.

**Authorities:**

*Amgen, Inc. v. Hospira, Inc.*, Civ. A. No. 15-cv-0839-RGA, D.I. 323 (Sept. 22, 2017), at 29 (modified to address the facts and issues in this case); *AVM Techs., LLC v. Intel Corp.*, Civ. A. No. 15-cv-0033-RGA, D.I. 719 (May 8, 2017), at 25 (modified to address the facts and issues in this case).

**7.3.    CONTESTED: FACTORS FOR DETERMINING A REASONABLE ROYALTY**

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began.  Some of the kinds of factors that you may consider in making your determination are:

(1)    The royalties, if any, received by [Plaintiff] [Chicago and RainDance] for the licensing of the patents-in-suit.

(2)    The nature and scope of the license, such as whether the license is non-exclusive or exclusive.

(3)    The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(4)    [Plaintiff] [Chicago and RainDance] established policy and program to enforce its patent rights, if any, or license its patents under special conditions to preserve its monopoly.

(5)    The portion of the realizable profits that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, or business risks.

(6)    The commercial relationship between [Plaintiff] [Chicago and RainDance] and [Defendant] [10X Genomics] such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(7)    The duration of the patent and term of the license.

(8)    The established profitability of the products made under the patents, their commercial success, and their popularity.

(9)     The nature of the patented inventions, the character of any commercial examples of them, and the benefits to those who have used the inventions.

(10)    The extent to which Defendant has made use of the inventions and any evidence probative of the value of that use.

(11)    The opinion testimony of qualified experts.

(12)    The amount that a licensor and a licensee would have agreed upon at the time the infringement began if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee— who desired, as a business proposition, to obtain a license to manufacture a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive, and you can and should consider the evidence that has been presented to you in this case on each of these factors.  You may also consider any other factors which in your mind would have increased or decreased the royalty Defendant would have been willing to pay and Plaintiffs would have been willing to accept, acting as normally prudent business people.  The final factor establishes the framework which you should use in determining a reasonable royalty, that is, the payment that would have resulted from a negotiation among [Plaintiff] [Chicago and RainDance] and [Defendant] [10X Genomics] taking place at a time prior to when the infringement began.

- 55 -

**<u>Authorities:</u>**

*Amgen, Inc. v. Hospira, Inc.*, Civ. A. No. 15-cv-0839-RGA, D.I. 323 (Sept. 22, 2017), at 30-31 (modified to address the facts and issues in this case); *AVM Techs., LLC v. Intel Corp.*, Civ. A. No. 15-cv-0033-RGA, D.I. 719 (May 8, 2017), at 26 (modified to address the facts and issues in this case).

## 7.4.    CONTESTED: USE OF COMPARABLE LICENSE AGREEMENTS

When determining a reasonable royalty, you may consider evidence concerning the amounts that other parties have paid for rights to the patents in question, or for rights to similar technologies.  A license agreement need not be perfectly comparable to a hypothetical license that would be negotiated among [Plaintiffs] [Chicago and RainDance] and [Defendant] [10X Genomics] in order for you to consider it.  However, if you choose to rely upon evidence from any other license agreements, you must account for any differences between those licenses and the hypothetically negotiated license between [Plaintiffs] [Chicago and RainDance] and [Defendant] [10X Genomics] in terms of the technologies and economic circumstances of the contracting parties, when you make your reasonable royalty determination. Licenses that were not the product of an arms-length negotiation should be adjusted accordingly.


**Authority:**

*AVM Techs., LLC v. Intel Corp.*, Civ. A. No. 15-cv-0033-RGA, D.I. 719 (May 8, 2017), at 27 (modified to address the facts and issues in this case); *W.L. Gore & Assocs., Inc. v. C.R. Bard, Inc.*, No. CV 11-515-LPS-CJB, 2015 WL 12731924, at *5 (D. Del. Nov. 4, 2015); *M2M Sols. LLC v. Enfora, Inc.*, 167 F. Supp. 3d 665, 677 (D. Del. 2016); *Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 778 F.3d 1365, 1377 (Fed. Cir. 2015); *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1330 (Fed. Cir. 2014).

