```
 1                    IN THE UNITED STATES DISTRICT COURT?

 2                    FOR THE DISTRICT OF DELAWARE

 3

 4    BIO-RAD LABORATORIES,          )
      INC. and THE                   )
 5    UNIVERSITY OF CHICAGO,         )
                                     )
 6                                   )
                     Plaintiffs,     )
 7                                   )
                                     ) C.A. No. 15-cv-152-RGA
 8    v.                             )
                                     )
 9    10X GENOMICS, INC.,            )
                                     )
10              Defendant.           )

11

12                                   J. Caleb Boggs Courthouse
                                     844 King Street
13                                   Wilmington, Delaware

14                                   Friday, November 2, 2018
                                     3:30 p.m.
15                                   Oral Argument

16    BEFORE:  THE HONORABLE RICHARD G. ANDREWS, U.S.D.C.J.

17

18    APPEARANCES:

19              FARNAN, LLP
                BY:  BRIAN E. FARNAN, ESQUIRE
20
                     -and-
21
                WEIL GOTSHAL & MANGES, LLP
22              BY:  EDWARD REINES, ESQUIRE
                BY:  DEREK C. WALTER, ESQUIRE
23
                                     For the Plaintiffs
24

25
```

1    APPEARANCES CONTINUED:

2

3                RICHARDS LAYTON & FINGER, P.A.
                 BY:  JASON J. RAWNSLEY, ESQUIRE
4
                       -and-
5
                 TENSEGRITY LAW GROUP LLP
6                BY:  MATTHEW D. POWERS, ESQUIRE

7                      -and-

8                ORRICK HERRINGTON & SUTCLIFFE LLP
                 BY:  ELIZABETH MOULTON, ESQUIRE
9
                            For the Defendant
10

11                      PROCEEDINGS

02:52:08 12

02:52:08 13            THE CLERK:  All rise.

03:34:16 14            THE COURT:  All right.  Good afternoon.  Please

03:34:17 15    be seated.

03:34:18 16            So this is a hearing in Bio-Rad versus 10X.

03:34:25 17    Civil Action Number 15 -152.  I see Mr. Farnan, and

03:34:32 18    Mr. Reines, and Mr. Walter on one side.  And Mr. Rawnsley,

03:34:37 19    Mr. Powers, and Ms. Moulton on the other.

03:34:40 20            So as I gather from the emails that I saw that

03:34:47 21    were forwarded to me from my staff, the various evidentiary

03:34:53 22    things that were on the horizon yesterday that we postponed

03:34:57 23    until three o'clock so that there could be meeting and

03:35:01 24    conferring and possibly resolving has ended up resolving all

03:35:07 25    of those issues?

03:35:08 1                      MR. POWERS:  Yes, Your Honor.

03:35:10 2                      MR. REINES:  Yes, Your Honor.

03:35:11 3                      THE COURT:  Okay.  Well, thank you for that.

03:35:13 4              So then I saw that there were three additional

03:35:17 5      issues, and I think I pretty much did invite,

03:35:22 6      notwithstanding that we were originally talking about this,

03:35:24 7      the specific exhibits, but I did invite you to come by today

03:35:30 8      if there was anything I could do for you.

03:35:32 9              Actually, so rather than me surmising what I

03:35:38 10     can, Mr. Reines, I gather you're the primary reason that

03:35:42 11     we're here today.  So why don't you just tell me what you

03:35:44 12     have on your agenda.

03:35:46 13                     MR. REINES:  Fair enough, Your Honor.  Thank you

03:35:47 14     very much for making time for us.

03:35:49 15             First, I think just out of housekeeping, I guess

03:35:56 16     it is, to let you know we dropped the '148 patent.

03:35:59 17                     THE COURT:  Oh, okay.

03:36:00 18                     MR. REINES:  Okay.  So it's now a four patent,

03:36:03 19     not a five-patent case.  And that eliminated two claims, so

03:36:07 20     there are currently eight claims --

03:36:09 21                     THE COURT:  Okay.

03:36:09 22                     MR. REINES:  -- in four patents.  So I just

03:36:11 23     wanted to let you know that.

03:36:12 24                     THE COURT:  Yes.

03:36:13 25                     MR. REINES:  There's two issues for the Court.

03:36:15  1    One of them is the question of an indefiniteness issue.

03:36:21  2              THE COURT:  Yes.

03:36:22  3              MR. REINES:  And this came up in the noon, a

03:36:28  4    little after noon submission that was provided to us about

03:36:30  5    whether it's a law or fact issue.  As I understand it,

03:36:36  6    Mr. Powers would like to argue about that presumably in the

03:36:38  7    opening, and present it to the jury, and so forth, the

03:36:42  8    indefiniteness.  And we have fundamental concerns about

03:36:45  9    that, and Mr. Walter's prepared to address that.

03:36:48 10              The second thing was we put in a short paper in

03:36:52 11    the hour that we had to respond to the lengthy submission,

03:36:56 12    the bench memo.

03:36:57 13              THE COURT:  I had not seen that.  I've seen the

03:37:00 14    bench memo because, by accident, it showed up in person, but

03:37:06 15    I haven't seen whatever it is you filed.

03:37:08 16              MR. REINES:  So we would have a response to that

03:37:11 17    which I would probably handle in the first instance, so --

03:37:14 18              THE COURT:  Wait.  You have filed something or

03:37:16 19    you have not?

03:37:16 20              MR. REINES:  Yeah.  We filed something.  Yeah.

03:37:18 21              THE COURT:  Okay.

03:37:19 22              MR. REINES:  Yeah.  So I did a quick, you know,

03:37:22 23    one or two-pager just to respond so that there was --

03:37:25 24    there's a few other points we have in addition to that.  The

03:37:29 25    primary issue is the indefiniteness one, so --

03:37:33 1          THE COURT:  Yes.  Let's talk about the

03:37:34 2   indefiniteness.

03:37:36 3          So first off, Mr. Walter, rather than you

03:37:38 4   telling me what your problem is.  Mr. Powers, why don't you

03:37:45 5   tell me what it is you want to do.

03:37:47 6          MR. POWERS:  We are asserting as a defense to

03:37:54 7   the '083 patent --

03:37:57 8          THE COURT:  Right.  That's the one that you have

03:38:00 9   no obvious or you have --

03:38:02 10          MR. POWERS:  Correct.

03:38:02 11          THE COURT:  -- nothing because of the IPR.  So,

03:38:06 12   right.  So tell me about that.

03:38:08 13          MR. POWERS:  Your Honor, you'll recall that

03:38:12 14   patent has a requirement that the surface, and I'll quote,

03:38:15 15   "the surface tension at the plug fluid/micro channel

03:38:21 16   interface."  So you have a droplet surrounded by plug fluids

03:38:26 17   and a wall that's going through that channel.  That the

03:38:30 18   surface tension at the plug fluid/micro channel wall

03:38:34 19   interface is higher than the surface tension at the plug

03:38:39 20   fluid carrier fluid interface.

03:38:41 21          So they're saying so you have the droplet which

03:38:45 22   is surrounded by the carrier fluid, and that's an interface

03:38:48 23   where there's surface tension.  And it's saying the surface

03:38:52 24   tension at that interface between the droplet and the fluid

03:38:55 25   that's next to it to be lower than the surface tension

03:38:58  1   between the droplet and the wall.

03:39:01  2             THE COURT:  Okay.

03:39:02  3             MR. POWERS:  And we have pointed out in

03:39:07  4   discovery and in many other ways that there is, in fact, no

03:39:11  5   interface between the plug fluid, i.e. the fluid that's

03:39:19  6   inside the droplet and the micro channel wall.  And our

03:39:24  7   expert has opined that because there is no such interface,

03:39:30  8   there is no way to measure the surface tension.

03:39:34  9             I want to note that Your Honor's summary

03:39:37 10   judgment ruling said that there does not have to be physical

03:39:39 11   contact between the plug fluid and the micro channel, but

03:39:43 12   didn't address this question of whether it's impossible to

03:39:45 13   measure in our product the surface tension that's required

03:39:50 14   by the claim, i.e. that between the plug fluid and the micro

03:39:55 15   channel wall.

03:39:56 16             So our expert has opined that it's not possible

03:39:58 17   to measure that.  It's just physically not possible, so you

03:40:01 18   can't do the comparison the claim requires.

03:40:03 19             THE COURT:  What does the plaintiffs' expert on

03:40:07 20   infringement say?

03:40:07 21             MR. POWERS:  Exactly the next point I was

03:40:09 22   getting to which was the right question.  So he creates an

03:40:12 23   imaginary or hypothetical interface, and then measured --

03:40:17 24   and then purports to measure, or determine, or predict, or

03:40:20 25   estimate the surface tension between that hypothetical or

03:40:26 1    imaginary interface, and then says that there's infringement

03:40:30 2    based on that.

03:40:31 3              He does not deny, in fact admits that there is

03:40:34 4    no interface between the plug fluid inside the droplet and

03:40:38 5    the wall.  So our point on the indefiniteness is we have an

03:40:44 6    expert who says the claim requires this interface ratio to

03:40:50 7    be different, and you can't measure it in our products.

03:40:54 8    And, therefore, there's a lot of cases out there that say,

03:40:58 9    if the experts can't agree in a way to measure what the

03:41:03 10   claim requires, that's indefinite.

03:41:05 11             And on indefiniteness, I just want to note for

03:41:09 12   Your Honor when they originally -- when we talked about this

03:41:14 13   at the last hearing, I think it was, what they contemplated

03:41:19 14   and what they represented to the Court was they would put in

03:41:22 15   a letter with their position, and then we would respond.

03:41:25 16   And they told us about 2:15 today they wanted to do this at

03:41:30 17   three o'clock, and our response was, We're happy to do that,

03:41:34 18   but we haven't met and conferred.  And Your Honor has been

03:41:37 19   very clear many times that you want us to meet and confer so

03:41:39 20   you have a joined question before you.

03:41:41 21             THE COURT:  Yes, that's true.

03:41:43 22             MR. POWERS:  And it has not been joined.  They

03:41:45 23   have not stated their position.  There's been no exchange of

03:41:48 24   authorities.  There's been no meet and confer.  We don't

03:41:51 25   even know what their position is as of now.

03:41:54 1          And one final point, we told them that we would

03:41:58 2     be happy to keep it out of opening, i.e. not address

03:42:01 3     indefiniteness in opening, so that it didn't need to be

03:42:04 4     resolved today, so there could be a disciplined meet and

03:42:08 5     confer process to allow Your Honor to have a fully joined,

03:42:12 6     vetted process, and here we are.

03:42:14 7          THE COURT:  Okay.  And so what is the question

03:42:19 8     that you would put to the jury?

03:42:21 9          MR. POWERS:  Whether it's possible to measure

03:42:23 10    the surface tension in that interface that doesn't exist.

03:42:29 11    That's a factual question.  There's no meaningful way to

03:42:33 12    debate that question of whether that's factual.  It is a

03:42:36 13    factual question whether experts can measure that.

03:42:38 14          THE COURT:  So I'm using words here that I don't

03:42:44 15    actually know and understand, but would you imagine that was

03:42:47 16    a special interrogatory, or how would you imagine -- that's

03:42:51 17    kind of what I meant.  How would it be put to the jury?

03:42:57 18          MR. POWERS:  It could be put to the jury in one

03:43:01 19    of two ways, and obviously, we haven't all finalized the

03:43:03 20    verdict form.

03:43:04 21          THE COURT:  No.

03:43:05 22          MR. POWERS:  But to put in our general verdict

03:43:07 23    form that does sort of do you find that as indefinite, yes

03:43:11 24    or no, or do you find that it's possible to measure the

03:43:14 25    surface tension, blah, blah, blah interface.

03:43:17  1                    THE COURT:  So the --

03:43:18  2                    MR. POWERS:  One of those two things it seems to

03:43:20  3      me would be the appropriate way to test that question.

03:43:22  4                    THE COURT:  So are there two asserted claims of

03:43:24  5      the '083 patent?

03:43:26  6                    MR. POWERS:  Claims 1 and 9, yes, Your Honor.

03:43:28  7                    THE COURT:  Do they both present the issue?

03:43:33  8                    MR. POWERS:  They both do.

03:43:34  9                    THE COURT:  Okay.  All right.  Well, that's

03:43:40 10      helpful.

03:43:41 11                    Mr. Powers, let me hear from, I guess,

03:43:43 12      Mr. Walter.

03:43:47 13                    MR. WALTER:  Thank you.  So at noon today, we

03:43:55 14      got their position that they were going to present this

03:43:58 15      indefiniteness argument on the '083 patent.  And the

03:44:02 16      question that they're presenting is concerning to us because

03:44:06 17      it's not really a fact question.  It is question of claim

03:44:10 18      construction.  And it's not just a question of claim

03:44:12 19      construction, but it's a question that this Court has

03:44:17 20      already addressed.

03:44:18 21                    Now, the claim term pertains to the value of the

03:44:24 22      surface tension at the surface between the droplet and the

03:44:29 23      channel wall and how that compares to the surface tension at

03:44:35 24      the interface between the droplet and the carrier fluids.

03:44:37 25      And I have a picture that I can show you to help illustrate

03:44:41 1    that that I'll hand up if that will be acceptable.

03:44:46 2            THE COURT:  Okay.  I see you did not spare any

03:45:04 3    expense here.

03:45:06 4            MR. WALTER:  So the surface tensions at issue,

03:45:11 5    what I am showing here is a channel.  And I'm showing a

03:45:14 6    droplet that I've labeled as A, one of the droplets that is

03:45:18 7    within the channel.  And there is an interface between the

03:45:21 8    droplet and the carrier fluid that surrounds it.  That's the

03:45:24 9    interface A and B.

03:45:26 10           THE COURT:  Yeah.

03:45:27 11           MR. POWERS:  And then there is the interface A

03:45:30 12   and C.  That's the interface between the droplet -- -

03:45:36 13           THE COURT:  Yes.  Keep going.

