# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BIO-RAD LABORATORIES, INC. and THE UNIVERSITY OF CHICAGO<br><br>Plaintiffs,<br><br>v.<br><br>10X GENOMICS, INC.<br><br>Defendant. | Civ. A. No. 15-152-RGA |

**[PROPOSED] PERMANENT INJUNCTION**

WHEREAS the Court has found that defendant 10X Genomics, Inc. ("10X") has infringed claims 1 and 9 of plaintiffs Bio-Rad Laboratories, Inc. and The University of Chicago's (collectively, "Plaintiffs") U.S. Patent No. 8,889,083 (the "'083 Patent"), claims 6 and 8 of Plaintiffs' U.S. Patent No. 8,304,193 (the "'193 Patent"), and claims 1, 10, and 11 of Plaintiffs' U.S. Patent No. 8,329,407 (the "'407 Patent") (collectively, the "'083 Patent," "'193 Patent," and "'407 Patent" shall be referred to as the "Patents In-Suit");

WHEREAS, the Court has found that Plaintiffs will suffer irreparable harm if 10X continues its infringement, that monetary damages cannot adequately compensate Plaintiffs for this resulting irreparable harm, that the balance of equities weighs in favor of granting injunctive relief, or, at minimum, is neutral, and that public interest weighs in favor of granting a permanent injunction;

NOW THEREFORE, having considered the entire record in this action, the verdict of the jury, relevant orders of the Court, and the papers submitted by the parties, and good cause having been shown:

1

I. **PROHIBITED ACTIVITIES – '083 AND '407 PATENTS**

[**Bio-Rad's Proposal for Section I:**]

IT IS HEREBY ORDERED that defendant 10X and any of its officers, agents, servants, employees, attorneys, customers, vendors, sales agents (including third party resellers and distributors) and persons or entities in active concert or participation with them, who receive actual notice of this Permanent Injunction, are permanently enjoined and restrained from infringing, or inducing or contributing to, the infringement of claims 1 and 9 of the '083 Patent and claims 1, 10, and 11 of the '407 Patent (collectively, the "'083 and '407 Asserted Claims") from the Effective Date (which is fourteen (14) days from the date of this signed Permanent Injunction) until these Patents' expiration, by:

(a) using within the United States any product that infringes the '083 and '407 Asserted Claims, including without limitation the Chromium Genome/Exome, GemCode Long Read, Chromium Single Cell 3', or Chromium Single Cell V(D)J systems (collectively, the "'083 and '407 Accused Products"), and those no more than colorably different;

(b) inducing infringement by 10X's United States customers of the '083 and '407 Asserted Claims by engaging in activities including, without limitation, the following: (i) advertising, marketing, or otherwise promoting the '083 and '407 Accused Products; (ii) entering or fulfilling product orders, or setting, determining, or approving terms of sale, for the '083 and '407 Accused Products; (iii) providing customer service or other technical support relating to the '083 and '407 Accused Products; (iv) negotiating or entering into licensing, representative, reseller, or distributor agreements relating to the '083 and '407 Accused Products; (v)

      developing, designing, manufacturing, or having manufactured products substantially similar to the '083 and '407 Accused Products; (vi) writing, modifying, updating, drafting or otherwise preparing documentation regarding the operation, use, or intended use of the '083 and '407 Accused Products;

(c) contributing to infringement of the '083 and '407 Asserted Claims by selling within the United States the '083 and '407 Accused Products or their components and products no more than colorably different; and/or

(d) supplying from the United States for combination abroad any component especially made or especially adapted for use in claims 1 and 9 of the '083 Patent and not a staple article or commodity of commerce suitable for substantial noninfringing use, including the '083 and '407 Accused Products or their components and products no more than colorably different.

**[10X's Proposal for Section I:]**

IT IS HEREBY ORDERED that, except in connection with the Permitted Activities provided in Section III, defendant 10X and any of its officers, agents, servants, employees, attorneys, and persons or entities in active concert or participation with them, who receive actual notice of this Permanent Injunction, are permanently enjoined and restrained from infringing, or inducing or contributing to, the infringement of claims 1 and 9 of the '083 Patent and claims 1, 10, and 11 of the '407 Patent (collectively, the "'083 and '407 Asserted Claims") from the Effective Date (which is fourteen (14) days from the date of this signed Permanent Injunction or the date on which any stay granted by the Court of Appeals for the Federal Circuit is lifted, whichever is later) until these Patents' expiration, by:

