

Frederick L. Cottrell, III
Director
302-651-7509
Cottrell@rlf.com

July 31, 2019

**BY CM/ECF AND HAND DELIVERY**
The Honorable Richard G. Andrews
United States District Court
District of Delaware
844 North King Street
Wilmington, DE  19801-3555

Re: *Bio-Rad Laboratories, Inc. v. 10X Genomics, Inc.*, C.A. No. 15-152-RGA

Dear Judge Andrews:

I write on behalf of 10X Genomics, Inc. in further response to Your Honor's Order of July 24, 2019 (D.I. 569), in which the Court directed the parties to submit a revised proposed permanent injunction order.  On Monday, July 29, 2019, the parties submitted a draft injunction order accompanied by a letter to the Court outlining the parties' positions on the disputed terms in that draft injunction order.  One of the disputed terms is Section IV, Future Instrument Sales.  Bio-Rad's proposal required 10X instruments to be installed with "verifiably non user-modifiable firmware" that would preclude users from modifying the firmware on the new Next GEM instruments for any reason.  But 10X provides regular firmware updates for the instruments in the field to provide settings for new assays, as well provide critical bug fixes.  10X rejected Bio-Rad's proposal principally because it would eliminate researchers' ability to install these firmware updates.  These updates should be permitted as long as they limit the instrument to use with 10X's newly designed Next GEM chip—about which 10X believes there is no credible argument of infringement—and prevent the instrument from being used with the old chips. At the time it received and rejected Bio-Rad's proposal on Monday, 10X had not completed the development of firmware that would meet both objectives: preventing modifications to firmware that would allow it to run the old chip while at the same time allowing regular updates and upgrades.

Since the Court's July 24 Order, 10X's engineers have been working diligently on new firmware for 10X's instruments, and they have been able to now complete firmware that makes modifications to the embedded command code which will permanently disable any new instrument from operating a legacy chip. Without the chip that is found to infringe, none of the consumables (such as reagents) are capable of infringement.  10X intends to implement this firmware in all instruments sold after the Effective Date. This firmware (1) will be loaded on the instrument prior to sale and will not allow the instrument to run with the old chip, and (2) will ensure that if the customer installs an upgrade or update to the instrument firmware, the instrument will still not be capable of being used with the old chip. Further, the change in the command code also ensures that customers will not be able to use legacy firmware on the new Next GEM instruments. 10X

hereby proposes an alternative to Bio-Rad's proposal that implements these concepts. The parties' proposals are juxtaposed below:

| 10X PROPOSAL | BIO-RAD PROPOSAL |
|---|---|
| If, after the Effective Date, 10X sells instruments that are otherwise capable of operating with 10X consumables that have been found to infringe, 10X shall ensure that before such sale they have verifiably installed firmware on all such instruments to preclude them from use in an infringing way with such consumables or consumables not colorably different.<br><br>Such firmware may be user-modifiable for upgrades provided by 10X, but must not be user-modifiable in a way that would allow users to modify the firmware to permit such instruments to use in an infringing way consumables that have been found to infringe or consumables no more than colorably different.<br><br>This provision (and this Permanent Injunction in general) is not an acknowledgment by Plaintiffs that any of 10X's activities do not violate Plaintiffs' other rights. | If, after the Effective Date, 10X sells instruments that are otherwise capable of operating with 10X consumables that have been found to infringe, 10X shall ensure that before such sale they have verifiably installed non user-modifiable firmware on all such instruments to preclude them from use with such infringing consumables or consumables not colorably different.<br><br>This provision (and this Permanent Injunction in general) is not an acknowledgment by Plaintiffs that any of 10X's activities do not violate Plaintiffs' other rights. |

Bio-Rad stated that its main concern was that the new products "may be able to work with the chips found to infringe at trial." D.I. 750 at 1. 10X's proposal addresses and resolves that concern as it ensures that the instruments sold after the Effective Date will not be capable of infringement and does so in a way that will not cripple 10X's customers who can continue to modify the firmware for regular updates and upgrades but prevents customers from modifying the firmware to permit the use of in a manner that was found to infringe at trial.

10X provided its proposal and this letter to Bio-Rad this morning, hoping that the parties could agree to 10X's alternative proposal. Bio-Rad has not yet responded. 10X is submitting this letter to the Court to assist in Your Honor's consideration of the draft injunction order submitted on Monday, because 10X's proposal narrows the dispute on the Future Instrument Sales. 10X will update the Court promptly should the parties reach agreement.

Should the Court decide to include a Future Instruments provision at all, 10X respectfully requests that the Court adopt 10X's proposal. 10X is submitting herewith the updated proposed injunction order (attached as Exhibit A), reflecting 10X's proposal for Future Instruments.

Counsel is available at the Court's convenience if Your Honor has questions concerning this matter.

Respectfully,

*/s/ Frederick L. Cottrell, III*

Frederick L. Cottrell, III (#2555)

FLC,III/afg

cc: All Counsel of Record (via CM/ECF and email)