# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

BIO-RAD LABORATORIES, INC. and
THE UNIVERSITY OF CHICAGO

                Plaintiffs,

     v.

10X GENOMICS, INC.

                Defendant.

C.A. No. 15-152-RGA

**REDACTED
PUBLIC VERSION**

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION OF THE COURT'S ORDER SETTING SUPERSEDEAS BOND AMOUNT AT $52 MILLION (D.I. 586)

Dated: September 4, 2019

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 N. Market St., 12th Floor
Wilmington, DE 19801
(302) 777-0300
(302) 777-0301 (Fax)
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Edward R. Reines (admitted *pro hac vice*)
Derek C. Walter (admitted *pro hac vice*)
Amanda Branch (admitted *pro hac vice*)
Christopher S. Lavin (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA  94065
(650) 802-3000
edward.reines@weil.com
derek.walter@weil.com
amanda.branch@weil.com
christopher.lavin@weil.com

Robert T. Vlasis III (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7024
robert.vlasis@weil.com

*Attorneys for Plaintiffs*

## I.      INTRODUCTION AND BACKGROUND

10x filed an emergency motion to set the bond amount based on ██████████

███████████████████████████████████████████████████████████████████████

███████████████████ D.I. 580 at 1. ██████████████████████████████

███████████████████████ *Id.* ████████████████████████ Plaintiffs were

required to respond to the motion to set the bond less than 48 hours from its filing.  D.I. 584.

Apparently working over the weekend ████████████████████, the Court issued its Order

setting the bond at $52 million the next court day.  D.I. 586.

Meanwhile, Plaintiffs repeatedly asked 10x to identify the infringing revenue post-verdict

so they could propose a bond amount that would secure 10x's royalty liability for that period.  10x

refused.  Plaintiffs thus had to estimate a bond amount in its emergency opposition at $52 million.

Hours after this Court set the bond amount, 10x filed its prospectus for an IPO.  ██████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

*See* Ex. 1 at 1. ████████████████████████████████████████ *See id.*

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

Second, 10x's IPO prospectus revealed that 10x itself has ***accrued*** a liability for the 15%

royalty for its infringing revenue and that it had quantified the amount through June 30, 2019 for

a total liability to Plaintiffs of $55.3 million for that period.  Ex. 2 at p. 6.  10x had withheld this

number from Plaintiffs during the emergency bond proceedings even though it had calculated the

number ██████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████

      This important background should be considered when evaluating 10x's reconsideration

motion. ████████████████████████████████████████████████████

████████████████████████████ In addition, 10x's acknowledgement that it has accrued

as a liability a sum-certain undercuts its suggestion that the amount is unquantified or uncertain.

      10x's reconsideration motion recycles the arguments it already presented and is a wooden

attempt to bind this Court's broad discretion in setting a bond to what 10x calls Delaware practice.

Yet, 10x fails to cite any Delaware case with facts remotely similar to this case.  And the case law

confirms that courts may consider the facts of a case flexibly to set a bond that protects the plaintiff

beyond a formulaic mirroring of the judgment amount.  Beyond that, 10x acknowledges courts

around the nation typically set a default bond amount in the 1.25-1.5 range of the judgment,

terming it the Rule of Thumb.  This range is consistent with this Court's bond amount.  In 10x's

reading of the law, all the decisions following the Rule of Thumb would be manifestly erroneous.

Delaware courts enjoy no less discretion to protect plaintiffs than courts in the 49 other states.

      Beyond that, the bond should be increased. ████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████ The proper amount of

the bond is $61.3 million.

## II.    LEGAL STANDARD

### A.    10x Fails To Meet The Reconsideration Standard

10x's motion alleges that this Court's Order setting a $52 million bond is "premised on manifest errors of law or fact." D.I. 589 at 8. But 10x never identifies the supposed manifest error of law or fact. Rather, 10x makes the same arguments it made in its "emergency" motion. It is not a proper reconsideration motion.

### B.    10x Contends The Law Of Bond-Setting Is Formulaic When It Is Actually Flexible And Equitable

As the premise for its motion, 10x argues that the bond amount can only be the dollar value of the judgment plus interest and costs. *Id.* at 2-3. However, 10x argues the Court's discretion is even more circumscribed. It argues the legal ceiling on the bond should not include interest and costs if they are "undetermined." *Id.* at 5 n.3.

10x is wrong on the law. This Court has broad equitable discretion to set a bond that fairly secures Plaintiffs. The *ActiveVideo* line of cases establishes that on-going royalties during a sunset period may be included in the bond even if not included in the judgment and even if not yet determined. *See ActiveVideo Networks v. Verizon Commc'ns, Inc.,* No. 2011-1538, 2012 U.S. App. Lexis 6764, at *5 (Fed. Cir. Apr. 2, 2012); *WCM Indus., Inc. v. IPS Corp.*, No. Civ. A. 13-02019, 2016 WL 7470107 (W.D. Tenn. Aug. 26, 2016); *Mondis Tech. Ltd. v. Chimei Innolux Corp.*, No. Civ. A. 11-378, 2012 WL 1554645 (E.D. Tex. Apr. 30, 2012).

