**Exhibit 1**

**From:** Moulton, Libby <emoulton@orrick.com>
**Sent:** Wednesday, August 14, 2019 12:42 PM
**To:** Reines, Edward <edward.reines@weil.com>; Lavin, Christopher <Christopher.Lavin@weil.com>; Robert.Gerrity@tensegritylawgroup.com
**Cc:** Matthew.Powers@tensegritylawgroup.com; DGindler@irell.com; ngroombridge@paulweiss.com; Rosenkranz, E. Joshua <jrosenkranz@orrick.com>; Cottrell@rlf.com; Jason Rawnsley <Rawnsley@RLF.com>; Walter, Derek <Derek.Walter@weil.com>; bfarnan@farnanlaw.com; azra@tensegritylawgroup.com; 10X_Orrick_TLG <10X_Orrick_TLG@tensegritylawgroup.com>
**Subject:** RE: Bio-Rad v. 10X, 15-152-RGA

Ed,

First, Bio-Rad's request for the bond to include  the post-verdict, pre-injunction royalties is an improper motion for reconsideration of no less than two Court orders, the first of which was based on Bio-Rad's own stipulation.  Those royalties were severed and stayed pending appeal per the parties' stipulation and the Court's order.  DI 506.  Bio-Rad has not been awarded any damages for those sales and they are not covered by the injunction.  Judge Andrews has already denied Bio-Rad's attempt to force 10x to escrow those royalties as part of the injunction order.  DI 576 (August 12, 2019 Order).  A bond covering those not-yet-awarded or determined royalties is simply an improper request for reconsideration of the Court's orders.

You reliance on *ActiveVideo* is misplaced.  As you know, *ActiveVideo* addresses a bond to cover payments ordered as part of an injunction.  *ActiveVideo* provides no support for Bio-Rad's position that 10x should bond damages that are **not** part of either the judgment or the injunction.

Second, a $36 million bond is more than 18 months of post-judgment interest.  Twelve months of post-judgment interest is more than sufficient to protect Bio-Rad's interest during the pendency of the appeal.  Please explain why you believe a bond of more than  $35,088,725 is needed, which includes the final judgment amount plus 12 months of post-judgment interest.

Finally, your statement that "If 10x is granted additional permission to infringe (which we think would be improper), the amount of security would need to be revisited" is confusing.  Bio-Rad has already agreed that for post-injunction permitted sales, it is adequately protected by the escrow provisions in the permanent injunction.  The Court has so ordered as well.

Please let us know if we have agreement of the bond amount of $35,088,725.  If not, can we do a call in the next couple of hours, let's say 1 pm Pacific?

Thank you.

Libby Moulton
415-773-5673

**From:** Reines, Edward [mailto:edward.reines@weil.com]
**Sent:** Wednesday, August 14, 2019 10:22 AM
**To:** Moulton, Libby <emoulton@orrick.com>; Lavin, Christopher <Christopher.Lavin@weil.com>;
Robert.Gerrity@tensegritylawgroup.com
**Cc:** Matthew Powers <matthew.powers@tensegritylawgroup.com>; DGindler@irell.com;
ngroombridge@paulweiss.com; Rosenkranz, E. Joshua <jrosenkranz@orrick.com>; cottrell
<cottrell@rlf.com>; Jason Rawnsley <Rawnsley@RLF.com>; Walter, Derek <Derek.Walter@weil.com>;
bfarnan@farnanlaw.com; azra@tensegritylawgroup.com; 10X_Orrick_TLG
<10X_Orrick_TLG@tensegritylawgroup.com>
**Subject:** RE: Bio-Rad v. 10X, 15-152-RGA