**7.5.  CONTESTED:  DEFENDANT'S  INSTRUCTION:  DAMAGES—APPORTIONMENT**

A damages award must reflect the portion of the royalty attributable to the respective inventions of the Asserted Claims. In other words, your damages award must reflect the value you find attributable to the patented inventions, and not any value attributable to features or benefits of the accused products not covered by the asserted patents. The evidence tending to separate or apportion damages between the patented features and unpatented features must be reliable and tangible, and not conjectural or speculative.  You may award damages based only on profits or royalty that are attributable to the value of the patented technology. You may not award damages based on a royalty attributable to features of the Accused Products not covered by the asserted patents. Bio-Rad bears the burden of establishing amounts directly attributable to the patented features.

**Authorities:**

*GreatBatch Ltd. v. AVX Corp., C.A. No. 13-cv-723-LPS*, D.I. 623, at 58 (D. Del. Jan. 25, 2016) (modified to address the facts and issues in this case); *Virnetx, Inc. v. Cisco Systems, Inc.*, 767 F.3d 1308, 1329 (Fed. Cir. 2014) ("The law requires patentees to apportion the royalty down to a reasonable estimate of the value of its claimed technology . . . ."); *Ericsson, Inc. v. D-Link Sys.*, Inc., 773 F.3d 1201, 1228 (Fed. Cir. 2014) ("[W]hen licenses based on the value of a multi-component product are admitted, or even referenced in expert testimony, the court should give a cautionary instruction regarding the limited purposes for which such testimony is proffered if the accused infringer requests the instruction. The court should also ensure that the instructions fully

explain the need to apportion the ultimate royalty award to the incremental value of the patented feature from the overall product.").

**8.      DELIBERATION AND VERDICT**

**8.1.    JOINT: DELIBERATIONS AND VERDICT—INTRODUCTION**

That concludes the part of my instructions explaining the rules for considering some of the testimony and evidence.  Now let me finish by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case.  If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer.  The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take me some time to get back to you.  Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is juror No. 1.

One more thing about messages.  Do not ever write down or tell anyone outside of the jury how you stand on your votes.  For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be.  That should stay secret until you are finished.

**Authorities:**

*Amgen, Inc. v. Hospira, Inc.*, Civ. A. No. 15-cv-0839-RGA, D.I. 323 (Sept. 22, 2017), at 34 (modified to address the facts and issues in this case); *AVM Techs., LLC v. Intel Corp.*, Civ. A. No. 15-cv-0033-RGA, D.I. 719 (May 8, 2017), at 28 (modified to address the facts and issues in this case).

- 60 -

## 9.     JOINT: UNANIMOUS VERDICT

Your verdict must represent the considered judgment of each juror.  In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict.  Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so consistent with your individual judgment.  Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict.  Remember at all times that you are not partisans.  You are judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

A verdict form has been prepared for you.  The verdict form asks you a series of questions about the parties' contentions.  You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date, and sign the form.  You will then return to the courtroom and your foreperson will give your verdict.  Unless you are directed otherwise in the verdict form, you must answer all of the questions posed, and you all must agree on each answer.

**Authorities:**

*Amgen, Inc. v. Hospira, Inc.*, Civ. A. No. 15-cv-0839-RGA, D.I. 323 (Sept. 22, 2017), at 35 (modified to address the facts and issues in this case); *AVM Techs., LLC v. Intel Corp.*, Civ. A.

No. 15-cv-0033-RGA, D.I. 719 (May 8, 2017), at 28 (modified to address the facts and issues in this case).

**10.      JOINT: DUTY TO DELIBERATE**

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room.  In fact, it is your duty to talk with each other about the evidence and to make every reasonable effort you can to reach a unanimous agreement.  Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say.  Try your best to work out your differences.  Do not hesitate to change your mind if you are convinced that other jurors are right and your original position was wrong.