03:45:37 14           MR. WALTER:  -- and the channel wall.  And the

03:45:39 15   claim requires that the surface tension between the droplet

03:45:43 16   and the channel wall, the A and C interface, be higher than

03:45:47 17   the A to B interface.  And what happens when that surface

03:45:53 18   tension relationship is met is that the plug prefers, as a

03:45:58 19   matter of energetics and thermodynamics, to not be on the

03:46:03 20   wall, but to be surrounded by the carrier fluid.

03:46:07 21           So when you have that surface tension

03:46:08 22   relationship satisfied, you don't have the droplets attached

03:46:13 23   to the wall.  And the argument we got from them this morning

03:46:19 24   is that they believe the claims are indefinite because in

03:46:25 25   their product they say, the plug doesn't stick to the

03:46:28 1   channel wall.

03:46:28 2           THE COURT:  Well, right.  So, I mean,

03:46:35 3   indefiniteness doesn't have anything to do with the product

03:46:38 4   of the accused; right?

03:46:40 5           MR. WALTER:  No, but it, frankly, really is a

03:46:44 6   meritless and definiteness argument.

03:46:47 7           THE COURT:  Well, that's certainly not something

03:46:48 8   I'm going to decide today.  You know, and Mr. Powers is

03:46:54 9   probably wondering what is it that he thinks he's going to

03:46:57 10  decide today.  I'm not really going to decide anything

03:47:00 11  today.

03:47:00 12          I'm just trying to get educated so that I can

03:47:04 13  resolve this.  So I want to think about this at some length.

03:47:08 14          MR. WALTER:  They do connect the indefiniteness

03:47:10 15  argument to their products.  The whole argument is that the

03:47:13 16  claims are indefinite, and it can't be measured in our

03:47:16 17  products.

03:47:16 18          THE COURT:  No.  No.  I can understand that

03:47:18 19  because thinking as Mr. Powers was talking is he's basically

03:47:22 20  saying, We've got this argument.  We're going to use it, I

03:47:25 21  imagine, to say we don't infringe where their burden of

03:47:31 22  proof is not so great, but we're also going to throw it in

03:47:33 23  as an indefiniteness argument where they've got clear and

03:47:36 24  convincing proof.  Okay.

03:47:41 25          I mean, but I took it the argument, and part of

03:47:45 1   the reason why you mentioned the products and maybe he

03:47:47 2   mentioned the products, too, I don't remember, is that it's

03:47:51 3   actually -- I mean, it sounds to me that the same facts and

03:48:00 4   analysis are going to be used to argue noninfringement;

03:48:04 5   right?

03:48:05 6          MR. POWERS:  We will be arguing noninfringement

03:48:08 7   on the grounds that they can't prove that the interface

03:48:12 8   tensions are of the ratio that the claim claims for sure.

03:48:17 9   Separately for indefiniteness purposes.

03:48:20 10         The purpose of indefiniteness, obviously, is to

03:48:22 11  allow parties in the wild to know whether their products are

03:48:26 12  infringing or not.  It has to be to know that.

03:48:30 13         So that's a sense in which our products are

03:48:32 14  relevant.  If our products have no such interface and can't

03:48:36 15  be measured, we have an expert who's very clear on that.

03:48:39 16  He's saying it's not possible at all.  And the fact that

03:48:42 17  their expert had to construct an imaginary hypothetical

03:48:45 18  interface to do his job, I think supports that reasoning.

03:48:50 19         It means both are true.  They have failed in

03:48:54 20  their burden of proof.  They cannot show that our interface,

03:48:57 21  if it exists, we say it doesn't, our interface has the right

03:49:03 22  ratio because he hasn't tested our Applera products.

03:49:07 23         THE COURT:  Well, so, Mr. Powers, maybe I'm

03:49:10 24  trying to be practical in a way that's not fair to what

03:49:13 25  you're trying to do, but how is it you're getting anymore

03:49:16 1    bang for your buck by this indefiniteness argument then just

03:49:20 2    by saying our product doesn't infringe?

03:49:22 3            MR. POWERS:  That's a trial strategy question

03:49:27 4    and a question for the jury that I don't think is

03:49:29 5    appropriate for us to be deciding here.

03:49:31 6            THE COURT:  Well, no.  No.  So you

03:49:34 7    misunderstand.  I'm just asking:  This is something that you

03:49:41 8    think you're getting something extra out of having this

03:49:43 9    indefiniteness argument?

03:49:45 10           MR. POWERS:  We do, Your Honor.

03:49:46 11           THE COURT:  Okay.

03:49:47 12           MR. WALTER:  Let me address the point about why

03:49:49 13   they're not raising this as an infringement argument, as a

03:49:52 14   noninfringement argument.  It's because they raise the

03:49:54 15   arguments as a noninfringement argument.

03:49:56 16           At the summary judgment stage, the very argument

03:49:59 17   they're raising now, which is that the interface doesn't

03:50:01 18   exist.

03:50:01 19           THE COURT:  Yeah, but so presumably I granted

03:50:04 20   saying disputed material fact; right?

03:50:07 21           MR. WALTER:  No, that's not what the Court said.

03:50:09 22           THE COURT:  What did I say?

03:50:10 23           MR. WALTER:  I'm going to hand up the Court's --

03:50:12 24           THE COURT:  No.  Well, no.  You don't need to

03:50:13 25   hand it up.  Just tell me:  What did I say?  I mean, it's in

03:50:16  1    the record somewhere.

03:50:17  2            MR. WALTER:  What the Court said in response to

03:50:23  3    their argument that the claims require that the interface

03:50:26  4    exists, the Court said, "I see no support for defendants

03:50:31  5    attempting to limit the claims so as to require direct

03:50:34  6    contact."

03:50:35  7            That's what the Court said.  The Court rejected

03:50:37  8    their argument that the interface must exist, and so we were

03:50:41  9    very surprised to see today that they're going to pursue an

03:50:44 10    indefinite argument based on that.

03:50:46 11            Now --

03:50:48 12            MR. POWERS:  May I address that issue, Your

03:50:51 13    Honor?

03:50:51 14            THE COURT:  In a minute, Mr. Powers.

03:50:53 15            MR. POWERS:  All right.

03:51:01 16            MR. WALTER:  For instance, here's another

03:51:03 17    example.  We explained in response to their summary judgment

03:51:07 18    motion that nothing in the claims of the '083 patent

03:51:10 19    requires the plug fluid to be in actual physical contact

03:51:13 20    with the micro channel walls.

03:51:15 21            The Court responded, "I agree with plaintiffs."

03:51:18 22    So based on that, we were very, very surprised to see this

03:51:22 23    argument from them that we must prove that this interface

03:51:26 24    actually exists and -- go ahead, Your Honor.

03:51:29 25            THE COURT:  No.  No.  No.  Don't read too much

03:51:32 1   into my facial expressions.  You go ahead.

03:51:35 2           MR. WALTER:  So we're very surprised to see that

03:51:39 3   argument.  Now, there is some other things that I need to

03:51:42 4   correct that Mr. Powers was --

03:51:43 5           THE COURT:  Well, so actually, I appreciate what

03:51:46 6   you're doing, but I thought the question that you were

03:51:56 7   raising was not what are the merits of this indefiniteness

03:52:01 8   argument, but, you know, is it appropriate that the jury

03:52:06 9   have some involvement in it?

03:52:08 10          MR. REINES:  Let me take it from here, Your

03:52:10 11  Honor.  The issue is that the Court decided it was a matter

03:52:12 12  of claim construction in the Summary Judgment Order.  That

03:52:15 13  it's a fallacy that the droplets touch the wall because the

03:52:19 14  whole point of the surface tension relationship is that they

03:52:22 15  don't touch the wall.

03:52:23 16          The Court understood that.  We won that argument

03:52:26 17  of the claim.  So you said as a matter of claim

03:52:28 18  construction --

03:52:28 19          THE COURT:  But I said it in a summary judgment

03:52:31 20  opinion?

03:52:31 21          MR. REINES:  As a matter of claim construction.

03:52:33 22          THE COURT:  Did I say that --

03:52:35 23          MR. REINES:  Yes.

03:52:35 24          THE COURT:  -- this is how I'm construing the

03:52:38 25  claim?

03:52:38  1              MR. REINES:  We wanted to hand it up.  You can

03:52:40  2      look at it.

03:52:40  3              THE COURT:  Okay.  So here's --

03:52:43  4              MR. REINES:  So it's meritless and it's --

03:52:45  5              THE COURT:  So I get what your position is now,

03:52:48  6      I think.  Mr. Powers, you don't really have to respond to

03:52:52  7      anything at this point, but if there's something you want to

03:52:54  8      say, I'll listen.

03:52:55  9              MR. POWERS:  I'm happy to talk for a little bit.

03:52:57 10              THE COURT:  Okay.  I'm sorry, Mr. Reines.

03:53:01 11              MR. REINES:  So let me just do two minutes more.

03:53:03 12      What they're trying to do, so their argument in

03:53:12 13      noninfringement that was now stated that should be dead

03:53:15 14      based on your SJ Order, is that there is no such interface

03:53:22 15      because it doesn't hit the wall.

03:53:23 16              And Your Honor got the point.  If I could just

03:53:25 17      have like three minutes.  And Your Honor got the point and

03:53:28 18      said, Wait, that's silly.  Obviously, it doesn't hit the

03:53:30 19      wall.  So you're looking for something that doesn't exist

03:53:33 20      because it's not supposed to exist.  That doesn't mean that

03:53:35 21      the relationship doesn't happen.

03:53:37 22              And that's the theory of their expert on

03:53:43 23      invalidity.  They were trying to be consistent.  His

03:53:45 24      position was that there is no such thing that exists in

03:53:48 25      their product.  And, therefore, it doesn't exist in a

03:53:52 1    working system; and therefore, you can't measure what

03:53:55 2    doesn't exist.

03:53:56 3            Mr. Powers cleverly is attempting to recast the

03:53:59 4    expert report to be something that it's not, something about

03:54:03 5    how good you can measure it or, you know, in other words,

03:54:05 6    are there instruments to measure it?  What's the margin of

03:54:09 7    error, and that kind of factual question when that has

03:54:12 8    nothing -- none of that is addressed in the expert report.

03:54:14 9    That is not what their expert report position is.  They

03:54:17 10   cannot morph this argument at this point.

03:54:19 11           When you go back -- because he knows, and it's

03:54:22 12   true, when you go back and look at your summary judgment

03:54:25 13   ruling, you'll see that your determination that their

03:54:28 14   argument that they're not infringing because the droplet

03:54:31 15   never hits the wall, so AC never actually exists.  So you

03:54:34 16   can't measure it.  It's the null set.

03:54:36 17           It was based on claim construction.  You said,

03:54:39 18   It's silly to expect that that would actually occur.

03:54:41 19           Now, if we face the argument, we would say,

03:54:46 20   Okay, but then what you can do is you can put an

03:54:49 21   experimental setup where you put a channel wall, and you put

03:54:51 22   the droplets on there.  And you see tension, and you see it

03:54:54 23   doesn't work.

03:54:55 24           That's not in a working system because in the

03:54:57 25   working system, it just rolls through, but you can measure

03:55:00 1    it.  Their argument isn't, Well, that can't be measured in

03:55:04 2    an experimental setup.  They have no opinion on that.  And

03:55:06 3    that's the way he's trying to pivot.  And we can show you

03:55:10 4    the expert report that says that because they're trying to

03:55:12 5    get around it with this 11th hour indefiniteness argument.

03:55:14 6           We thought it was gone which is why two weeks

03:55:16 7    ago we said, What indefiniteness argument?  We wanted to get

03:55:20 8    this issue keyed up earlier.

03:55:22 9           We got it at noon today.  We didn't know which

03:55:24 10   one because they've floated all amounts of arguments, as the

03:55:28 11   Court knows.  So it's not fair that they have any live

03:55:30 12   argument on this at all because, as a matter of law, Your

03:55:33 13   Honor said that the idea that it's the null set because it

03:55:36 14   cannot happen is inconsistent with the claims.

03:55:40 15          THE COURT:  Okay.

03:55:41 16          MR. REINES:  Okay.

03:55:42 17          THE COURT:  Okay.  Thank you.  Mr. Powers.

03:55:45 18          MR. REINES:  And the only other thing I'd

03:55:47 19   mention, just as a bell and whistle to it, but another

03:55:50 20   parameter to this is in their unsuccessful IPR, it went to

03:55:58 21   final ruling, and they lost.  And it has legal effect in

03:56:02 22   this proceeding.

03:56:03 23          They said they could construe the claim

03:56:05 24   limitation, and how they construed it was, if it's moving

03:56:09 25   through the channel, if the droplet is moving through the

03:56:11 1   channel, then it's satisfied.  And they didn't say anything

03:56:15 2   about not understanding or not being able to measure it.

03:56:18 3   And they believe that, what we have where, that they're

03:56:20 4   allowed to pivot to a new argument.

03:56:22 5           We should be able to present the fact that in

03:56:25 6   another proceeding, they were very able, a proceeding that

03:56:28 7   was completed and is live in this proceeding, we should be

03:56:34 8   able to present that they knew exactly how to construe it

03:56:37 9   when they wanted to construe it, and they gave you the way

03:56:39 10   to do it.

03:56:40 11           THE COURT:  Okay.  Mr. Powers.

03:56:42 12           MR. POWERS:  Thank you, Your Honor.  This was

03:56:46 13   supposed to be about whether there's a factual question to

03:56:50 14   be submitted to the jury on the indefiniteness.  That's what

03:56:53 15   this discussion was supposed to be.

03:56:55 16           THE COURT:  Well, I mean, I think that's close.

03:56:58 17   I would say it really was -- your question is, how I would

03:57:02 18   put it, is:  Is there a jury issue here?  But --

03:57:05 19           MR. POWERS:  That's what I meant to say.

03:57:07 20           THE COURT:  -- it's pretty close.

03:57:08 21           MR. POWERS:  I meant to say is:  Is it a purely

03:57:10 22   legal question that the jury doesn't hear, or does our

03:57:12 23   question raise jury issues?  I agree with your framing of it

03:57:16 24   perfectly.