(a) using within the United States any product that infringes the '083 and '407 Asserted Claims, including without limitation the Chromium Genome/Exome, GemCode Long Read, Chromium Single Cell 3', or Chromium Single Cell V(D)J systems (collectively, the "'083 and '407 Accused Products"), and those no more than colorably different;

(b) actively inducing infringement of the '083 and '407 Asserted Claims by 10X's United States customers of the '083 and '407 Accused Products;

(c) contributing to infringement of the '083 and '407 Asserted Claims by selling within the United States the '083 and '407 Accused Products, products no more than colorably different, or their components where such components are especially made or especially adapted for use in an infringement of such patents, and are not a staple article or commodity of commerce suitable for substantial noninfringing use; and/or

(d) supplying from the United States for combination abroad any component especially made or especially adapted for use in claims 1 and 9 of the '083 Patent including the '083 Accused Products, products no more than colorably different, or their components where such components are not a staple article or commodity of commerce suitable for substantial noninfringing use.

None of the above prohibits 10X from making, using, or selling within the United States (or supplying from the United States) components of the '083 and '407 Accused Products for a non-infringing use.

## II. PROHIBITED ACTIVITIES – '193 PATENT

**[Bio-Rad's Proposal for Section II:]**

IT IS FURTHER HEREBY ORDERED that defendant 10X and any of its officers, agents, servants, employees, attorneys, customers, vendors, sales agents (including third party resellers and distributors) and persons or entities in active concert or participation with them, who receive actual notice of this Permanent Injunction, are permanently enjoined and restrained from infringing, or inducing or contributing to, the infringement of claims 6 and 8 of the '193 Patent (collectively, the "'193 Asserted Claims") from the Effective Date until the expiration of the '193 Patent, by:

(a) using within the United States any product that infringes the '193 Asserted Claims, including without limitation the Chromium Genome/Exome and GemCode Long Read systems (collectively, the "'193 Accused Products") (collectively, the '083 and '407 Accused Products and '193 Accused Products shall be referred to as the "Enjoined Products"), and those no more than colorably different;

(b) inducing infringement by 10X's United States customers of the '193 Asserted Claims by engaging in activities including, without limitation, the following: (i) advertising, marketing, or otherwise promoting the '193 Accused Products; (ii) entering or fulfilling product orders, or setting, determining, or approving terms of sale, for the '193 Accused Products; (iii) providing customer service or other technical support relating to the '193 Accused Products; (iv) negotiating or entering into licensing, representative, reseller, or distributor agreements relating to the '193 Accused Products; (v) developing, designing, manufacturing, or having manufactured products substantially similar to the '193 Accused Products; (vi)

5

    writing, modifying, updating, drafting or otherwise preparing documentation regarding the operation, use, or intended use of any the '193 Accused Products; and/or

  (c) contributing to infringement of the '193 Asserted Claims by selling within the United States the '193 Accused Products or their components and products no more than colorably different.

**[10X's Proposal for Section II:]**

IT IS FURTHER HEREBY ORDERED that, except in connection with the Permitted Activities provided in Section III, defendant 10X and any of its officers, agents, servants, employees, attorneys, and persons or entities in active concert or participation with them, who receive actual notice of this Permanent Injunction, are permanently enjoined and restrained from infringing, or inducing or contributing to, the infringement of claims 6 and 8 of the '193 Patent (collectively, the "'193 Asserted Claims") from the Effective Date until the expiration of the '193 Patent, by:

  (a) using within the United States any product that infringes the '193 Asserted Claims, including without limitation the Chromium Genome/Exome and GemCode Long Read systems (collectively, the "'193 Accused Products") (collectively, the '083 and '407 Accused Products and '193 Accused Products shall be referred to as the "Enjoined Products"), and those no more than colorably different;

  (b) actively inducing infringement of the '193 Asserted Claims by 10X's United States customers of the '193 Accused Products and those no more than colorably different; and/or

6

   (c) contributing to infringement of the '193 Asserted Claims by selling within the United States the '193 Accused Products, products no more than colorably different, or their components where such components are especially made or especially adapted for use in an infringement of such patent and are not a staple article or commodity of commerce suitable for substantial noninfringing use.

 None of the above prohibits 10X from making, using, or selling within the United States (or supplying from the United States) components of the '193 Accused Products for a non-infringing use.

### III.  HISTORICAL INSTALLED BASE

 The Prohibited Activities of Sections I and II do not apply to consumables for use with the (i) the '083 and '407 Accused Products and components thereof, (ii) the '193 Accused Products and components thereof, and (iii) products not colorably different from those that are sold or in use before the Effective Date of this injunction (collectively, the "Historical Installed Base"), as set forth below. Without violating this Permanent Injunction, 10X (and any of its officers, agents, servants, employees, attorneys, customers, vendors, sales agents (including third party resellers and distributors), and persons or entities in active concert or participation with them) may also continue to support, service, repair, and replace under warranty[1] the Historical Installed Base.