Likewise, 10x does not contest the general principle that while "practices vary among judges, a bond of ***1.25 to 1.5 times*** the judgment is typically required." *Cotton ex rel. McClure v. Cty. of Eureka*, 860 F. Supp.2d 999, 1029 (N.D. Cal. 2012) (emphasis supplied); *see, e.g., Barfield v. Sho-Me Power Elec. Coop.*, No. Civ. A. 11-00431, 2015 WL 4159988, at *4 (W.D. Mo. July 9, 2015) (same quote); *ThermoLife Int'l, LLC v. Myogenix Corp.*, No. Civ. A. 13-00651, 2018 WL

1001095, at *2 (S.D. Cal. Feb. 21, 2018) (same quote); *WMCV Phase 3, LLC v. Shusok & McCoy, Inc.*, No. Civ. A. 10-00661, 2016 WL 234816, at *2 (D. Nev. Jan. 20, 2016) (same quote).  10x calls it the Rule of Thumb.  D.I. 589 at 6 n.4.

In essence, 10x argues that Delaware courts are circumscribed in setting bond amounts in the way federal courts throughout the United States generally are not.  But this is wrong.  Delaware judges enjoy as much discretion as judges in the other 49 states.

A recent example of the discretion of district court judges to set a bond amount greater than the judgment is *NobelBiz, Inc. v. Global Connect, L.L.C.*, No. Civ. A. 12-00244, 2017 WL 11190016 (E.D. Tex. Feb. 7, 2017) (slip op.).  There, the district court reviewed the law establishing that a "trial judge has discretion to depart from the default bond amount."  *Id.* at *2. The district explained that, exercising its equitable discretion, it was appropriate to depart upward from the amount of the judgment to protect the plaintiff.  *Id.* at *5.  Because the two defendants, TCN and Global Connect, appeared to shift assets from Global Connect to TCN after the verdict, the district court increased the bond requirement for TCN.  *Id.*  The district court declined to find the transactions were improper at the time of setting the bond amount and did not find that TCN was liable for both judgments.  *NobelBiz*, 2011 WL 11190016, at *5.  Nevertheless, to do equity, it increased the bond for TCN to be multiples of the judgment against it in view of the Global Connect judgment.  *Id.*

10x's view of the law is rigidly inconsistent with all these cases.   10x argues "undetermined" amounts such as on-going royalties should not be secured.  10x argues that, even though a 1.5 multiplier to the judgment typically is employed, it supposedly is improper if it exceeds the quantified amount in the judgment.  10x argues that a district court cannot depart

upward from the judgment amount if equity requires it to protect the plaintiff. 10x's positions are manifestly wrong, not the Court's decision.

### C.   Equity Supports The $52 Million Bond The Court Has Set

Equity supports the $52 million bond. ███████████████████████████



███████████████████████ 10x also successfully advocated to be allowed to continue to sell infringing consumables even after the permanent injunction including onto the infringing systems it sold after the willful infringement verdict. Moreover, 10x's IPO prospectus reveals that even 10x is treating its post-verdict sales as an *accrued* liability with a sum-certain. Ex. 2 at p. 6.

Equity easily supports at least a $52 million bond. The Court was not manifestly wrong. Indeed, the Court's $52 million is almost exactly the 1.5 multiplier courts commonly order pursuant to 10x's Rule of Thumb.

## III.   THE COURT SHOULD REQUIRE 10X TO POST A $61.3 MILLION BOND

10x obtained a $52 million bond by withholding the amount of its post-verdict infringing sales and thus forcing Plaintiffs to conservatively estimate such sales. In its IPO prospectus filed as soon as this Court set the bond at $52 million, 10x publicly revealed "[a]s of June 30, 2019, we

had accrued a total of $55.3 million relating to this matter which includes the $35 million judgment and our estimated 15% royalty for sales through that date." *See* Ex. 2 at p. 6.

It makes sense to secure Plaintiffs based on 10x's accountant's calculation of its accrued royalty obligation based on actual sales figures rather than Plaintiffs' conservative estimate ███

██████████████████

The more accurate calculation is the $55.3 million liability 10x acknowledges, plus the royalty on sales from July 1, 2019 to August 14, 2019, estimated at $3,934,802 [$20,300,000 (Total Royalties From Date of Verdict to June 30, 2019) / 227 days = $89,427.31 royalties/day * 44 days = $3,934,802].

In addition, the bond should include two years of post-judgment interest, which is $2,127,527 [$59,234,802 (Total Judgment as of Aug. 15, 2019) * $(1 + 0.0178 \text{ (T-Bill rate)})^2$ (# Years) - $59,234,802 = $2,127,527].

Based on the foregoing, the bond should be increased to $61.3 million.

## IV.   CONCLUSION

For at least the reasons above, 10X's Motion For Reconsideration Of The Court's Order Setting Supersedeas Bond Amount At $52 Million (D.I. 586) should be denied.  Rather, the bond amount should be increased to $61.3 million.

Dated:  September 4, 2019

Respectfully submitted,

FARNAN LLP

*/s/* Brian E. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market Street, 12th Floor
Wilmington, DE 19801
Telephone: 302-777-0300
Facsimile: 302-777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Edward R. Reines (admitted *pro hac vice*)
Derek C. Walter (admitted *pro hac vice*)
Amanda Branch (admitted *pro hac vice*)
Christopher S. Lavin (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA  94065
(650) 802-3000
edward.reines@weil.com
derek.walter@weil.com
amanda.branch@weil.com
christopher.lavin@weil.com

Robert T. Vlasis III (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7024
robert.vlasis@weil.com

*Attorneys for Plaintiffs*