Libby, Bio-Rad requests a bond sufficient to cover the judgment and compensation for the infringement
from the verdict date to injunction.   It would be illogical if Bio-Rad was protected by security for all
infringement except its post-verdict infringement.   I'm sure you are familiar with the CAFC's *ActiveVideo*
case on this subject.   By our calculation, a proper security would be $36 million for the verdict and $16
million for the subsequent pre-injunction infringement.   The total would be $52 million.   If 10x is
granted additional permission to infringe (which we think would be improper), the amount of security
would need to be revisited.   Please let us know if you dispute this bond amount.   In addition, we will
propose a form of stay motion later today.   Thanks, Ed

**From:** Moulton, Libby <emoulton@orrick.com>
**Sent:** Tuesday, August 13, 2019 3:21 PM
**To:** Lavin, Christopher <Christopher.Lavin@weil.com>; Robert.Gerrity@tensegritylawgroup.com; Reines,
Edward <edward.reines@weil.com>
**Cc:** Matthew.Powers@tensegritylawgroup.com; DGindler@irell.com; ngroombridge@paulweiss.com;
Rosenkranz, E. Joshua <jrosenkranz@orrick.com>; Cottrell <Cottrell@RLF.com>; Jason Rawnsley
<Rawnsley@RLF.com>; Walter, Derek <Derek.Walter@weil.com>; bfarnan@farnanlaw.com;
azra@tensegritylawgroup.com; 10X_Orrick_TLG <10X_Orrick_TLG@tensegritylawgroup.com>
**Subject:** RE: Bio-Rad v. 10X, 15-152-RGA

Hi Ed, attached is a proposed judgment that updates our original calculations (from email below)
consistent with the Court's August 12 Order; namely, we are using 274 days between judgment on the
verdict (11/14/18) and entry of final judgment (8/15/19) and we are using the T-Bill rate from last week
of 1.78%.  Please let us know if we are in agreement.  Thank you.

Libby Moulton
415-773-5673

**From:** Lavin, Christopher [mailto:Christopher.Lavin@weil.com]
**Sent:** Monday, July 29, 2019 10:22 AM
**To:** Robert.Gerrity@tensegritylawgroup.com; Reines, Edward <edward.reines@weil.com>
**Cc:** Matthew Powers <matthew.powers@tensegritylawgroup.com>; DGindler@irell.com;
ngroombridge@paulweiss.com; Moulton, Libby <emoulton@orrick.com>; Rosenkranz, E. Joshua
<jrosenkranz@orrick.com>; cottrell <cottrell@rlf.com>; Jason Rawnsley <Rawnsley@RLF.com>; Walter,
Derek <Derek.Walter@weil.com>; bfarnan@farnanlaw.com; azra@tensegritylawgroup.com;
10X_Orrick_TLG <10X_Orrick_TLG@tensegritylawgroup.com>
**Subject:** RE: Bio-Rad v. 10X, 15-152-RGA

Robert,

Attached please find a revised proposed final judgment.  Below are the calculations supporting the figures and attached are recent final judgments we used to justify our calculations.  Looks like there may be an issue with the post-judgment day count on 10X's side (109 days) – could you look into that?

We've still got folks on our side reviewing the judgment in parallel so we may have further edits here – but the dispute at this point appears to be narrow.

Thanks.

| 10X Calculations | | | | |
|---|---|---|---|---|
| Verdict | $ | 23,930,718.00 | 15% royalty | | Verdict |
| post judgment interest from 11/14/19 to 7/29/19 (109 days) | $ | 195,633.62 | 2.73% per year or 0.0075% per day | | Supplemental damages (Q3 2018 through Nov. 13, 2018) |
| | | | | | |
| Supplemental damages (Q3 2018 through Nov. 13, 2018) | $ | 8,341,368.00 | 15% royalty | | Total |
| Pre-judgment interest on verdict + supplemental damages to 11/13/19 | $ | 1,331,343.00 | Prime Rate (3.25-5.25%) compounded quarterly  Malackowski para 13 | | Pre-judgment interest on verdict + supplemental damages (to 11/13/18) |
| Prejudgment interest from 11/14/18 to 7/29/19 (109 days) | $ | 147,605.57 | Prime Rate of 5.25% per year or 0.014% per day | | Post-judgment interest on verdict + supplemental damages ($32,272,086) from 11/14/18 to 7/29/19 |
| | | | | | Total Judgment |
| Total Judgment | $ | 33,946,668.19 | | | Post-judgment interest on verdict + supplemental damages ($32,272,086) from 7/29/19 to date satisfy judgment |
| | | | | | Post-judgment interest on pre-judgment interest ($1,331,343) from 7/29/19 to date satisfy judgment |