But do not ever change your mind just because other jurors see things differently, or just to get the case over with.  In the end, your vote must be exactly that—your own vote.  It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say.  So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

**Authorities:**

*Amgen, Inc. v. Hospira, Inc.*, Civ. A. No. 15-cv-0839-RGA, D.I. 323 (Sept. 22, 2017), at 36 (modified to address the facts and issues in this case); *AVM Techs., LLC v. Intel Corp.*, Civ. A. No. 15-cv-0033-RGA, D.I. 719 (May 8, 2017), at 29 (modified to address the facts and issues in this case).

## 11.     JOINT: SOCIAL MEDIA

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case.  You may not use any electronic device or media, such as the telephone, a cell phone, smart phone, iPhone, blackberry or computer, the internet, any internet service, any text or instant messaging service, any internet chat room, blog, or website such as Facebook, Instagram, Snapchat, MySpace, LinkedIn, YouTube, or Twitter, to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.  In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case.  You can only discuss the case in the jury room with your fellow jurors during deliberations.

**Authority:**

*Amgen, Inc. v. Hospira, Inc.*, Civ. A. No. 15-cv-0839-RGA, D.I. 323 (Sept. 22, 2017), at 37 (modified to address the facts and issues in this case).

## 12.    JOINT: COURT HAS NO OPINION

Let me finish up by repeating something that I said to you earlier.  Nothing that I have said or done during this trial was meant to influence your decision in any way.  You must decide the case yourselves based on the evidence presented.

**<u>Authorities:</u>**

*Amgen, Inc. v. Hospira, Inc.*, Civ. A. No. 15-cv-0839-RGA, D.I. 323 (Sept. 22, 2017), at 38 (modified to address the facts and issues in this case); *AVM Techs., LLC v. Intel Corp.*, Civ. A. No. 15-cv-0033-RGA, D.I. 719 (May 8, 2017), at 29 (modified to address the facts and issues in this case).

Date:  November 9, 2018

FARNAN LLP

*/s/ Brian E. Farnan*
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market Street, 12th Floor
Wilmington, DE 19801
Telephone: 302-777-0300
Facsimile: 302-777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com


Edward R. Reines
Derek C. Walter
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000
edward.reines@weil.com
derek.walter@weil.com


*Attorneys for Plaintiffs,*
*Bio-Rad Laboratories, Inc. and*
*The University of Chicago*

Date:  November 9, 2018

RICHARDS, LAYTON & FINGER, P.A.

*/s/ Frederick L. Cottrell, III*
Frederick L. Cottrell, III (#2555)
Jason J. Rawnsley (#5379)
920 North King Street
Wilmington, DE 19801
(302) 651-7700
cottrell@rlf.com
rawnsley@rlf.com

David I. Gindler (dgindler@irell.com)
Alan J. Heinrich (aheinrich@irell.com)
Lauren N. Drake (ldrake@irell.com)
Elizabeth C. Tuan (etuan@irell.com)
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
(310) 277-1010

Michael H. Strub, Jr. (mstrub@irell.com)
Dennis J. Courtney (dcourtney@irell.com)
IRELL & MANELLA LLP
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660
(949) 760-0991

*Attorneys for Defendant,*
*10X Genomics, Inc.*

TENSEGRITY LAW GROUP LLP
Matthew Powers
(matthew.powers@tensegritylawgroup.com)
Robert Gerrity
(robert.gerrity@tensegritylawgroup.com)
555 Twin Dolphin Drive
Suite 650
Redwood Shores, CA 94065
Tel: (650) 802-6000

Azra Hadzimehmedovic
(azra@tensegritylawgroup.com)
8260 Greensboro Dr.
Suite 260
McLean, VA 22102-3848
Tel: (650) 802-6000

Nicholas Groombridge
(ngroombridge@paulweiss.com)
Jennifer H. Wu
(jwu@paulweiss.com)
Josephine Young
(jyoung@paulweiss.com)
Jennifer Rea Deneault
(jdeneault@paulweiss.com)
Simone Park
(spark@paulweiss.com)
PAUL, WEISS RIFKIND, WHARTON
& GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3212

David J. Ball
(dball@paulweiss.com)
2001 K Street, NW
Washington, DC 20006-1047
(202) 223-7352