03:57:16 25           And the issue that we're framing it as that's in

03:57:20  1    our expert reports is:  Can it be measured?  The claim

03:57:24  2    requires it be measured.  Can it be measured?

03:57:27  3            The answer is no.  And the fact that their

03:57:29  4    expert had to do some hypothetical interface that he made up

03:57:33  5    and estimated from that, I think shows why it's indefinite,

03:57:38  6    and certainly shows it's a fact question.

03:57:40  7            But we're not here to debate the merits.  Now,

03:57:43  8    what I just heard was a three-minute summary judgment motion

03:57:47  9    made on five minutes' notice which I don't think is

03:57:50 10    appropriate to be argued.  But I will note that the entire

03:57:53 11    premise of it as argued was that Your Honor's claim

03:57:57 12    construction held there did not have to be an interface.

03:58:00 13            Well, that's the opposite of what Your Honor

03:58:02 14    held.  Your Honor held that the interface is in the claim,

03:58:06 15    so you certainly didn't hold that the claim doesn't say what

03:58:08 16    it says.

03:58:09 17            Your Honor certainly did hold, as I said in my

03:58:12 18    opening presentation, that there does not have to be direct

03:58:14 19    contact.  But the claim says what it says, that you have

03:58:18 20    to -- the surface tension at one interface has to be higher

03:58:21 21    than the surface tension at another.  That limitation was

03:58:24 22    not read out, and our point is they can't measure that

03:58:28 23    limitation.

03:58:29 24            And so where we are on that is that's an

03:58:33 25    indefiniteness claim with a factual question, I think,

03:58:36 1    undeniably.

03:58:37 2                   THE COURT:  All right.  So thank you.  So what

03:58:40 3    I'd like to do is some variation of this which is -- well, I

03:58:47 4    guess, you know, Mr. Powers, let's start with what you said,

03:58:52 5    which is you haven't met and conferred on this.

03:58:55 6                   Do you think meeting and conferring on this will

03:58:58 7    make it go away?

03:59:00 8                   MR. POWERS:  On the fact law question, no.

03:59:02 9                   THE COURT:  Okay.  Mr. Reines, do you think

03:59:07 10   meeting and conferring on this will make it go away?

03:59:10 11                  MR. REINES:  No, Your Honor.  I think what will

03:59:11 12   make it go away is if we give you the expert report of their

03:59:14 13   expert, and you look at your SJ.

03:59:16 14                  THE COURT:  So, yeah.  So what I'm thinking is

03:59:19 15   this:  I think you need to write things to me.  I think,

03:59:32 16   first off, Mr. Powers, and I appreciate this, you're not

03:59:36 17   going to mention in opening, and hopefully I can get this

03:59:39 18   resolved before too much time passes, but I'm hoping to get

03:59:47 19   it resolved, one way or another.  And I guess even though

04:00:10 20   I've heard and at least understood a lot of the words you

04:00:15 21   said, Mr. Powers, I don't necessarily understand the entire

04:00:18 22   concept of what you're trying to communicate to me.

04:00:35 23                  Well, so maybe the best way to do this is,

04:00:40 24   Mr. Reines, why don't you submit something that says why you

04:00:47 25   think I have done claim construction or something so as to

04:00:53 1    make this a purely legal issue to which there is no factual

04:00:57 2    component or anything else you want to tell me about why

04:01:04 3    this should not go to the jury.  And then, you know, if

04:01:11 4    you're relying on expert reports, attach them.

04:01:18 5              And then I'll give Mr. Powers a chance to

04:01:20 6    respond in writing.  And do we think that's enough

04:01:25 7    submissions to me on that?

04:01:28 8              MR. REINES:  I think my guess is they're going

04:01:31 9    to be pivoting like we've seen, and so we can do something

04:01:36 10   very quickly and very short when you schedule it.

04:01:38 11             THE COURT:  So with that in mind, when is the

04:01:42 12   first, Mr. Reines, that you can get in your thing to the

04:01:46 13   satisfaction that you or to the standard that you want it to

04:01:48 14   be?

04:01:49 15             MR. REINES:  I would say -- I mean, would you

04:01:58 16   want us to do this cycle through the weekend so that you

04:02:02 17   have the --

04:02:02 18             THE COURT:  Yes.

04:02:03 19             MR. REINES:  That's what I was thinking.

04:02:04 20             THE COURT:  I was kind of imagining that would

04:02:05 21   be --

04:02:06 22             MR. REINES:  Yeah.  So close of -- like close of

04:02:08 23   business tomorrow, is that -- because it now is four o'clock

04:02:11 24   on Friday, so we need some -- you know, we need a little bit

04:02:14 25   of time.  But do you want --

04:02:16  1          THE COURT:  So if you do the close of business

04:02:17  2   tomorrow, when do you expect him to come back?

04:02:20  3          MR. REINES:  So I would say, you know, I guess,

04:02:22  4   like 24 hours, but --

04:02:24  5          THE COURT:  Well, so --

04:02:25  6          MR. REINES:  Why don't we do it at 3:00, and

04:02:26  7   they do it at 3:00, and we get something in by 7:00?

04:02:30  8          THE COURT:  How is that schedule for you?

04:02:31  9          MR. POWERS:  I don't think it's reasonable to

04:02:33 10   ask us to respond with a summary judgment motion on 24 hours

04:02:36 11   the weekend before opening statements.

04:02:38 12          MR. REINES:  Your Honor, this is all a product

04:02:39 13   of the fact that we wanted disclosure of what their

04:02:42 14   indefiniteness argument was two weeks ago.

04:02:44 15          MR. POWERS:  They've had that.

04:02:45 16          THE COURT:  Hey.  Hey.  You know, I don't really

04:02:48 17   like it when we spend all our time arguing about who shot

04:02:51 18   who.  So --

04:02:52 19          MR. REINES:  Understood.

04:02:53 20          THE COURT:  -- we've got this thing here.

04:02:59 21   Reasonable or not, I'm going to have to decide this.

04:03:03 22          So I take it -- actually, so let me think about

04:03:06 23   this.  So, Mr. Powers, maybe a different way of doing this

04:03:09 24   is Tuesday is not a full day.  It's Election Day.  So the

04:03:16 25   earliest that you would possibly be bringing this up is

04:03:18  1   probably Wednesday; right?

04:03:21  2            MR. REINES:  That's right.

04:03:22  3            THE COURT:  Okay.  So let's work backwards from

04:03:24  4   there.  You have volunteered for whatever time you want

04:03:30  5   tomorrow.

04:03:31  6            MR. REINES:  Fair enough.

04:03:33  7            THE COURT:  And Mr. Powers, there's no good

04:03:37  8   times here, but when would you like to respond?

04:03:39  9            MR. POWERS:  My suggestion, Your Honor, is to

04:03:42 10   handle it this way:  It's entirely appropriate to ask for

04:03:47 11   prompt responses on the question, on the limited question of

04:03:51 12   whether there's a factual issue, or a jury issue, or whether

04:03:55 13   it's a purely legal question and should not go to the jury.

04:03:58 14   That I think we can do by Monday or Tuesday.

04:04:04 15            The proper format for the question they're now

04:04:07 16   trying to raise is a Rule 50 motion.

04:04:10 17            THE COURT:  Well, so you say "the question

04:04:12 18   they're now trying to raise," but --

04:04:14 19            MR. POWERS:  It's a summary judgment motion.

04:04:15 20            THE COURT:  I think their basic argument is that

04:04:26 21   I've construed the claims so that you don't have a question

04:04:30 22   to ask; right?

04:04:32 23            MR. POWERS:  I think that's the argument that

04:04:35 24   they want to make, but the position they've stated doesn't

04:04:37 25   support that.  What they've said and what Your Honor did is

04:04:41 1    construe the claims so that direct contact is not required.

04:04:44 2    You did not go forward, based on that motion, and decide how

04:04:51 3    one determines what the interface is when they don't touch.

04:04:55 4            THE COURT:  Well, I don't think that's an issue

04:04:56 5    that's going to briefed.  Is it?

04:04:58 6            MR. POWERS:  Well, that's the issue they want to

04:05:00 7    raise to you.  The issue they want to raise to you --

04:05:02 8            THE COURT:  Well, so wait.  Let me see whether

04:05:04 9    that is the issue.  Mr. Reines.

04:05:05 10           MR. REINES:  Right.  The answer to the question

04:05:07 11   is that the indefiniteness argument that they had, that we

04:05:12 12   thought was gone by virtue of the summary judgment motion,

04:05:15 13   doesn't ask the questions that Mr. Powers is going to be

04:05:17 14   attempting to frame for indefiniteness.  The expert report

04:05:24 15   depends on a claim construction that's inconsistent with

04:05:26 16   what the Court submitted in summary judgment, and that's

04:05:29 17   what we will brief.

04:05:30 18           We'll say this is what the Court said in summary

04:05:32 19   judgment.  Here's the actual expert opinion that they have,

04:05:34 20   the only disclosed indefiniteness position they have on

04:05:37 21   this.  And two are inconsistent.

04:05:39 22           Mr. Powers is going to try to create a new

04:05:42 23   indefinite argument, and that's inappropriate.  That's

04:05:44 24   what's going on.  That's the real --

04:05:47 25           MR. POWERS:  May I respond briefly, Your Honor.

04:05:49  1          THE COURT:  Sure.

04:05:50  2          MR. POWERS:  Here's what I think fairly

04:05:54  3   described what happened.  We moved for summary judgment

04:05:56  4   based on the fact that there was no interface because there

04:05:59  5   was no direct contact.  Your Honor, in summary judgment

04:06:03  6   said, The claims don't require direct contact.  Your Honor

04:06:06  7   did not say the issue wasn't briefed or discussed.

04:06:10  8          How then if there is no contact does one measure

04:06:13  9   that interface because the claim unambiguously requires that

04:06:17 10   the surface tension at one interface exceeds the surface

04:06:20 11   tension at another interface.  Both interfaces have to be

04:06:23 12   present and measured.

04:06:26 13          And Mr. Reines is half right, but the wrong

04:06:31 14   half.  He is right that our expert report, which was

04:06:33 15   rendered before Your Honor did summary judgment, did take

04:06:36 16   the position that contact was required for interface.  I

04:06:39 17   think as a matter of claim construction, we obviously

04:06:41 18   disagree with your construction, but that's not for here.

04:06:44 19          Your opinion leaves wide open undecidedly what

04:06:50 20   you do when there is no contact.  Now, normally, an

04:06:54 21   interface, you think of an interface as touching the

04:06:57 22   position of two things.  That's the interface between them.

04:07:00 23          Now, if there's no contact -- and we understand

04:07:03 24   that's your construction.  I'm not rearguing that -- the

04:07:06 25   claim, nonetheless, unambiguously requires measuring that

04:07:12 1    interface.  What is that interface if there's no contact?

04:07:15 2    Who knows.  That's the indefiniteness claim.

04:07:17 3                    THE COURT:  So --

04:07:18 4                    MR. POWERS:  How do you measure it?  Who knows.

04:07:20 5                    THE COURT:  Wait a second, Mr. Powers.

04:07:22 6    Mr. Reines, one of the things that Mr. Powers says multiple

04:07:25 7    times is the claims require measuring an interface, the

04:07:34 8    interface, whatever that is.  Do you agree with that?

04:07:36 9                    MR. REINES:  Yeah.

04:07:38 10                   THE COURT:  Okay.  So what's the claim

04:07:42 11   construction dispute?

04:07:44 12                   MR. REINES:  So I mean, the issue can be stated

04:07:49 13   very simply.  There is no claim construction dispute.

04:07:51 14   What's going on, I really think I'll help you right now.

04:07:54 15   Okay.

04:07:54 16                   THE COURT:  Okay.  Well, you're making

04:07:56 17   Mr. Powers happy.

04:07:57 18                   MR. REINES:  Good.  It's going to make things

04:07:58 19   simple, which is it's very simple.  The indefiniteness

04:08:02 20   argument they have is dead because of Your Honor's claim

04:08:09 21   construction, and Mr. Powers is pivoting away from that.  I

04:08:12 22   know I've said that several times.

04:08:14 23                   He's now saying, Okay.  Well, then how do you

04:08:16 24   measure it and all of that.  That's not a preserved

04:08:20 25   indefiniteness argument.  It's an 11th hour, Friday

04:08:24 1    afternoon before the trial experienced litigator's attempt

04:08:28 2    to add a new issue for the case.  This is the disclosed

04:08:32 3    indefiniteness argument.

04:08:33 4                    THE COURT:  Okay.  Well, so --

04:08:35 5                    MR. REINES:  So we don't have an expert report

04:08:37 6    on it.

04:08:37 7                    THE COURT:  So there's a lot of pivoting going

04:08:40 8    on, not just by Mr. Powers, because what you're telling me

04:08:44 9    now or what I'm understanding now is this is not a question

04:08:50 10   about whether you submit to the jury.  This is a question

04:08:53 11   about whether this theory is adequately disclosed.

04:08:56 12                   MR. REINES:  We just got the articulation now.

04:09:01 13   I don't know how else to express it.  So until today at

04:09:05 14   noon, what we had -- just if I --

04:09:07 15                   THE COURT:  Yeah.  Yeah.  Yeah.

04:09:09 16                   MR. REINES:  Please.  What we had was the

04:09:12 17   indefiniteness argument as expressed by their expert, right,

04:09:17 18   that their interrogatories all incorporate that that's

04:09:20 19   disclosure of their indefiniteness theory.

04:09:23 20                   It's inconsistent with the Court's Claim

04:09:26 21   Construction Order, so we didn't think there was one at all.

04:09:30 22   We said:  What is the indefiniteness argument, because this

04:09:33 23   one's dead?  There's others they had they've been moving

04:09:36 24   around.

04:09:37 25                   We wanted to get it last week.  At noon today,

04:09:39 1    we got it.  And we said, Wait, that doesn't work because

04:09:44 2    it's either not disclosed, or it's resolved.  That's what we

04:09:48 3    thought, that it was resolved.