 This authorization of the sale of consumables that would otherwise be prohibited under the Prohibited Activities in Sections I and II above for use with the Historical Installed Base ("Permitted Historical Installed Base Sales") is conditional on 10X depositing into an interest-bearing escrow account a 15% royalty on **[10X Proposal**: the net revenue 10X receives from**]**

---

[1] If 10X charges for a replacement under warranty, the revenue for that replacement will be subject to the 15% escrow deposit provisions below.

7

[**Bio-Rad Proposal**: the selling price to the end user of**]** the Permitted Historical Installed Base Sales until the expiration of the Patents In-Suit. These deposits shall be made within forty-five (45) days after March 31, June 30, September 30, or December 31 of a given calendar year. [**Bio-Rad Proposal**: In addition, within forty-five (45) days of the Effective Date 10X shall identify the, aggregate number of units and selling price of each infringing product sold before the entry of the injunction and after the verdict that is not included in the supplemental damage award together with a payment in escrow of a 15% royalty of the price to the end user of all such sales.**]** [**10X objects to including Bio-Rad's proposed language in the preceding sentence**] Plaintiffs shall have a right to a quarterly royalty report in which 10X shall identify the aggregate [**10X Proposal**: amount of Permitted Historical Installed Base Sales**]** [**Bio-Rad Proposal**: selling price for each type of consumable product (for example by SKU) for which the royalty is paid **]** and how it performed its royalty calculation and an annual accounting audit. If Plaintiffs request an annual accounting audit, the audit will be conducted during regular business hours by an independent, third-party auditor and only for the purpose of verifying 10X's royalty statements and payments under this provision. The independent auditor shall be required to keep confidential all information received during any such inspection. Nothing in this injunction is an acknowledgement that 10X's actions do not violate other Bio-Rad rights.

      The determination of the on-going royalty (if any) for the sales governed by this Section III (including the post-verdict, pre-injunction infringing sales) is SEVERED AND STAYED. The deposits required by this section do not prejudice the parties' ability to propose and pursue a different royalty rate before this court or on appeal or to argue that such royalties are not proper. If the royalty amount, rate, or base are altered or the reasonable royalty finding is otherwise vacated or modified on appeal and/or based on this Court's determination of the appropriate ongoing

royalty following appeal, necessary refunds or supplements will be made including appropriate interest.

IV.     **[Bio-Rad's Proposed Section IV:]** <u>FUTURE INSTRUMENT SALES</u>

If, after the Effective Date, 10X sells instruments that are otherwise capable of operating with 10X consumables that have been found to infringe, 10X shall ensure that before such sale they have verifiably installed non user-modifiable firmware on all such instruments to preclude them from use with such infringing consumables or consumables not colorably different.  This provision (and this Permanent Injunction in general) is not an acknowledgment by Plaintiffs that any of 10X's activities do not violate Plaintiffs' other rights.

**[10X objects to Bio-Rad's Proposed Section IV as unnecessary, premature, and inappropriate to include.]**

V.     <u>NOTICE</u>

IT IS FURTHER ORDERED that, within five (5) business days from the Effective Date, 10X shall provide a copy of this Permanent Injunction to each customer, **[Bio-Rad Proposal:** vendor, sales representatives (including third party resellers and distributors), employee and all other persons in active concert or participation with them] **[10X objects to including the preceding language proposed by Bio-Rad]** as of the Effective Date.   **[Bio-Rad Proposal:** So long as 10x sells infringing products, it shall provide a copy of this Permanent Injunction to each new customer, vendor, sales representatives (including third party resellers and distributors), employee,  and all other persons in active concert or participation with them.**] [10X objects to including Bio-Rad's proposed language in the preceding sentence]**

9

IT IS FURTHER ORDERED that, within fourteen (14) days from the Effective Date, 10X shall file with the Court under seal and serve on all parties a notice stating the names and addresses of each party that it has notified in compliance with this section.

## VI.   **CONTINUING JURISDICTION**

The court specifically retains jurisdiction to enforce, modify, extend, or terminate this Permanent Injunction as the equities may require, upon a proper showing, and to adopt procedures for resolution of any dispute whether a product not specifically covered by this Permanent Injunction is more than colorably different from the adjudged infringing products.

**IT IS SO ORDERED.**

Dated: _____        _____
                                     The Honorable Richard G. Andrews
                                     United States District Judge