| Daily Post Judgment Interest | $ | 1,804.29 | 1.94% per year or 0.0053% per day | | Daily Post Judgment Interest |
| --- | --- | --- | --- | --- | --- |

**From:** Robert Gerrity <robert.gerrity@tensegritylawgroup.com>
**Sent:** Friday, July 26, 2019 7:59 PM
**To:** Reines, Edward <edward.reines@weil.com>
**Cc:** Matthew.Powers@tensegritylawgroup.com; DGindler@irell.com; ngroombridge@paulweiss.com; Libby Moulton <emoulton@orrick.com>; Joshua Rosenkranz <jrosenkranz@orrick.com>; Cottrell@rlf.com; Jason Rawnsley <Rawnsley@RLF.com>; Walter, Derek <Derek.Walter@weil.com>; bfarnan@farnanlaw.com; azra@tensegritylawgroup.com; Lavin, Christopher <Christopher.Lavin@weil.com>; 10X_Orrick_TLG <10X_Orrick_TLG@tensegritylawgroup.com>
**Subject:** Re: Bio-Rad v. 10X, 15-152-RGA

Ed,

We have further revisions to the Final Judgment, attached.  Based on Judge Andrews's decision in *Amgen v. Hospira*, 336 F. Supp. 3d 333 (D. Del. 2018) and the Third Circuit's decision in *Travelers Casualty and Surety Co. v. Insurance Co. of N. America*, 609 F.3d 143, 174-75 (3d Cir. 2010), Bio-Rad is not entitled to interest at the prejudgment rate on the amount of the jury verdict from entry to judgment on the verdict (11/14/18) through entry of Final Judgment.  Instead, the post-judgment interest rate should apply as of the date of judgment on the verdict.  *Amgen,* 336 F. Supp. 3d at 365.  10X made this argument in its Opposition to Bio-Rad's Post-Trial Motion (D.I. 524 at 30, citing *Comcast Cable Commc'ns, LLC v. Sprint Commc'ns Co.*, 262 F. Supp. 3d 118 (E.D. Pa. 2017) (relying on *Travelers*)), and Bio-Rad did not dispute this position in its Reply (D.I. 536 at 14-15).

Here is a summary of our revised calculations, which is also reflected in the attached revised Judgment:

| | | | |
| --- | --- | --- | --- |
| Verdict | $ | 23,930,718.00 | 15% royalty |
| post judgment interest from 11/14/19 to 7/29/19 (109 days) | $ | 195,633.62 | 2.73% per year or 0.0075% per day |
| | | | |
| Supplemental damages (Q3 2018 through Nov. 13, 2018) | $ | 8,341,368.00 | 15% royalty |
| Pre-judgment interest on verdict + supplemental damages to 11/13/19 | $ | 1,331,343.00 | Prime Rate (3.25-5.25%) compounded quarterly Malackowski para 13 |
| Prejudgment interest from 11/14/18 to 7/29/19 (109 days) | $ | 147,605.57 | Prime Rate of 5.25% per year or 0.014% per day |
| | | | |
| **Total Judgment** | $ | **33,946,668.19** | |
| | | | |
| **Daily Post Judgment Interest** | $ | **1,804.29** | 1.94% per year or 0.0053% per day |