04:09:49 4              Now, Mr. Powers, today it's being expressed for

04:09:52 5    the first time here, and I don't think accusations that

04:09:56 6    we're pivoting in any way is fair in any way.  They don't

04:09:59 7    have anywhere in this case's massive pleadings file, a

04:10:03 8    disclosure of, Well, how do you measure it then based on the

04:10:07 9    Court's claim construction indefiniteness position?  So how

04:10:10 10   was I to know about that?

04:10:11 11             THE COURT:  Okay.

04:10:12 12             MR. REINES:  And how was I to have expert

04:10:15 13   testimony --

04:10:15 14             THE COURT:  All right.  I understand what you're

04:10:17 15   saying.

04:10:17 16             MR. REINES:  That's all there is to it.

04:10:21 17             THE COURT:  Mr. Powers, so if the argument is

04:10:30 18   you didn't disclose what you're now telling me, what's your

04:10:36 19   response to that?

04:10:37 20             MR. POWERS:  Our response is that it was

04:10:44 21   disclosed in our expert report.  The expert says in plain

04:10:50 22   English that unless you have what he's calling a particular

04:10:52 23   three-point contact, you can't determine that surface

04:10:55 24   tension.  It's not possible.

04:10:56 25             THE COURT:  Okay.

04:10:57  1          MR. POWERS:  That's in his report.

04:10:58  2          THE COURT:  So.

04:11:00  3          MR. POWERS:  That's not inconsistent with Your

04:11:02  4  Honor's construction.  It's saying without that, it's

04:11:05  5  indefinite.

04:11:06  6          THE COURT:  Okay.  So do you think you both

04:11:17  7  agree that to the extent there's a question for me sort of

04:11:23  8  right now, it's whether the argument that presumably is

04:11:35  9  going to be put on through your expert is fairly disclosed

04:11:41 10  in the expert report?  And then defendant says yes, and

04:11:47 11  plaintiff says no.

04:11:47 12          Is that the dispute here?

04:11:48 13          MR. POWERS:  That's the dispute.  And the normal

04:11:51 14  way you handle that dispute is, as when everything with an

04:11:56 15  expert is happening, you have what the expert is going to

04:11:58 16  testify to on slides exchanged under the Court's Order, and

04:12:02 17  you have a debate on a meet and confer about whether that is

04:12:05 18  within or without his disclosure.

04:12:07 19          Their argument today has moved from:  Is there a

04:12:10 20  jury question to is it precluded by your summary judgment

04:12:15 21  ruling?  I think we've moved off that one to now solely

04:12:18 22  whether it was preserved.  And our expert says

04:12:21 23  unambiguously -- he said two things to be fair.

04:12:26 24          One is that there's no interface because there's

04:12:28 25  no three-point contact.  And Your Honor's claim construction

04:12:32  1    we understand is inconsistent with that.

04:12:33  2              THE COURT:  Got that.

04:12:34  3              MR. POWERS:  But that doesn't mean the rest of

04:12:36  4    his opinion is precluded by your claim construction.  That

04:12:39  5    just means he disagreed with you.  You disagreed with him.

04:12:42  6              He then goes on to say without that three-point

04:12:45  7    contact, you can't measure the interface.  That's an

04:12:47  8    indefiniteness position, and it's a factual indefinite

04:12:50  9    position.  And that is our position here, and that is our

04:12:53 10    position that we're going to offer at trial on Wednesday or

04:12:57 11    Thursday.

04:12:57 12              And that is, I think, entirely consistent with

04:13:00 13    our attack on their expert who had to hypothesize an

04:13:04 14    imaginary interface in order to do his work.  So it's all

04:13:07 15    consistent.  There's no pivoting.  It's disclosed.  And

04:13:12 16    there's no reason for this one issue now to segregate it out

04:13:17 17    of the normal process because we're going to have concrete

04:13:21 18    slides that are exchanged.  And they'll be able to look at

04:13:26 19    those slides and decide if they're within the scope of his

04:13:29 20    report or not.  And they will be.

04:13:31 21              But if they disagree, there's a process to raise

04:13:33 22    that with you.  None of that has been met and conferred on.

04:13:37 23    We're here now on the third argument in 45 minutes having

04:13:41 24    shifted off of argument one to two, and shifting from

04:13:44 25    argument two to argument three, none of which was briefed or

04:13:47 1   met and conferred on.

04:13:49 2               THE COURT:  Yeah.  And of course, you know,

04:13:51 3   you're busy telling me not unreasonably that, you know,

04:13:56 4   well, you can't write a brief on the weekend before trial

04:14:00 5   starts.  It's not particularly easy to write the brief in

04:14:03 6   the middle of trial, either.  And --

04:14:08 7               MR. POWERS:  Exactly.  There is a process to

04:14:10 8   resolve it.  It's not to have us writing briefs just before

04:14:13 9   openings.  I've got ten things I'd love to have them write

04:14:16 10  briefs on in the next few days.  Why don't we tee those up.

04:14:21 11              THE COURT:  You'll have your opportunity.  So

04:14:29 12  thank you, Mr. Powers.

04:14:30 13              Mr. Reines, I can tell that you want to say some

04:14:32 14  more stuff.

04:14:34 15              MR. REINES:  Yes.  I just want to be simple that

04:14:37 16  the question is always the same, which is the Court's claim

04:14:41 17  construction, consistent with the indefiniteness argument

04:14:45 18  that's set forth by their expert, it never changed.  It

04:14:48 19  never will change.

04:14:49 20              THE COURT:  How long is the portion of their

04:14:51 21  expert report that we're talking about?

04:14:53 22              MR. REINES:  It is four paragraphs.  It's two --

04:14:57 23  it's really about a half page, but it's basically the

04:15:00 24  premise of it is that there is no -- is that the claims

04:15:07 25  require -- basically it's inconsistent with the claim

04:15:10  1    construction, that there is no such interface, so it can't

04:15:14  2    be measured, which is inconsistent with the Court's claim

04:15:17  3    construction which says there doesn't have to be one.  You

04:15:20  4    know --

04:15:20  5                THE COURT:  Okay.

04:15:22  6                MR. REINES:  And so I think it's just a matter

04:15:24  7    of comparing these four paragraphs, which really constitutes

04:15:29  8    what we've been talking about, with the Claim Construction

04:15:30  9    Order.  It's a summary judgment expression of what the

04:15:32 10    claims cover.

04:15:34 11                And that's it.  I'm not pivoting.  To the extent

04:15:37 12    either I'm right or wrong that they're moving away from the

04:15:40 13    expert report, you know, I don't see it as anything more.

04:15:44 14                MR. POWERS:  It's really one sentence.  I can

04:15:45 15    read it to you.  Would you like to hear it, Your Honor?

04:15:48 16                THE COURT:  Oh, sure.

04:15:50 17                MR. POWERS:  One sentence.  It's in the very end

04:15:53 18    of Paragraph 3548.  Such three-phase contact line, I'm

04:15:59 19    quoting would be necessary to determine "the surface tension

04:16:04 20    at the plug fluid/micro channel interface."

04:16:09 21                That's not saying that there is no interface,

04:16:13 22    and that's why it's indefinite.  He separately does

04:16:17 23    challenge, disagree with Your Honor's construction on

04:16:20 24    interface, but that's not what that is.  He separately says

04:16:23 25    I can't figure out what the interface is if there's no

04:16:26  1    contact.  That's a separate question of indefiniteness.

04:16:29  2              But if the question here is:  Did we state in

04:16:32  3    his expert report that you can't determine the necessary

04:16:36  4    surface tension without that three-point contact that Your

04:16:42  5    Honor says is not required, the sentence, the single

04:16:44  6    sentence I just read did that.

04:16:46  7              THE COURT:  I'm sorry.  The single sentence did

04:16:48  8    that?

04:16:49  9              MR. POWERS:  Expressed it in one sentence.

04:16:52 10              MR. REINES:  And if you read the very short

04:16:54 11    piece of paper, you will see that all of it is based -- the

04:16:57 12    three-point contact is not present in a working system

04:17:01 13    because of their theory that it's required in a working

04:17:04 14    system.  It says the specification of prosecution history

04:17:07 15    failed to inform that with reasonable certainty what

04:17:10 16    constitutes the plug fluid micro channel wall interface.  We

04:17:14 17    don't know what constitutes it.

04:17:17 18              THE COURT:  All right.

04:17:17 19              MR. REINES:  In a working system, no such

04:17:19 20    interface exists.  More specifically, a person would

04:17:22 21    understand that a working droplet system, a three-point

04:17:24 22    contact line does not exist.  And then his sentence occurs.

04:17:30 23              THE COURT:  Okay.

04:17:30 24              MR. REINES:  So the issue is joined up.

04:17:32 25    Hopefully, this argument is helping because it's clear what

04:17:34  1   the issue is.

04:17:36  2              THE COURT:  Well, things that are clear to you

04:17:39  3   may or may not be clear to me.

04:17:41  4              MR. REINES:  Well, the answer may not be clear,

04:17:43  5   but the question is that:  Does this expert opinion expand

04:17:47  6   beyond what the Court's construction was in the summary

04:17:50  7   judgment?  The whole opinion is premised on the fact that

04:17:52  8   the claims require such an interface in order to be

04:17:55  9   consistent.

04:17:56 10              THE COURT:  All right.  So here's what I'm going

04:17:58 11   to do:  If you have the two pages that have the four

04:18:03 12   paragraphs of the indefiniteness opinion, and at my leisure,

04:18:09 13   I will read them and review my summary judgment opinion so

04:18:15 14   that when this issue arises, I will be prepared to deal with

04:18:20 15   it.  Unless one or the other of you wants to write something

04:18:26 16   before then, I'll wait and see what happens.

04:18:29 17              MR. REINES:  Yeah.  I mean, well, let me

04:18:33 18   consult, but I think that you'll be most of the way there

04:18:35 19   with this paper.  But I'm going to hand it up.

04:18:38 20              Matt?  Okay.  Thank you.

04:18:44 21              MR. POWERS:  Can you give me a copy of what

04:18:46 22   you're handing up?

04:18:47 23              MR. REINES:  Oh, sure.

04:18:48 24              THE COURT:  So there's two red tabs.  Is that

04:18:50 25   supposed to be the --

04:18:52  1                    MR. REINES:  Yeah.

04:18:53  2                    THE COURT:  -- two?

04:18:54  3                    MR. REINES:  Yeah.  I think those are the two

04:18:56  4     pages.

04:18:57  5                    THE COURT:  This is pretty funny.  I take the

04:18:59  6     page numbered 1335 is where it starts -- oh, you really did

04:19:03  7     say Paragraph 3547, which I thought was --

04:19:07  8                    MR. REINES:  It's 1335 and 1336, Paragraphs 3546

04:19:13  9     through 3550.

04:19:15 10                    THE COURT:  I see Mr. Walter's nifty drawing.

04:19:22 11     Okay.  All right.

04:19:23 12                    Well, I've got this.  And like I said, I will

04:19:25 13     look at it and probably expect to hear more from you on this

04:19:29 14     next week.

04:19:30 15                    MR. POWERS:  If I may, Your Honor, just for Your

04:19:34 16     Honor's reference, the sentence I read to you is the only

04:19:38 17     sentence that's not highlighted.  It's at the top of

04:19:42 18     Page 1336.

04:19:42 19                    THE COURT:  Okay.  Well, I was going to read

04:19:44 20     them all, even the ones that are not highlighted.  But I see

04:19:47 21     it.  Yes.  Okay.  Thank you.

04:19:49 22                    All right.  So that's about as much as we can do

04:19:53 23     on that.

04:19:57 24                    So going back to the other thing which I wrote

04:20:02 25     down here is Quake, though, that was 45 minutes ago, so I

04:20:06 1    may have lost track here.  So, you know, I spent most of

04:20:13 2    yesterday, at least my memory of it, asking Mr. Powers

04:20:18 3    questions about Quake, and what he was trying to do.  And so

04:20:21 4    I got eight pages.  You've submitted two pages saying

04:20:26 5    something or other.

04:20:28 6             One of the things that I'm curious about because

04:20:31 7    I didn't really ask you yesterday, Mr. Reines, is what do

04:20:37 8    you think about the question of whether or not you have to

04:20:46 9    show priority to whatever the date is that the provisional

04:20:54 10   application gives you priority to?  And whose burden of

04:21:00 11   proof is it to do something in regards to that priority

04:21:04 12   date?  And do you think the question of the priority date is

04:21:12 13   waived, or stipulated, or something else?

04:21:16 14             MR. REINES:  Okay.  So starting actually in

04:21:20 15   reverse order, their brief today or their memorandum, not

04:21:26 16   brief, accepts that they don't challenge priority.  It

04:21:33 17   accepts that.

04:21:33 18             THE COURT:  Does it?

04:21:34 19             MR. REINES:  Yeah.  The first paragraph of it is

04:21:41 20   that our position has been very clear.  Our position being

04:21:46 21   Bio-Rad's that we're relying on the 2002 date.  And then it

04:21:51 22   says 10X relied on that position to narrow their prior art

04:21:57 23   references.

04:21:57 24             So they relied on the date and selected prior

04:22:02 25   references respecting the priority date of 2002.  What

04:22:06  1    they --

04:22:07  2                    THE COURT:  Okay.  And so you interpret that

04:22:10  3    sentence to mean what exactly?

04:22:12  4                    MR. REINES:  To mean that they're respecting the

04:22:14  5    2002 date.

04:22:16  6                    THE COURT:  Yes.  Well, I'm pretty sure that,

04:22:19  7    unless I really misunderstood, or there's been a pivot by

04:22:23  8    Mr. Powers since yesterday, they may be respecting the date,

04:22:27  9    but they still say you have to prove it.

04:22:29 10                    MR. REINES:  Right.  And I'm saying if they're

04:22:32 11    respecting it and acknowledging it, and not contesting it,

04:22:35 12    why would you have to prove something?

04:22:36 13                    THE COURT:  All right.

04:22:37 14                    MR. REINES:  All right.

04:22:38 15                    THE COURT:  So let me just hold there.  I'm

04:22:39 16    going to get back to you.