**ROBERT GERRITY**
**TENSEGRITY LAW GROUP LLP**
555 Twin Dolphin Drive, Suite 650
Redwood Shores, CA 94065
650-802-6040 (phone)
503-704-6825 (mobile)
650-802-6001 (fax)

**From:** Robert Gerrity <robert.gerrity@tensegritylawgroup.com>
**Date:** Friday, July 26, 2019 at 5:42 PM
**To:** "Reines, Edward" <edward.reines@weil.com>
**Cc:** Matthew Powers <matthew.powers@tensegritylawgroup.com>, "DGindler@irell.com"
<DGindler@irell.com>, "ngroombridge@paulweiss.com" <ngroombridge@paulweiss.com>,
Libby Moulton <emoulton@orrick.com>, Joshua Rosenkranz <jrosenkranz@orrick.com>,
Frederick Cottrell <cottrell@rlf.com>, Jason Rawnsley <Rawnsley@RLF.com>, "Walter,
Derek" <Derek.Walter@weil.com>, Brian Farnan <bfarnan@farnanlaw.com>, Azra
Hadzimehmedovic <azra@tensegritylawgroup.com>, "Lavin, Christopher"
<Christopher.Lavin@weil.com>, 10X_Orrick_TLG
<10X_Orrick_TLG@tensegritylawgroup.com>
**Subject:** Re: Bio-Rad v. 10X, 15-152-RGA

Ed,

We are continuing to review both the judgment and the injunction. Attached are the edits we have so
far on the judgment—it looks like your earlier draft used the supplemental damages number from page
25 of your brief but that number transposed a couple of digits from the correct calculation (see ¶ 11 of
Malackowski's decl, $8**43**1,368 vs. $8,**34**1,368). The attached edits correct that. As I said, we are still
reviewing and may have further edits (and will need to revise this further if we decide to agree to
include post-verdict sales; I hope to have that answer for you tomorrow).

On the injunction, we will get you our edits and thoughts as soon as we can. We are hoping to get it to
you tomorrow—in whole, or at least in part.

Thank you,

**ROBERT GERRITY**
**TENSEGRITY LAW GROUP LLP**
555 Twin Dolphin Drive, Suite 650
Redwood Shores, CA 94065
650-802-6040 (phone)
503-704-6825 (mobile)
650-802-6001 (fax)

**From:** "Reines, Edward" <edward.reines@weil.com>
**Date:** Friday, July 26, 2019 at 4:00 PM
**To:** Robert Gerrity <robert.gerrity@tensegritylawgroup.com>
**Cc:** Matthew Powers <matthew.powers@tensegritylawgroup.com>, "DGindler@irell.com"

<DGindler@irell.com>, "ngroombridge@paulweiss.com" <ngroombridge@paulweiss.com>, Libby Moulton <emoulton@orrick.com>, Joshua Rosenkranz <jrosenkranz@orrick.com>, Frederick Cottrell <cottrell@rlf.com>, Jason Rawnsley <Rawnsley@RLF.com>, "Walter, Derek" <Derek.Walter@weil.com>, Brian Farnan <bfarnan@farnanlaw.com>, Azra Hadzimehmedovic <azra@tensegritylawgroup.com>
**Subject:** Re: Bio-Rad v. 10X, 15-152-RGA

What's the status?   Thx.

**From:** "Lavin, Christopher" <Christopher.Lavin@weil.com>
**Date:** Friday, July 26, 2019 at 11:14 AM
**To:** Robert Gerrity <robert.gerrity@tensegritylawgroup.com>
**Cc:** Matthew Powers <matthew.powers@tensegritylawgroup.com>, "DGindler@irell.com" <DGindler@irell.com>, "ngroombridge@paulweiss.com" <ngroombridge@paulweiss.com>, Libby Moulton <emoulton@orrick.com>, Joshua Rosenkranz <jrosenkranz@orrick.com>, Frederick Cottrell <cottrell@rlf.com>, Jason Rawnsley <Rawnsley@RLF.com>, "Walter, Derek" <Derek.Walter@weil.com>, Brian Farnan <bfarnan@farnanlaw.com>, Azra Hadzimehmedovic <azra@tensegritylawgroup.com>
**Subject:** RE: Bio-Rad v. 10X, 15-152-RGA

Robert,

Attached please find an updated draft injunction (redline) removing a stray clause that was inadvertently included.