04:22:41 17                    MR. REINES:  Of course.

04:22:42 18                    THE COURT:  I take it, Mr. Powers, I'm not

04:22:44 19    misinterpreting what you've written here.  You really don't

04:22:47 20    have to come up here.  I really was hoping for a yes or no

04:22:51 21    when I get the question out here.

04:22:52 22                    I take it your position is all this means is

04:22:55 23    they have to prove it.  It doesn't necessary actually mean

04:22:58 24    anything.

04:22:59 25                    MR. POWERS:  It means if they want to have that

04:23:01  1    date, they have to prove it --

04:23:03  2                THE COURT:  Okay.  Okay.

04:23:06  3                MR. POWERS:  It requires them putting it into

04:23:11  4    evidence.

04:23:11  5                THE COURT:  I'm sorry?

04:23:13  6                MR. POWERS:  Proving that the priority date goes

04:23:15  7    back to the provisional application requires that the

04:23:18  8    application be in evidence.

04:23:20  9                THE COURT:  And does it also require that their

04:23:21 10    expert testify about this?

04:23:23 11                MR. POWERS:  Or some other form of evidence, but

04:23:25 12    that would typically be how it's done, yes.

04:23:27 13                THE COURT:  Okay.  So Mr. Reines, now you can

04:23:33 14    come back up.

04:23:33 15                MR. REINES:  Thank you.  So since they don't

04:23:37 16    contest it, it makes it simple because in the pretrial

04:23:42 17    statement as an uncontested fact, it says the patent claims

04:23:47 18    priority to 2002.  The burden of proof is always on them to

04:23:53 19    invalidate the patent, obviously.

04:23:55 20                THE COURT:  Well --

04:23:55 21                MR. REINES:  Our burden --

04:23:57 22                THE COURT:  Well, so that is true, but I kind of

04:23:59 23    recall, as I've done this a couple times, but I couldn't

04:24:02 24    quite lay my hands on it, there's some cases where when you

04:24:12 25    have a provisional application, where I thought some kind of

04:24:18 1   burden might shift to you, the plaintiff, at some point.  Am

04:24:21 2   I just wrong about that?

04:24:24 3           MR. REINES:  No.  The way I look at it, the

04:24:26 4   burden of going forward can be with us when presented with a

04:24:28 5   prior art -- you know, with a relevant prior art reference

04:24:31 6   or something that we respond to the burden of going forward.

04:24:35 7   Nothing shifted the burden to us, and the burden of going

04:24:38 8   forward is satisfied by the stipulated pretrial statement

04:24:41 9   that the patent claims that priority, and it's uncontested.

04:24:45 10  They're still not contesting it.

04:24:46 11          They're saying that they were unfairly

04:24:51 12  prejudiced by acquiescing to it.  That's what the paper in

04:24:55 13  front of you says.  It says we were unfairly prejudiced

04:24:58 14  because we dropped the Thorsen thesis as a prior art

04:25:02 15  reference in reliance on a 2002 date.

04:25:05 16          It's uncontested.  It's stipulated that that's

04:25:08 17  the date that the patent claims, too.

04:25:12 18          THE COURT:  And just to make sure that I've got

04:25:14 19  this --

04:25:15 20          MR. REINES:  Sure.

04:25:15 21          THE COURT:  -- the Pretrial Order, one of the

04:25:18 22  stipulations of fact is that the patent claimed priority to

04:25:21 23  this date that's in 2002?

04:25:23 24          MR. REINES:  That's exactly.  That's all it

04:25:25 25  says.  It doesn't say they're not stipulating to the date.

04:25:27  1    They're --

04:25:28  2                    THE COURT:  No.  No.  No.

04:25:28  3                    MR. REINES:  -- agreeing that we don't have to

04:25:30  4    put in evidence that the priority claim is to that date.  I

04:25:39  5    want to be clear.

04:25:39  6                    THE COURT:  And so is there a difference between

04:25:42  7    the priority claim as to 2002 and the priority date is 2002?

04:25:48  8                    MR. REINES:  No.  It's just that they would have

04:25:51  9    the opportunity to contest it.  But the thing is they didn't

04:25:54 10    contest it.  They didn't put jury instructions on it.

04:25:56 11    They're just not contesting it.  Right.

04:25:58 12                    That's one of the points that I made.  They

04:26:00 13    didn't put a priority set of jury instructions.

04:26:02 14                    THE COURT:  Yeah.  Yeah.  Well, great minds

04:26:05 15    think alike because I've gone to look that up myself, and I

04:26:08 16    saw, in fact, yeah, it sure doesn't appear to be an issue

04:26:13 17    that needs to be part of the jury instructions.

04:26:14 18                    MR. REINES:  From a case management perspective,

04:26:15 19    this is a classic Rule 16 issue where the Court has the

04:26:18 20    power to find facts not disputed and resolve for purposes of

04:26:22 21    managing a trial.  And here is something where a claim

04:26:25 22    that's made.  It's not contested.  We don't have to put in

04:26:30 23    empty evidence to prove up a claim that's not in evidence

04:26:32 24    when it's problematic evidence as it is for a variety of

04:26:36 25    reasons.

04:26:36  1                        THE COURT:  All right.  And is it your position

04:26:48  2      that, let's just say for the sake of argument, and go with

04:26:55  3      me on this, please.

04:26:56  4                        MR. REINES:  Sure.

04:26:57  5                        THE COURT:  So let's assume during the

04:26:59  6      invalidity case, they said that, Here's the Thorsen thesis.

04:27:06  7      It's from, you know, somewhere in between the provisional

04:27:10  8      application date and, I guess, the first one in the patent,

04:27:13  9      the actual application --

04:27:14 10                        MR. REINES:  Right.

04:27:15 11                        THE COURT:  -- that led to this.  And I said,

04:27:19 12      Yeah.  Yeah, you can admit that to challenge because that

04:27:25 13      antedates the patent.

04:27:27 14                        Would that be sufficient in the normal kind of

04:27:32 15      case for them for you to have to do something more than just

04:27:38 16      say, Well, we claimed to an earlier --

04:27:40 17                        MR. REINES:  Absolutely.  Absolutely.  If that

04:27:42 18      was a preserved contention, we would definitely have to come

04:27:45 19      forward at that point.

04:27:47 20                        So, I mean, burden of production can shift.  The

04:27:50 21      point here is the argument that they're making in black and

04:27:53 22      white to you is that they relied on the date and argue it as

04:27:57 23      simultaneous invention under the ground factors for

04:28:03 24      secondary considerations where you don't have to meet the

04:28:05 25      priority date.  That's the point of use.  And that's so that

04:28:09  1    it shows simultaneous, at the same time.

04:28:11  2            It doesn't have to prove the priority.  So

04:28:12  3    they're saying to you, We're relying on it, not as prior

04:28:16  4    art, but as a secondary consideration.  And that's

04:28:18  5    prejudicial to us.

04:28:20  6            They're telling you they're not going to do the

04:28:22  7    very thing you said what if they did it.  So we have to be

04:28:26  8    able to rely on this thing like this document that says

04:28:29  9    they're not going to contest priority, and they're not

04:28:33 10    asserting Thorsen because it predates it.

04:28:35 11            Now, I do have to say, I put it in the document,

04:28:38 12    but in case you didn't see it --

04:28:40 13            THE COURT:  I haven't seen it.

04:28:41 14            MR. REINES:  You have?

04:28:42 15            THE COURT:  No, I have not seen it.

04:28:43 16            MR. REINES:  So Thorsen, they say there would

04:28:45 17    have been an anticipation.  Their expert never relied on

04:28:48 18    Thorsen as any combination.

04:28:50 19            THE COURT:  So I'm satisfied, unless Mr. Powers

04:28:54 20    immediately tells me otherwise, they've withdrawn Thorsen as

04:28:57 21    an anticipatory reference; right?

04:28:59 22            MR. REINES:  It was never --

04:29:00 23            THE COURT:  Well, even whether it was or it

04:29:02 24    wasn't, it's been withdrawn.

04:29:03 25            MR. POWERS:  It's not been withdrawn.  Let me

04:29:08 1    lay out the history because I think it's important to

04:29:10 2    understand.

04:29:11 3              There's a lot of talk about pivoting.  The state

04:29:15 4    of play was they asserted an interrogatory response that

04:29:20 5    they were claiming the priority date of the provisional

04:29:23 6    which would require them to prove that.  We weren't

04:29:27 7    stipulating to it.  We weren't saying it was uncontested.

04:29:30 8    Our expert report, in fact, challenged that.

04:29:34 9              But if they claim that date, Thorsen would not

04:29:38 10   be anticipatory prior art because it's too late.  It's

04:29:43 11   between the provisional and the actual application date.

04:29:47 12             And so, yes, our expert report did not rely upon

04:29:50 13   Thorsen as anticipatory, only because we were relying on

04:29:54 14   their having said they're going to prove --

04:29:57 15             THE COURT:  So, you know, we're all lawyers

04:30:01 16   here, so semantics is part of what we do.  But if your

04:30:06 17   expert is not relying on it, isn't that the same thing as it

04:30:09 18   being withdrawn?

04:30:10 19             MR. POWERS:  That is a semantic question.  It

04:30:17 20   certainly was not asserted, but my point was, and this is

04:30:20 21   important to us at least, the pivot was not ours in trying

04:30:26 22   to put Thorsen up differently.

04:30:27 23             The pivot is theirs.  And they are saying, We're

04:30:29 24   no longer going to rely on that provisional.  In fact, we

04:30:32 25   don't want the provisional in evidence at all.

04:30:34  1            THE COURT:  Right.  Okay.

04:30:36  2            MR. POWERS:  That is that pivot.  And once they

04:30:38  3    don't rely on the provisional, and that change happened very

04:30:40  4    recently, now all of a sudden the priority date is 2003.

04:30:45  5    And now Thorsen is anticipatory prior art.

04:30:48  6            And so if Your Honor lets them do the pivot,

04:30:53  7    then we should not be prejudiced in the matter of not being

04:30:57  8    allowed to raise Thorsen.  Because now Thorsen is

04:31:01  9    anticipatory prior art, and I should be able to

04:31:04 10    cross-examine Dr. Ismagilov about it, and their expert about

04:31:09 11    it, and do whatever we can do within the rules, because it

04:31:14 12    is anticipatory prior art if they don't claim it.  And the

04:31:17 13    pivot is theirs, and we should not be prejudiced by that.

04:31:20 14            THE COURT:  All right.  So there is a legal

04:31:25 15    issue here based on this stipulation that Mr. Reines

04:31:33 16    referenced because your position, I think, is on this

04:31:42 17    record, they still have to put on evidence to prove the 2002

04:31:50 18    priority date.

04:31:51 19            MR. POWERS:  Absolutely.

04:31:52 20            THE COURT:  Mr. Reines' position is, no, we

04:31:55 21    don't; right?

04:31:58 22            MR. REINES:  Right.

04:32:00 23            THE COURT:  Okay.

04:32:01 24            MR. POWERS:  And my view of that, just to follow

04:32:02 25    down Your Honor's line, is if the provisional is not in

04:32:06  1    evidence, just looking at what the evidence will be on a

04:32:09  2    Rule 50 motion and on appeal down the road, if the

04:32:12  3    provisional is not in evidence, they are not going to get

04:32:15  4    that 2002 date.  Thorsen is going to be in evidence because

04:32:18  5    it's in our expert report about simultaneous invention.  It

04:32:22  6    was there for simultaneous invention only because they were

04:32:25  7    claiming the provisional date before it.

04:32:27  8             THE COURT:  Yeah.  I get what you're saying.

04:32:28  9             MR. POWERS:  So it's in evidence.  It's in the

04:32:30 10    record, and they can't support then the priority date going

04:32:35 11    back to 2002.  So now the record is what it is, but they

04:32:41 12    will not have proved a priority date that they're trying to

04:32:44 13    claim.

04:32:45 14             THE COURT:  Okay.  So here's what I think.  So I

04:32:53 15    take it a couple of things.

04:32:55 16             One of which is the way I look at this is the

04:33:17 17    defendant wants this piece of evidence in, and they are

04:33:21 18    doing whatever it takes to get that piece of evidence in,

04:33:26 19    including doing things that I think are pretty close to the

04:33:32 20    line that they shouldn't be passing.  I think that as a

04:33:47 21    matter of what's happened here, there is actually no dispute

04:33:53 22    that the priority date is 2002.  That's what I think.

04:34:00 23             MR. POWERS:  It's in our expert report disputing

04:34:02 24    it.

04:34:02 25             THE COURT:  What?

04:34:03  1          MR. POWERS:  It's in our expert report disputing

04:34:05  2     it.

04:34:05  3          THE COURT:  Yeah, but that doesn't matter.  The

04:34:07  4     parties get closer and closer to trial and just because in,

04:34:15  5     you know, 2000-page expert reports, you dispute that the sun

04:34:21  6     rises in the morning --

04:34:22  7          MR. POWERS:  We don't.

04:34:24  8          THE COURT:  So you know I don't really care that

04:34:27  9     somewhere in the vast amounts of time and effort that have

04:34:31 10     gone into this, people have said almost everything at some

04:34:35 11     place or another.  I think, as a practical matter, you've

04:34:40 12     stipulated to it.

04:34:43 13          I know that you're sitting here saying, no, I

04:34:45 14     haven't, and that's the reason why I'm kind of curious about

04:34:49 15     what exactly the burdens of proof are here because I think

04:34:55 16     it's ridiculous to say the plaintiff should have to prove

04:35:00 17     this when I think you've stipulated to it.

04:35:04 18          On the other hand, there are many good reasons

04:35:08 19     why the Federal Circuit might reverse me in this case, but I

04:35:11 20     think that would be a bad reason.  And so I'm also inclined

04:35:17 21     to think, yeah, you know, because I believe Mr. Reines has

04:35:23 22     an expert who can testify about this and actually prove it

04:35:28 23     up with the provisional application.  And so my kind of

04:35:32 24     inclination is to say, All right, maybe the better thing to

04:35:38 25     do would be to require him to prove it up.  And because I

04:35:42  1    think you're playing games, I'll take one half hour or

04:35:50  2    20 minutes, whatever it turns out of your time, and give it

04:35:53  3    to him to do this because I do think you're playing fast and

04:36:13  4    loose.