Best Regards,
Chris

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email, postmaster@weil.com, and destroy the original message. Thank you.

NOTICE TO RECIPIENT | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

For more information about Orrick, please visit *http://www.orrick.com*.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying

of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email, postmaster@weil.com, and destroy the original message. Thank you.

---

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

For more information about Orrick, please visit *http://www.orrick.com*.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

---

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email, postmaster@weil.com, and destroy the original message. Thank you.

---

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email, postmaster@weil.com, and destroy the original message. Thank you.

**Exhibit 2**

**Table of Contents**

As filed with the Securities and Exchange Commission on August 19, 2019.

Registration No. 333-

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION

**Washington, D.C. 20549**

## FORM S-1
## REGISTRATION STATEMENT

*UNDER*
*THE SECURITIES ACT OF 1933*

# 10x Genomics, Inc.

**(Exact Name of Registrant as Specified in Its Charter)**

| Delaware | 3826 | 45-5614458 |
|---|---|---|
| **(State or Other Jurisdiction of Incorporation or Organization)** | **(Primary Standard Industrial Classification Code Number)** | **(I.R.S. Employer Identification Number)** |

**6230 Stoneridge Mall Road**
**Pleasanton, California 94588**
**(925) 401-7300**
**(Address, Including Zip Code, and Telephone Number, Including Area Code, of Registrant's Principal Executive Offices)**

**Serge Saxonov**
**Chief Executive Officer**
**10x Genomics, Inc.**
**6230 Stoneridge Mall Road**
**Pleasanton, California 94588**
**(925) 401-7300**
**(Name, Address, Including Zip Code, and Telephone Number, Including Area Code, of Agent For Service)**

*Copies to:*

| Kevin P. Kennedy | Eric S. Whitaker | Charles S. Kim |
|---|---|---|
| Simpson Thacher & Bartlett LLP | Randy Wu | David Peinsipp |
| 2475 Hanover Street | James Bryant | Kristin VanderPas |
| Palo Alto, California 94304 | 10x Genomics, Inc. | Cooley LLP |
| (650) 251-5000 | 6230 Stoneridge Mall Road | 4401 Eastgate Mall |
| | Pleasanton, California 94588 | San Diego, California 92121 |
| | (925) 401-7300 | (858) 550-6000 |

**Approximate date of commencement of proposed sale to the public**: As soon as practicable after the effective date of this Registration Statement.

If any of the securities being registered on this form are to be offered on a delayed or continuous basis pursuant to Rule 415 under the Securities Act of 1933, check the following box.  ☐

If this form is filed to register additional securities for an offering pursuant to Rule 462(b) under the Securities Act, please check the following box and list the Securities Act registration statement number of the earlier effective registration statement for the same offering.  ☐

If this form is a post-effective amendment filed pursuant to Rule 462(c) under the Securities Act, check the following box and list the Securities Act registration statement number of the earlier effective registration statement for the same offering.  ☐

If this form is a post-effective amendment filed pursuant to Rule 462(d) under the Securities Act, check the following box and list the Securities Act registration statement number of the earlier effective registration statement for the same offering.  ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, a smaller reporting company or an emerging growth company. See the definitions of "large accelerated filer", "accelerated filer", "smaller reporting company" and "emerging growth company" in Rule 12b-2 of the Exchange Act.

| | | | |
|---|---|---|---|
| Large accelerated filer | ☐ | Accelerated filer | ☐ |
| Non-accelerated filer | ☒ | Smaller reporting company | ☐ |
| | | Emerging growth company | ☒ |

If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided pursuant to Section 7(a)(2)(B) of the Securities Act.  ☐

**CALCULATION OF REGISTRATION FEE**

| Title of each Class of Securities to be Registered | Proposed Maximum Aggregate Offering Price(1)(2) | Amount of Registration Fee |
|---|---|---|
| Class A Common stock, par value $0.00001 per share | $100,000,000 | $12,120 |

(1)   Includes the aggregate offering price of additional shares that the underwriters have the option to purchase.