04:36:14  5            MR. POWERS:  May I address that, Your Honor, or

04:36:16  6    at least answer the question, because I never want to be

04:36:18  7    anywhere close to the line that the Court thinks we're

04:36:22  8    passing.  And I want to know what it is you're concerned

04:36:24  9    about first, but I do want to lay out where I think it is.

04:36:27 10            THE COURT:  Well, I mean, that's a fair

04:36:29 11    question.  And you may or may not think so, but I've been

04:36:34 12    trying to pick my words carefully.  I think you've agreed

04:36:39 13    that the priority date is 2002, and I think that in these

04:36:45 14    cases what I see is when people agree to things, you don't

04:36:50 15    need to put on testimony about them.

04:36:53 16            We have a very limited amount of time, and you

04:36:58 17    know, plaintiff has dropped a patent.  You know, I'm not

04:37:05 18    commenting on that other than to say that's what people do.

04:37:07 19    They narrow it down so we can get to the heart of the

04:37:10 20    matter.

04:37:10 21            And you know, so what I see is even though I

04:37:16 22    don't really think you have a leg to stand on, you're

04:37:20 23    arguing about this priority date so that you can increase

04:37:24 24    your odds of getting the provisional application into

04:37:28 25    evidence and doing all the things you want to do with it,

04:37:31 1   which you have plenty of arguments that are not dependent on

04:37:35 2   this priority date thing for why you might or might not be

04:37:38 3   able to get it into evidence.  But I think you're adding on

04:37:46 4   an argument that I don't think you should be making.

04:37:51 5             MR. POWERS:  If I may address that question,

04:37:54 6   because we would never be doing something that we think is

04:37:58 7   playing fast and loose.  That is just not what we do.  We

04:38:02 8   take our responsibilities incredibly seriously.

04:38:04 9             We did not agree that the date is 2002.  We

04:38:10 10  agreed -- not even agreed.  There's no agreement.  We

04:38:14 11  believe that it's highly likely that if they relied on the

04:38:20 12  provisional to prove the 2002 date, they would prevail in

04:38:24 13  that.  That's not agreeing to the date.  We'd much rather

04:38:30 14  have the date be the original filing date of 2003 because

04:38:34 15  then the Thorsen thesis is anticipatory prior art.

04:38:38 16            THE COURT:  But the thing is, you know, that's

04:38:41 17  gone.  No matter what the priority date is, it's too late to

04:38:46 18  be arguing the Thorsen thing as an anticipatory reference.

04:38:50 19            MR. POWERS:  Well, with respect, Your Honor, and

04:38:55 20  the reasonable minds will disagree, from our point of view,

04:39:01 21  they're the ones that made the last-minute change.  And we

04:39:03 22  shouldn't be prejudiced by that.

04:39:05 23            So let's just be clear.  The posture all the way

04:39:10 24  up until now is that they were going to prove the 2002 with

04:39:14 25  the provision.  That was the posture.

04:39:18   1          They're now trying to change from that, and

04:39:20   2   withdraw the provision, and not claim that priority date

04:39:23   3   because if it's not in evidence --

04:39:25   4          THE COURT:  Well, if they want to claim that

04:39:26   5   priority date, they are not changing.  What they don't want

04:39:30   6   to do is to have to prove something, to take time proving

04:39:35   7   something that's not in dispute.

04:39:38   8          MR. POWERS:  It's not that it's not in dispute.

04:39:41   9   It's that if they proved it, they would win the argument.

04:39:44  10   That's our point.

04:39:44  11          We went on the assumption that if they proved

04:39:47  12   the 2002 date with the provisional and put on their expert,

04:39:51  13   they would probably prevail in that position.  It doesn't

04:39:54  14   mean we agree that that date is the date.  There are

04:39:57  15   hundreds of issues out there.

04:39:58  16          THE COURT:  But, you know, I actually don't

04:40:03  17   think you're right on that because when you say, you know,

04:40:13  18   it's 95-percent chance you're going to win on that, so

04:40:17  19   that's not going to be an issue, you know, we would never

04:40:22  20   get anywhere if we had to keep putting on testimony about

04:40:25  21   all these things that we're not going to contest.  I mean,

04:40:28  22   that's what we do, the contested issues.

04:40:30  23          That's what we have in a trial, the contested

04:40:33  24   issues.  It's not a contested issue.

04:40:35  25          MR. POWERS:  It's listed in the pretrial

04:40:36 1    statement as an issue.  It's in our expert report.

04:40:38 2            THE COURT:  But everything else, Mr. Powers,

04:40:40 3    states that you have no bona fide issue of contesting it.

04:40:44 4            MR. POWERS:  If they put on the proof, we're

04:40:48 5    going to be operating as if they're going to win that

04:40:50 6    argument.  It doesn't mean we're conceding that without the

04:40:52 7    proof -- and if Your Honor -- and so let me just be clear.

04:40:57 8    We are not insisting that they put it in.  That's their

04:41:02 9    decision.

04:41:05 10           My point is that if it's not in evidence, that

04:41:10 11   has downstream consequences in terms of what the priority

04:41:14 12   date is because in terms of when you look at the record on

04:41:17 13   appeal, the record on appeal is what it is.  And --

04:41:21 14           THE COURT:  Well, one of the things on appeal is

04:41:23 15   going to be:  Is it a contested issue or not?  This is not

04:41:27 16   like a criminal case where issues that are not contested

04:41:32 17   are -- well, I'm sorry, due process, the defendant doesn't

04:41:36 18   get -- he didn't prove that he was insured by the FDIC, so

04:41:40 19   the defendant wins.

04:41:41 20           MR. POWERS:  We'll just have to agree to

04:41:44 21   disagree about whether it's a contested issue.  My belief is

04:41:49 22   that if it's in the Pretrial Order as a contested issue, and

04:41:54 23   if it's in our expert's report as a contested issue, that

04:41:57 24   makes it a contested issue.  Your Honor has said otherwise.

04:42:00 25   I'm not going to fight it anymore.

04:42:01 1                    MR. REINES:  Your Honor, may I address --

04:42:03 2                    MR. POWERS:  May I finish?

04:42:04 3                    THE COURT:  You may finish, Mr. Powers.

04:42:06 4                    MR. POWERS:  Thank you.  So I do not want at

04:42:12 5       all, Your Honor, to think that we are making them put on a

04:42:15 6       half hour's worth of evidence for no purpose.  And from our

04:42:22 7       point of view, having the provisional in evidence has two

04:42:26 8       purposes and two only.

04:42:29 9                    One is it proves their priority date claim.  And

04:42:34 10      if Your Honor is just going to uphold, based on this record,

04:42:37 11      that they get that date without any proof, then that's a

04:42:42 12      holding Your Honor is going to make, and we'll just live by

04:42:44 13      it, obviously.  And that reason for it goes away.  But

04:42:47 14      that's your decision, not mine.

04:42:48 15                   The second is we want to show the copying or the

04:42:52 16      identity of pages and, you know, that is, in our view, for

04:42:59 17      reasons we've described at length yesterday, and the brief

04:43:02 18      today, a legitimate use of that provisional.  If Your Honor

04:43:08 19      does not want us to do that with the provisional, and

04:43:12 20      particularly if Your Honor thinks that we're playing games

04:43:15 21      in some way with time, which we're not, then we will just

04:43:19 22      say, Fine.  We'll do it with this patent because Your Honor

04:43:22 23      said clearly yesterday that it would be fair game to take

04:43:24 24      his patent and show what was identical.

04:43:27 25                   So you know, if that's where we are, if Your

04:43:31 1    Honor thinks that for some reason that the provisional is

04:43:35 2    playing games --

04:43:37 3              THE COURT:  No.  No, I don't.  In terms of what

04:43:40 4    you want to do with the provisional in terms of the copying

04:43:45 5    and all that, I mean, that's an issue, but I have no

04:43:49 6    concerns about the way you're raising the issue.  I mean,

04:43:52 7    you're doing what you should be doing.

04:43:55 8              MR. POWERS:  My only point then on the second

04:43:57 9    purpose, because there's only two purposes, is that we

04:44:01 10   believe that if they have a claim for priority back from the

04:44:06 11   original date, filing date of 2003, and they want to Claim a

04:44:11 12   2002 date to avoid Thorsen, they have to prove it.  If they

04:44:16 13   don't, in our view, legally they don't get the date, and

04:44:21 14   Thorsen has greater impact.  But if Your Honor is going to

04:44:23 15   rule otherwise, then just hold it.

04:44:25 16             THE COURT:  So let me just ask you, Mr. Powers,

04:44:30 17   because if the provisional application is an exhibit that's

04:44:43 18   admitted into evidence, are you satisfied that that is all

04:44:48 19   they need to do for the 2002 priority date?

04:44:54 20             MR. POWERS:  Well, I mean, Your Honor's rules

04:44:58 21   are clear that you have to have an expert witness talking

04:45:01 22   about it.

04:45:01 23             THE COURT:  Yeah.  Yeah.  Yeah.  So you know,

04:45:04 24   I'm trying to --

04:45:08 25             MR. POWERS:  I think five minutes of testimony

04:45:09 1    from their expert, plus the exhibit in evidence would be

04:45:13 2    sufficient for them to make their case about being entitled

04:45:19 3    to the 2002.  Whether that case is sufficient is for

04:45:23 4    somebody else to decide, Your Honor, Rule 50, or something

04:45:26 5    else, but that's what they would need to put forward their

04:45:28 6    position.

04:45:31 7            THE COURT:  Okay.  Thank you.

04:45:36 8            Mr. Reines.

04:45:37 9            MR. REINES:  Yes, Your Honor.  So the argument

04:45:39 10   that's being made to be clear is that they detrimentally

04:45:43 11   relied on our conduct of asserting a priority to drop.  And

04:45:50 12   they've been clear, they're not arguing Thorsen prior art

04:45:52 13   under, you know, the way the case has played out.

04:45:55 14           They're arguing simultaneous invention.  They've

04:45:58 15   been clear, and that's what we're relying on.  But their

04:46:02 16   detrimental reliance argument is that because we said we

04:46:07 17   could get priority, they abandoned things that they would

04:46:10 18   have done.

04:46:10 19           Let me just put this in a different context.  If

04:46:13 20   someone said to you, I'm arguing Claims 1 and 2, not just

04:46:18 21   Claim 1, and the other side said, Well, if you're adding

04:46:21 22   Claim 2, then we're going to drop the validity case, too,

04:46:25 23   would be so valid, we would just look stupid.  We'd be

04:46:29 24   quibbling.

04:46:30 25           And then it gets to trial, and they drop Claim

04:46:32 1    2.  And the person said to you, Look, we relied on the fact

04:46:35 2    that Claim 2 was in and dropping our validity arguments.

04:46:37 3    Now, we want our validity argument back and Claim 1, or make

04:46:40 4    them keep Claim 2 in which is more analogous.  Like no one

04:46:44 5    would ever.  So those arguments just don't go anywhere.

04:46:48 6            What I don't want to lose sight of and what I

04:46:51 7    want the minutes to raise is the serious 403 issues around

04:46:55 8    this indirect way of showing obviousness through -- even if

04:47:00 9    it was relevant.  They want to tender the document.

04:47:04 10           So that should never happen because they want to

04:47:06 11   make us tender the argument.  I mean, it's wrapped around

04:47:09 12   the axle what even they want us to do, but they can't

04:47:12 13   present the provisional because it's a 403 violation, in our

04:47:17 14   mind, because it's an indirect way to unfairly slur and say,

04:47:24 15   There's 50-percent copying, so therefore, there's

04:47:27 16   obviousness.  So on obviousness and any other thing, it's

04:47:29 17   indirect, and it's basically a resort to the basic motive of

04:47:34 18   the jury.  And that's inappropriate.  They have the

04:47:37 19   technical analysis.

04:47:38 20           Now, on the second half of it, which is the

04:47:42 21   attack they want to make on Professor Ismagilov for ever

04:47:46 22   being a copyist and on the credibility, that raises 403

04:47:51 23   issues, too.  In their nine-page, or six-page, or however

04:47:55 24   long it was, they don't cite any rule.  In fact, they're so

04:48:00 25   bereft of a rule, they say academic principles without

04:48:04 1    citing what they are.  And how do academic principles apply

04:48:06 2    to a provisional --

04:48:09 3             THE COURT:  Well, you know, I don't have any

04:48:10 4    problem with that.  I mean, that's part of what

04:48:13 5    cross-examination is is they're going to have to lay a

04:48:17 6    foundation to make anything that actually has an impact.

04:48:23 7    And you know, I can't really tell too much about that until

04:48:25 8    they actually try to do it.

04:48:27 9             MR. REINES:  We've put our strong 403 argument

04:48:30 10   on that, and excluding at the same time a final and complete

04:48:35 11   ex parte re-examination where the argument was made and

04:48:38 12   rejected, is just a tilt of the balances.  That's being

04:48:44 13   distracted by this game they're playing on the provisional.

04:48:46 14            THE COURT:  Yeah, so there is two.

04:48:53 15            MR. REINES:  Those are serious 403 concerns.  I

04:48:56 16   mean, I think you see it.  It may come out a different way

04:48:58 17   on it.

04:48:59 18            I mean, how could it not be an unnecessary

04:49:02 19   satellite detour to go into whether the copying was actual

04:49:08 20   copying of background or not background and all that?

04:49:11 21            THE COURT:  Well, so Mr. Reines, I'm going to

04:49:15 22   ask you, I'm not going to oblige you to tell me because it

04:49:24 23   may never come up, but maybe it would sacrifice some

04:49:28 24   privilege or whatever, but:  Do you want to tell me what

04:49:30 25   Dr. Ismagilov would say about the Quake that appears in his

04:49:34  1    patent either in the --

04:49:35  2              MR. REINES:  Oh, there's very little in his

04:49:37  3    patent, but --

04:49:38  4              THE COURT:  Well, there's quite a lot of stuff

04:49:39  5    that's highlighted in yellow that I saw.