(2)   Estimated solely for the purpose of computing the amount of the registration fee pursuant to Rule 457(o) under the Securities Act of 1933.

**The registrant hereby amends this registration statement on such date or dates as may be necessary to delay its effective date until the registrant shall file a further amendment which specifically states that this registration statement shall thereafter become effective in accordance with Section 8(a) of the Securities Act of 1933, or until the registration statement shall become effective on such date as the Securities and Exchange Commission, acting pursuant to said Section 8(a), may determine.**

**Table of Contents**

- The life sciences technology market is highly competitive. If we fail to compete effectively, our business and operating results will suffer;

- Our business depends significantly on the success of our Next GEM microfluidic chip;

- We are significantly dependent upon revenue generated from the sale of our Chromium solutions, and in particular our Single Cell Gene Expression solutions;

- Our business currently depends significantly on research and development spending by academic institutions, a reduction in which could limit demand for our products and adversely affect our business and operating results;

- Our failure to effectively manage product transitions or accurately forecast customer demand could result in excess or obsolete inventory and resulting charges;

- Our future success is dependent upon our ability to increase penetration in our existing markets;

- We may not be able to develop new products, enhance the capabilities of our existing products to keep pace with rapidly changing technology and customer requirements or successfully manage the transition to new product offerings, any of which could have a material adverse effect on our business and operating results;

- If our existing and new products fail to achieve and sustain sufficient scientific acceptance, we will not generate expected revenue and our prospects may be harmed; and

- the other risk factors set forth in the section titled "*Risk factors—Risks related to our business and industry*".

***Risks related to litigation and our intellectual property***

We are currently involved in litigation matters related to substantially all of our products, the loss of any of which could have a material adverse effect on our business, operations, financial results and reputation. Furthermore, parties making claims against us have obtained and may in the future be able to obtain injunctive or other relief, which effectively could block our ability to further develop, commercialize, market or sell products or services and could result in the award of substantial damages against us. In November 2018, a jury concluded that our Chromium instruments operating our Gel bead in Emulsion microfluidic chips ("GEM microfluidic chips") and associated consumables infringed certain of Bio-Rad Laboratories, Inc.'s ("Bio-Rad") patents and that the infringement was willful. The Court entered final judgment in August 2019 with damages in the amount of approximately $35 million. In the fourth quarter of 2018, we began recording an accrual for estimated royalties as cost of revenue. This accrual is based on an estimated royalty rate of 15% of worldwide sales of our Chromium instruments operating our GEM microfluidic chips and associated consumables. As of June 30, 2019, we had accrued a total of $55.3 million relating to this matter which includes the $35 million judgment and our estimated 15% royalty for sales through that date.

The Court also granted Bio-Rad a permanent injunction against our GEM microfluidic chips and associated consumables that were found to infringe the Bio-Rad patents, which have historically constituted substantially all of our product sales. However, under the injunction, we are permitted to continue to sell our GEM microfluidic chips and associated consumables for use with our historical installed base of instruments provided that we pay a royalty of 15% into escrow on our net revenue related to such sales. We have appealed the injunction to the Federal Circuit and expect that it will not take effect until the Federal Circuit rules on our request for a stay of the injunction.

We have dedicated significant resources to designing and manufacturing our new microfluidic chips (our "Next GEM microfluidic chips") which use fundamentally different physics from our GEM microfluidic chips. Neither

6