04:49:41  6              MR. REINES:  No, that's the provisional.

04:49:43  7              THE COURT:  I'm sorry?

04:49:44  8              MR. REINES:  That's the provisional.

04:49:45  9              THE COURT:  Well, I also looked at the patent,

04:49:47 10    and there's quite a lot of stuff that's highlighted in that,

04:49:49 11    too.

04:49:50 12              MR. REINES:  Right.  I think -- I mean, I

04:49:51 13    haven't -- he's coming in this weekend.  He's a professor at

04:49:55 14    Caltech.  This isn't his show, but I believe that was done

04:49:58 15    in the patent prosecution process.

04:50:01 16              THE COURT:  Yeah.  So I'm sure that's true

04:50:05 17    because that's where it was submitted.

04:50:08 18              Can you be more specific as to what you mean?

04:50:10 19              MR. REINES:  I mean, there's privilege issues

04:50:12 20    around it or whatever.

04:50:13 21              THE COURT:  That's the reason why I'm saying you

04:50:15 22    don't have to answer, but I'm saying if you've got

04:50:17 23    something, and you do want to tell me.

04:50:19 24              MR. REINES:  I don't believe Professor Ismagilov

04:50:21 25    did the copying, to the extent there was copying.  I think

04:50:24  1    he relied -- and it's taught to patent prosecutors to you

04:50:31  2    may reuse and not reuse them, not redo the wheel.

04:50:35  3            Now, in their document, I mean, it sounds like

04:50:38  4    it's going to be the Wild West on this, but in their

04:50:41  5    document, they're suggesting he violated his inventorship

04:50:45  6    oath and --

04:50:45  7            THE COURT:  Well, so --

04:50:47  8            MR. REINES:  And so I can't believe we're not

04:50:49  9    having inequitable conduct standards on this.

04:50:53 10            THE COURT:  Well, so here's what I'm thinking

04:50:58 11    about doing on sort of the cross-examination of

04:51:03 12    Dr. Ismagilov on the subject of copying, whether it's the

04:51:13 13    patent, or the provisional, or patents.

04:51:18 14            MR. REINES:  If we make this an inequitable

04:51:21 15    conduct issue that the Court hears beforehand, it will never

04:51:24 16    pass that test.

04:51:25 17            THE COURT:  No.  No.  Let me finish, please.

04:51:28 18            To me, you know, part of cross-examination is

04:51:35 19    you don't necessarily know where things are going to end up.

04:51:41 20    Mr. Powers and his side have, as far as I can see, good

04:51:48 21    reasons to want to set up a cross-examination to establish

04:51:55 22    that maybe Dr. Ismagilov is not quite as great as he will be

04:52:02 23    made to appear during direct examination.

04:52:06 24            That's legitimate.  That's what you have

04:52:08 25    cross-examination for.

04:52:10  1        But I do have concerns along the Rule 403 line

04:52:22  2   for where such cross-examination might go and what it might

04:52:30  3   be argued to show.  And what I was thinking is, you know,

04:52:39  4   there is in a general kind of way, not that much -- and so

04:52:48  5   when we start talking about duties of candor or other things

04:52:53  6   that are Patent Office requirements that are irrelevant to

04:52:59  7   obviousness, in my opinion, those are bad places to go

04:53:05  8   because they suggest to the jury deciding the case on some

04:53:09  9   impermissible basis.

04:53:12 10        You know, when the theory is, Come on.  You're

04:53:15 11   an academic.  You just don't go copying people's stuff

04:53:19 12   without actual attribution.  You know, that strikes me as

04:53:25 13   much fairer.

04:53:31 14        I mean, who knows what his response might be.

04:53:33 15   But, you know, not knowing what his response might be is not

04:53:37 16   a reason to say, Well, he can't do it.  It's a reason to let

04:53:41 17   the cross-examination occur, and we'll see what happens.

04:53:49 18        But I am thinking, and I guess, Mr. Powers, I'd

04:53:53 19   be interested in knowing or hearing from you on this just

04:53:57 20   briefly, but I'm thinking that the cross-examination

04:54:01 21   shouldn't be anything that refers to something that suggests

04:54:08 22   even obliquely that he was doing something wrong vis-a-vis

04:54:12 23   the Patent Office' practices.

04:54:15 24        MR. REINES:  Let me just say one thing before he

04:54:17 25   says that.  He's going to get up and tell you he would never

04:54:19  1    do that.  Look at the paper that they submitted today where

04:54:21  2    they say inventorship oath is violated.

04:54:24  3                THE COURT:  Well, okay.

04:54:26  4                MR. REINES:  Well, okay.  It's relevant; right?

04:54:28  5                THE COURT:  But the point is that's the reason

04:54:30  6    I'm asking it now because if he tells me now, no, no, no,

04:54:33  7    I'm not going to do that, I'm perfectly willing not to do

04:54:39  8    that, I'm going to take him at his word.

04:54:41  9                MR. POWERS:  I'm perfectly willing not to do

04:54:43 10    that.

04:54:43 11                THE COURT:  Okay.  Thank you.  All right.

04:54:49 12                So I'm still thinking about the provisional

04:54:56 13    application in terms of either the cross-examination or

04:55:07 14    possibly for some other purpose, though I think it's more

04:55:10 15    for cross-examination, but there are a number of moving

04:55:17 16    parts here.  It is hard to say much definitively until I

04:55:23 17    actually see -- I mean, that's the usual.  In my experience,

04:55:29 18    with cross-examinations, if you can rule a topic out, you

04:55:32 19    rule a topic out.  But if it's not ruled out, then you kind

04:55:36 20    of have to see what happens.

04:55:37 21                Let me think about this for a second.  And I

04:55:45 22    guess the other thing I would be asking, Mr. Powers, is

04:55:51 23    this:  Let's assume for the sake of argument that the

04:55:59 24    provisional is in evidence, and you can cross-examine

04:56:05 25    Dr. Ismagilov on that.  And you bring out that 50 percent of

04:56:13  1    it or, you know, 16 pages of it are essentially what's in

04:56:17  2    Quake, it does strike me -- and I think we talked about this

04:56:27  3    the other day, it does strike me that essentially the jury

04:56:35  4    shouldn't be asked to decide obviousness based on a quantity

04:56:40  5    as opposed to a quality of what is in that, what comes from

04:56:46  6    Quake that appears in either the provisional or the patent

04:56:49  7    itself.

04:56:51  8                And so what I'm thinking is that an argument

04:57:04  9    that, Well, look, 50 percent of this comes from Quake, that

04:57:09 10    that's a misleading argument.  Do you have any comment on

04:57:19 11    that?

04:57:19 12                MR. POWERS:  I think that were that the only

04:57:22 13    argument, it would not be a persuasive argument.  I think an

04:57:26 14    argument that says, Here are key aspects of the patent that

04:57:31 15    are critical to what he's claiming as his invention, which

04:57:35 16    came straight from Quake, and show several of those, and

04:57:41 17    explain why they're critical, and key, and relate directly

04:57:45 18    to the claims, I think that, and the full extent of the

04:57:52 19    copying shows how important he knew Quake was generally to

04:57:56 20    his invention.  I think the combination of that is a fair

04:57:59 21    argument.

04:58:00 22                I think a simple mask quantitative comparison

04:58:04 23    that doesn't have any tie to the merits would not be a

04:58:09 24    persuasive argument.

04:58:09 25                THE COURT:  Right.  But not being a persuasive

04:58:12  1   argument, honestly, it says nothing in terms of what I'm

04:58:18  2   interested in which is --

04:58:21  3            MR. POWERS:  I think the combination is fair

04:58:23  4   which I think is the question that Your Honor has raised.

04:58:26  5            THE COURT:  Well, you say "the combination."  I

04:58:28  6   think what you're talking about is what you were just

04:58:30  7   talking about, Here's some examples, blah, blah, blah.

04:58:33  8            So one of the things that I'm thinking about is

04:58:39  9   saying, and you cannot make the mathematical argument

04:58:43 10   whether it's persuasive or not persuasive.

04:58:47 11            MR. POWERS:  I'm comfortable not saying it's 16

04:58:49 12   of 34 pages or whatever it is.  I do think it's fair to

04:58:54 13   show, for example, on a slide or a board the portions that

04:58:58 14   were highlighted because it's true.  It's evidence.  And

04:59:05 15   then to show the particular pieces that you want to focus on

04:59:08 16   as being critical to the inventions, I think that's a fair

04:59:11 17   argument.

04:59:13 18            THE COURT:  Okay.

04:59:14 19            MR. POWERS:  I do want to make one thing clear

04:59:18 20   in response to a comment Your Honor made.

04:59:20 21            THE COURT:  All right.

04:59:21 22            MR. POWERS:  If the price Your Honor is going to

04:59:25 23   exact for having the provisional is a half hour for our

04:59:30 24   time, I don't want to pay that price.  I don't think I

04:59:32 25   should have to for the reasons I've described.  I think it's

04:59:35  1    their burden to prove the priority date, and they either do

04:59:38  2    or they don't.

04:59:39  3            If they don't, they bear the consequences of

04:59:42  4    that, in my view.  And I understand Your Honor may disagree

04:59:46  5    because you may uphold them, notwithstanding what I think

04:59:49  6    the disputes are.  You're going to give them that date

04:59:52  7    without proof.  And so if you do that, we'll go from there.

04:59:56  8            THE COURT:  So let's do this:  One of the things

05:00:07  9    that would help me, Mr. Reines, or actually either one of

05:00:15 10    you, but I don't think Mr. Powers has that much motivation

05:00:18 11    here, is put aside the stipulation.  And you've mentioned

05:00:37 12    burdens of production and the like.

05:00:42 13            What is your burden of production when there's a

05:00:45 14    provisional application to shift to them to doing something

05:00:49 15    because I don't think they're going to do anything?

05:00:51 16            MR. REINES:  Right.  If they don't do anything,

05:00:53 17    then it doesn't shift to us.  What I want --

05:00:55 18            THE COURT:  Well, wait.  So it's kind of quick

05:00:58 19    there.  So I haven't looked at this.  Maybe you know the

05:01:07 20    answer.

05:01:07 21            You know, usually the first paragraph of a

05:01:13 22    specification, it says, This thing claims as priority to

05:01:16 23    blah, blah, blah.

05:01:17 24            MR. REINES:  Right.

05:01:17 25            THE COURT:  Does it say, and to the provisional

05:01:19 1    application, then the date 2002, so it's right in there?

05:01:25 2           MR. REINES:  Yes.  Yes.  And it's in the

05:01:27 3    pretrial conference statement, but yes.  Yes.

05:01:30 4           THE COURT:  And so is it your position that if

05:01:35 5    you have that in the patent, absent something done by the

05:01:41 6    defendant, your priority date is 2002?

05:01:45 7           MR. REINES:  If they don't present any prior art

05:01:49 8    post-dating 2002 as their combinations, then the issue is

05:01:54 9    not joined up, and it's just not adjudicated.  There has to

05:01:59 10   be a reason to force us to try and prove a priority date.

05:02:02 11   But I have a more fundamental --

05:02:04 12          THE COURT:  No.  No.  Before you --

05:02:05 13          MR. REINES:  Okay.

05:02:06 14          THE COURT:  I know you want to get to something

05:02:08 15   else, but can you sometime over the weekend --

05:02:18 16          MR. REINES:  Yes.

05:02:18 17          THE COURT:  -- provide me a case or something

05:02:21 18   else that just says, you know, basically if the patent says

05:02:28 19   our priority date is "X," absent something coming from the

05:02:33 20   defendant, nothing has to be done; you get that priority

05:02:36 21   date?

05:02:36 22          MR. REINES:  Yeah.  Yes, we will, but --

05:02:40 23          THE COURT:  Okay.

05:02:40 24          MR. REINES:  -- the one thing that I wanted to

05:02:42 25   say that's broader than that is if the Court's going to

05:02:45  1   permit the cross-examination implied or stating that

05:02:51  2   Mr. Ismagilov stole the invention from --

05:02:53  3                THE COURT:  Yeah.  Yeah.  So you say stole --

05:02:57  4                MR. REINES:  That's copying from Quake, yeah.

05:03:00  5                THE COURT:  So, you know, that's perhaps another

05:03:04  6   thing is, you know, my impression is, and maybe I'm wrong,

05:03:17  7   and I certainly haven't asked Mr. Powers, my impression is

05:03:20  8   that they're not going to say they stole the investigation.

05:03:24  9   What they're going to say is, Here's paragraph after

05:03:28 10   paragraph where you copied what he said.  Isn't this really

05:03:34 11   important stuff?  Isn't this stuff you claim is your

05:03:39 12   invention or the key to your invention?

05:03:42 13                He's going to say, No, that's not my invention.

05:03:44 14   It's something else, I think.  I'd be surprised if he said

05:03:48 15   anything else.

05:03:49 16                And that's part of the reason why I'm saying,

05:03:55 17   you know, I don't want to hear about the Patent Office

05:03:57 18   rules.  The argument is going to be that this shows that, in

05:04:06 19   fact, it was obvious from Quake in some form or fashion,

05:04:10 20   something like that; right?

05:04:11 21                MR. POWERS:  You're exactly right, Your Honor.

05:04:13 22                MR. REINES:  Right.  Your Honor has said

05:04:15 23   repeatedly, and I think that's what's coloring this whole

05:04:18 24   analysis is that you think that that's wrong.  That your

05:04:21 25   guy, it's wrong what he did.  And I fear that the jurors

05:04:24  1   will have -- they don't have the patent.

05:04:25  2                 THE COURT:  Did I say that?

05:04:26  3                 MR. REINES:  Yeah.  You said that two days ago,

05:04:28  4   and I think that just animates it, in general.  And you

05:04:32  5   don't have the patent manuals that say to do that, and so

05:04:36  6   forth in front of you, and the jury certainly will not.  So

05:04:39  7   I think it's an inference that's a risk, at a minimum, but

05:04:44  8   that's what he's going to say.

05:04:46  9                 And the other thing, and Mr. Powers will do this

05:04:48 10   throughout the trial, he'll say, I never will do that.  I

05:04:51 11   direct you to Exhibit 423 and the allegations about him

05:04:56 12   violating his inventorship oath and everything else.

05:04:59 13                 THE COURT:  Yeah.  But, Mr. Reines, just because

05:05:02 14   he writes something yesterday or even earlier today saying

05:05:05 15   this, that, and the other thing --

05:05:07 16                 MR. REINES:  You're saying --

05:05:08 17                 THE COURT:  So --

05:05:09 18                 MR. REINES:  You said you don't know why I would

05:05:10 19   think that he's doing -- you think he's just going to do

05:05:13 20   innocuous stuff.

05:05:14 21                 THE COURT:  Oh, all right.  So I get that.

05:05:15 22                 MR. REINES:  So I'm saying --

05:05:17 23                 THE COURT:  Okay.

05:05:17 24                 MR. REINES:  So what I wanted to say, which I

05:05:19 25   think is just a basic thing, even as Mr. Powers just said

05:05:21 1    it, I'm sure he might want to say other stuff, but is that

05:05:24 2    if they come forward with something that is their prior art

05:05:29 3    reference, and they said they're not going to rely on

05:05:31 4    Thorsen for that, that's been clear because they've made so

05:05:34 5    many arguments to you about that that we then have the

05:05:37 6    burden to come forward with the provisional.  Your Honor's

05:05:40 7    posited this case of this sort of scathing cross-examination

05:05:43 8    where they use the provisional with Professor Ismagilov.

05:05:48 9            That's what you envisioned as perhaps something

05:05:51 10    that's acceptable.  That should never be accepted.  I mean,

05:05:55 11    if you want us to forfeit priority, I guess we would given,

05:05:59 12    assuming that --

05:06:00 13            THE COURT:  Well, whether you forfeit priority

05:06:02 14    or not really has nothing to do with whether I'm going to

05:06:04 15    let him do that.  I mean, in other words --

05:06:09 16            MR. REINES:  But the provisional wouldn't be

05:06:11 17    relevant if they're not relying on it, even they're not even

05:06:14 18    arguing that.  With all the 403, if you remember from two

05:06:17 19    days ago, the indirect proving there's an obviousness

05:06:21 20    analysis where you say, what's in this reference, what's in

05:06:23 21    this reference, and all of that that are the real way to

05:06:26 22    prove obviousness.

05:06:27 23            I mean, we all know.  I mean, I don't think

05:06:29 24    anyone -- everyone knows they just want to make him look

05:06:31 25    bad, right, either it does show invalid or it doesn't.  This

05:06:35 1   is a secondary or tertiary way to create inference of it

05:06:39 2   that's going to have -- what's going to happen is

05:06:41 3   Ismagilov's going to be examined about it.  Our expert is

05:06:43 4   going to have to respond to it.  He's got opinions on it.

05:06:46 5   Their expert has opinions on it, and it becomes an entire

05:06:49 6   collateral sideshow.

05:06:50 7           So in addition to the unfair prejudice, there's

05:06:54 8   the whole cumulative aspect of it.  And this is where I,

05:06:59 9   just for the life of me, I apologize, that to say that

05:07:03 10  getting into the re-exam where they make the copying

05:07:06 11  allegation and issues any way is too collateral because it

05:07:10 12  would take too much time.  It would be too confusing for the

05:07:13 13  jury.

05:07:13 14          But to go through this Rorschach test with

05:07:17 15  yellow highlighters and say the different experts arguing

05:07:20 16  line by line, Is this invention?  Is this not invention?  Is

05:07:22 17  this invention?

05:07:23 18          That's what's going to happen.  That's what's

05:07:25 19  going to happen.  That all should happen regardless of

05:07:29 20  whether we rely on the provisional when the provisional

05:07:33 21  isn't relevant to anything.  Seems to be the classic

05:07:36 22  exercise of 403 to say so collateral, indirect and risk

05:07:41 23  unfair prejudice.

05:07:42 24              THE COURT:  Okay.

05:07:43 25              MR. REINES:  All right.

05:07:43 1                    THE COURT:  I hear you.

05:07:44 2                    MR. REINES:  Thank you.

05:07:48 3                    MR. POWERS:  Nothing further from us, Your

05:07:50 4      Honor.

05:07:50 5                    THE COURT:  Thank you.  All right.  So I'm just

05:07:57 6      going to ask you, Mr. Walter, just because I'm making an

05:08:00 7      assumption here, but the case that I've asked for, can you

05:08:03 8      submit that by like the end of tomorrow?

05:08:07 9                    MR. WALTER:  Yes.

05:08:08 10                    THE COURT:  Okay.  Thank you.

05:08:09 11                    All right.  So if, in fact, Mr. Walter submits

05:08:23 12      the case that I hope he's going to submit, then I am going

05:08:26 13      to rule that, unless you do something to make it an issue,

05:08:32 14      the priority date of 2002 is not an issue.  Okay?

05:08:39 15                    MR. POWERS:  Understood, Your Honor, and we will

05:08:41 16      probably submit a case to you by the end of the day tomorrow

05:08:44 17      as well.

05:08:44 18                    THE COURT:  Well, that will be fine.

05:08:46 19                    MR. POWERS:  And let me be real clear about what

05:08:48 20      it is we're going to say will have raised the issue, and

05:08:52 21      Your Honor can agree or disagree, but I don't want there to

05:08:54 22      be ambiguity or surprise about it.  The Thorsen thesis is

05:08:57 23      going to be in evidence.

05:08:59 24                    THE COURT:  Right.  But it's like not being

05:09:01 25      introduced as anticipatory reference.

05:09:04 1          MR. POWERS:  There will not be testimony about

05:09:05 2   that.

05:09:05 3          THE COURT:  Well, and so it's not -- I'm sorry.

05:09:08 4   You should finish.

05:09:10 5          MR. POWERS:  Let me be clear:  We are not

05:09:12 6   putting it forward through our expert as an anticipatory

05:09:16 7   reference because it's not in his report, and we wouldn't be

05:09:18 8   allowed to.  If it's in evidence, we can certainly talk

05:09:21 9   about with their expert and show how things he's saying are

05:09:26 10  absent in one reference or present in the Thorsen thesis.

05:09:30 11         There's nothing, no rule of law that would

05:09:32 12  prevent me from cross-examining their expert who's saying

05:09:35 13  this is a novel and complete advance or anything in the art

05:09:41 14  to show that the Thorsen thesis has what he says is missing.

05:09:44 15         THE COURT:  All right.

05:09:44 16         MR. POWERS:  And it's my view that that forces

05:09:46 17  the question for them, because as a matter of law, then the

05:09:50 18  record contains evidence that would support a finding of

05:09:54 19  invalidity unless they get the priority date of 2002.  And

05:09:59 20  that's their decision at that point.  I mean, if Your Honor

05:10:02 21  rules we can't put it in, at that point it's their decision

05:10:05 22  whether they want to put it in or not.  If they don't --

05:10:08 23         THE COURT:  Yeah.  So it's going to come up

05:10:11 24  probably long before this because presumably Dr. Ismagilov

05:10:14 25  is going to be testifying on Monday; right?

05:10:16  1          MR. POWERS:  I assume so.  I agree, Your Honor.

05:10:19  2   We need some clarity on this before that.

05:10:21  3          THE COURT:  Okay.  All right.

05:10:22  4          MR. POWERS:  That is the only point I wanted to

05:10:24  5   make about, A, we'll be providing you authority by the end

05:10:27  6   of the day tomorrow on the question that you've asked, which

05:10:30  7   is:  Does the mere claim of priority on the face of the

05:10:33  8   patent entitle that patent to that priority date absent us

05:10:36  9   specifically challenging it?  I am pretty confident the

05:10:40 10   answer will be no, but both sides will give you the cases on

05:10:44 11   that.

05:10:45 12          But I did want to address Your Honor's question

05:10:48 13   about whether we would be doing something to provoke it.

05:10:51 14          THE COURT:  Okay.  Thank you.  I appreciate

05:10:54 15   that.

05:10:55 16          All right.  So I'm certainly going to let you,

05:11:51 17   Mr. Powers, have your expert or cross-examine Dr. Ismagilov

05:11:55 18   however you like, talk about what in his patent application

05:12:01 19   comes from Quake.  And I will let you know by email sometime

05:12:25 20   tomorrow to whether I will let you do the provisional

05:12:29 21   application, too, because I understand this impacts what

05:12:52 22   slides you might be using in the opening.

05:12:57 23          MR. POWERS:  Thank you, Your Honor.

05:12:59 24          THE COURT:  And it's possible -- I will let you

05:13:14 25   know sometime tomorrow, so --

05:13:22  1              MR. POWERS:  May I make a suggestion?

05:13:23  2              THE COURT:  Sure.

05:13:25  3              MR. POWERS:  We can certainly get you whatever

05:13:26  4   cases on this.  It's a very simple issue you asked for.  I

05:13:30  5   think we can get those to you by noon tomorrow if that would

05:13:32  6   be helpful to you in getting an email out to us tomorrow,

05:13:37  7   rather than end of day.

05:13:38  8              THE COURT:  Mr. Walter?

05:13:38  9              MR. WALTER:  Yes, Your Honor.

05:13:39 10              THE COURT:  Okay.  Noon tomorrow.  That's a good

05:13:41 11   suggestion.

05:13:41 12              MR. REINES:  But to be clear, if the basis for

05:13:46 13   the provisional coming in is that we're relying on it, then

05:13:49 14   we won't rely on it because, obviously, the smearing is way

05:13:53 15   worse for us than whatever we have to do on the prior art.

05:13:59 16              THE COURT:  No, see, I mean, it kind of works

05:14:06 17   both ways.  Both sides, in my opinion, have accepted that

05:14:17 18   2002 is the priority date, so I'm not real excited about

05:14:31 19   letting them, the defendant, challenge it.  I'm certainly

05:14:34 20   not excited about you saying, Oh, we don't really care what

05:14:38 21   the priority date is.

05:14:40 22              MR. REINES:  Well, I mean, it's a possible

05:14:42 23   justification for the use of the provisional to

05:14:45 24   cross-examine our expert to do all this stuff, keeping the

05:14:48 25   ex parte exam out.

05:14:50 1          THE COURT:  Well, the thing is, Mr. Reines, I'm

05:14:51 2   going to let him cross-examine on the provisional.  I'm

05:14:54 3   going to let him do that regardless of what priority date

05:14:57 4   you pick.

05:14:57 5          MR. REINES:  That's what I'm fearing, so I'm

05:15:00 6   just doing anything I can for my client and Mr. Ismagilov's

05:15:05 7   reputation.

05:15:06 8          THE COURT:  So there's no particular concern

05:15:08 9   about his reputation because if everything he did is what

05:15:13 10  everybody does, there's no big deal.  It has no impact on

05:15:17 11  his reputation.

05:15:18 12         MR. REINES:  Right.  It's the allegation.  And

05:15:21 13  then nothing that we're doing here today or at any point,

05:15:24 14  just to free me for the rest of the trial, I'm sure you

05:15:27 15  appreciate that, you know, is anything but urging that the

05:15:30 16  ex parte re-exam be considered here.  So that there's

05:15:34 17  nothing, I'm saying, waiving that at any point.

05:15:37 18         THE COURT:  No, I understand that.  Anything

05:15:40 19  else?

05:15:40 20         So I guess the other thing is if over the course

05:15:46 21  of the weekend, you're meeting and conferring and you think

05:15:54 22  it would be helpful to submit something to me in

05:16:06 23  anticipation of having the issue resolved on Monday morning,

05:16:09 24  or Tuesday morning, or whatever, Mr. Farnan, Mr. Rawnsley,

05:16:13 25  they know what my email address is.  Not the Court email,

05:16:16 1    but, you know, my direct email; right?

05:16:21 2              MR. RAWNSLEY:  Yes, Your Honor.

05:16:22 3              MR. FARNAN:  Yes, Your Honor.

05:16:23 4              THE COURT:  So you should feel free to send me

05:16:25 5    whatever it is you need to send me to think about.  And I

05:16:31 6    guess the only other question I have, which is based on the

05:16:34 7    experience now is, do we need to meet earlier than nine

05:16:37 8    o'clock on Monday?

05:16:40 9              MR. POWERS:  At the moment, I would say no, and

05:16:42 10   thank you for the offer in the email, Your Honor.  That's

05:16:45 11   very helpful during trial.  At the moment I would say no,

05:16:50 12   with the caveat that the parties have a meet-and-confer

05:16:54 13   process on both witnesses and openings slides that's going

05:16:58 14   to be happening over the course of the weekend.

05:17:00 15             If, as a result of that process, it looks like

05:17:03 16   there's a bigger issue than normal, one or both of us, I

05:17:08 17   think, will send you an email and suggest that.  So --

05:17:10 18             THE COURT:  Well, if you send me an email and

05:17:13 19   suggest that, I will meet you at 8:30.

05:17:16 20             MR. POWERS:  Thank you, Your Honor.

05:17:18 21             THE COURT:  All right, Mr. Reines?

05:17:20 22             MR. REINES:  Yes.

05:17:21 23             THE COURT:  And you know, I will acknowledge the

05:17:24 24   email, say yeah, I'm going to meet you at 8:30.  Okay.  All

05:17:30 25   right.

05:17:31 1          I can't think of anything else.  I appreciate

05:17:33 2  your time this afternoon, and I guess I'll see you on Monday

05:17:37 3  morning.  Okay?

05:17:49 4          THE CLERK:  All rise.

05:17:51 5          (Court was recessed at 5:18 p.m.)

6          I hereby certify the foregoing is a true and

7  accurate transcript from my stenographic notes in the

8  proceeding.

9

10                              /s/ Heather M. Triozzi
                                Official Merit Reporter
11                              U.S. District Court

12

13

14

15

16

17

18

19

20

21

22

23

24

25